# COMPOSITE EXHIBIT "A"

Case 0:20-cv-62098-RAR Document 1-3 Entered on FLSD Docket 10/14/2020 Page 2 of 169

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

DENTAL FIX RX, LLC, a
Florida limited liability company,

Case No.:

     *Plaintiff*,

v.

SMILE 17, LLC, a New York limited
liability company, MICHAEL
COTICCHIO, an individual, and
HOLDEN COHEN, an individual,

     *Defendants.*

_____/

## COMPLAINT

Plaintiff DENTAL FIX RX, LLC ("Dental Fix"), by and through undersigned counsel, hereby sues Defendants, SMILE 17, LLC ("Smile 17"), MICHAEL COTICCHIO ("Coticchio"), and HOLDEN COHEN ("Cohen"), and states as follows:

## THE PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, DENTAL FIX RX, LLC ("Dental Fix"), is a limited liability company organized under the laws of the state of Florida, with its principal place of business in Broward County, Florida.

2.     Defendant, SMILE 17, LLC, is a limited liability company organized under the laws of the state of New York, with its principal place of business in Nassau County, New York.

3.     Defendant, MICHAEL COTICCHIO, is an individual over the age of eighteen and is believed to reside in Nassau County, New York. Coticchio is the owner and principal of Smile 17.

**ZARCO EINHORN SALKOWSKI & BRITO**
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34ᵀᴴ FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

4.      Defendant, HOLDEN COHEN, is an individual over the age of eighteen and is believed to reside in New York.

5.      Pursuant to the Franchise Agreements between Dental Fix and Smile 17 (the "Franchise Agreements") and the Personal Guaranty Agreements signed by Coticchio ("Guarantees"), Smile 17 and Coticchio irrevocably agreed to submit to the jurisdiction and venue of this Court. *See* § 11.8 of the Franchise Agreements, annexed hereto as **Exhibits "A"** and **"B,"** respectively. *See also* Attachment 6 to the Franchise Agreements, which are the Personal Guaranty Agreements signed by Coticchio.

6.      In addition, this Court has personal jurisdiction over Defendants Smile 17 and Coticchio under Fla. Stat. § 48.193(1)(a)(9).

7.      This Court has personal jurisdiction over Cohen pursuant to Fla. Stat. § 48.193(1)(a)(2) and (6)(a), as during all material times hereto, Cohen was engaged in tortious acts with respect to and solicitation of Dental Fix franchisees engaged in business in the state of Florida.

8.      This Court has jurisdiction of this matter as the amount in controversy exceeds the sum or value of Thirty Thousand Dollars ($30,000.00), exclusive of interest, costs and attorney's fees.

9.      All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

## GENERAL ALLEGATIONS

10.     Dental Fix is the franchisor of the Dental Fix franchise system.  Dental Fix has developed and owns a system for operating mobile service centers under the principal mark, *Dental Fix Rx*® (the "Dental Fix Franchise System").  Dental Fix businesses provide equipment maintenance, service and repair, and equipment sales primarily to dental offices.

2

11.     On or about December 15, 2016, Dental Fix and Coticchio entered into that certain Franchise Agreement (the "First Franchise Agreement"), pursuant to which Coticchio was granted the right, and undertook the obligation, to operate a Dental Fix franchised business (the "First Franchised Business") within the territory identified by the zip codes on Attachment 1 to the Franchise Agreement. *See* Ex. A, Attachment 1. The obligations under the First Franchise Agreement were personally guaranteed by Coticchio through the Guaranty. *See* Ex. A, Attachment 6.

12.     On or about March 15, 2017, Dental Fix and Coticchio entered into that certain Franchise Agreement (the "Second Franchise Agreement"), pursuant to which Coticchio was granted the right, and undertook the obligation, to operate a second Dental Fix franchised business (the "Second Franchised Business") within the territory identified by the zip codes on Attachment 1 to the Franchise Agreement. *See* Ex. B, Attachment 1. The obligations under the Second Franchise Agreement were personally guaranteed by Coticchio through the Guaranty. *See* Ex. B, Attachment 6.[1]

13.     On or about February 10, 2018, Dental Fix and Coticchio entered into an Assignment and Assumption Agreement ("Assignment Agreement") pursuant to which, Defendant Smile 17 agreed to assume the obligations arising under the First Franchise Agreement.[2] Smile 17's obligations under the First Franchise Agreement were personally guaranteed by Coticchio through both the Assignment Agreement and the Guaranty attached to the First Franchise Agreement. *See* Ex. A, Attachment 6; Ex. C, §§ 5, 6.

---

[1] The First Franchise Agreement and Second Franchise Agreement are collectively referred to herein as the "Franchise Agreements." The First Franchised Business and the Second Franchised Business are collectively referred to herein as the "Franchised Businesses."

[2] A true and correct copy of the Assignment Agreement is attached hereto as **Exhibit "C."**

3

14.     Prior to entering into the Franchise Agreements, Defendants Coticchio and Smile 17 (collectively the "Smile Defendants") had no experience in the maintenance, service, and repair of dental equipment or operating such a business. In connection with the Smile Defendants' purchase of the Franchised Businesses, Dental Fix provided extensive training to the Smile Defendants on the Dental Fix Franchise System. Through such training, the Smile Defendants learned how to operate a mobile dental equipment repair business and how to service and repair such items.

15.     Dental Fix has spent considerable time and expense on marketing and developing customer goodwill throughout the Dental Fix Franchise System.

**Breaches of the Franchise Agreements and Guarantees.**

16.     Pursuant to the Franchise Agreements, the Smile Defendants are required to, *inter alia,* pay to Dental Fix weekly corporate support fees, monthly software fees, and payments for warranty work. *See* Exs. A & B, §§ 6.4, 6.6., 7.7.

17.     In or around July 2020, the Smile Defendants unilaterally ceased making payments due and owing to Dental Fix pursuant to the terms of the Franchise Agreements.

18.     Accordingly, on or about July 30, 2020, Dental Fix sent to the Smile Defendants a Notice of Default advising the Smile Defendants of their material breaches of the Second Franchise Agreement and providing Defendants five days to cure the same pursuant to Section 10.2.1.10 of the Second Franchise Agreement (the "Notice of Default").[3] A true and correct copy of the Notice of Default is attached hereto as **Exhibit "D."**

---

[3] Notwithstanding the Smile Defendants' material breach under both Franchise Agreements and Guarantees by failing to make payments due and owing thereunder, each of the Franchise Agreements additionally have a cross-default provision further making the Smile Defendants' failure to comply with the terms of either of the Franchise Agreements a material breach of all agreements between the parties.

4

19.     The Smile Defendants failed to cure their material breaches of the Franchise Agreements within the applicable cure period. Accordingly, on August 11, 2020, Plaintiffs advised the Smile Defendants that Dental Fix was electing to exercise its rights to immediately terminate the Franchise Agreements pursuant to Section 10.2.1.10 thereof.[4] *See* Exs. A & B, § 10.2.1.10.

20.     Accordingly, the Franchise Agreements were terminated as of August 11, 2020 with the exception of those provisions which, by their nature or expressly, survive termination including, but not limited to, Sections 8.4, 8.5, 8.6, 8.7, 10.4, and 11 of the Franchise Agreements. Such provisions include the Smile Defendants' confidentiality and post-termination non-competition obligations.

21.     Upon termination of the Franchise Agreements, the Smile Defendants are required to, *inter alia*, pay all outstanding payments due and owing to Dental Fix—including all past due amounts and all fees that the Smile Defendants are obligated to pay Dental Fix for the balance of the Term of the Franchise Agreements. *See* Exs. A & B, §§ 4.1, 6.4.

22.     Notwithstanding their obligations, the Smile Defendants have failed to pay any outstanding amounts due and owing to Dental Fix as of July 2020.

23.     The Smile Defendants further breached the Franchise Agreements by improperly and unilaterally revoking Dental Fix's ability to receive all required payments by Automated Clearing House and Electronic Funds Transfers as required by Section 6.5 of the Franchise Agreements. *See* Exs. A & B, § 6.5.

24.     As a result of Defendants' material breaches of the Franchise Agreement and the Guaranty, Dental Fix has suffered, and continues to suffer, substantial damages.

---

[4] A true and correct copy of the August 11, 2020 Notice of Termination is attached hereto as **Exhibit "E."**

ZARCO EINHORN SALKOWSKI & BRITO
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

25.     Dental Fix has been compelled to retain the services of the undersigned attorneys and has agreed to pay its attorneys a reasonable fee for services rendered. Pursuant to Section 11.12 of the Franchise Agreement, Dental Fix is entitled to recover its attorneys' fees and costs from the Smile Defendants.

**Coticchio and Cohen's Attempts to Usurp the Dental Fix Franchise System.**

26.     At some point in the past, Defendant Cohen had expressed interest in becoming a Dental Fix franchisee.

27.     To that end, on multiple occasions, Defendant Cohen met with the principals of Dental Fix, attended Dental Fix informative conventions, and otherwise communicated with Dental Fix regarding his potential purchase of a Dental Fix franchise.

28.     Ultimately, Defendant Cohen did not purchase a Dental Fix franchise and it now appears that Cohen feigned interest in becoming a franchisee as a means to infiltrate the Dental Fix franchise system.

29.     Defendant Cohen utilized the information and relationships shared with him by Dental Fix to begin contacting various Dental Fix franchisees—including several franchisees located and operating in the state of Florida—to develop a sort of "franchisee union."

30.     Upon information and belief, Defendant Cohen recruited Defendant Coticchio to permit Defendant Cohen to utilize Defendant Coticchio's relationship with Dental Fix through the Franchise Agreements to establish a line of communication with Dental Fix.

31.     Defendant Coticchio has permitted Defendant Cohen to utilize his former standing as a Dental Fix franchisee in order to infiltrate the Dental Fix Franchise System and attempt to destroy Dental Fix's valuable relationships with its franchisees from the inside out.

32.     Dental Fix has spent many years and considerable resources and effort to grow and

ZARCO EINHORN SALKOWSKI & BRITO
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

maintain relationships with its franchisees and each relationship is governed by and subject to valid and enforceable franchise agreements and related agreements between Dental Fix and its various franchisees.

33.     Through their efforts, Defendants Cohen and Coticchio have engaged in a systematic scheme to tortiously interfere with Dental Fix's contracts and relationships with its franchisees.

34.     Specifically, Defendants Cohen and Coticchio have taken affirmative actions in support of the scheme and have advised, encouraged, and assisted Dental Fix franchisees in withholding payments due and owing to Dental Fix, which constitute material breaches of the various franchise agreements by the franchisees at the direction of Defendants Cohen and Coticchio.

35.     In addition, Defendants Cohen and Coticchio have further interfered and conspired to interfere with Dental Fix's valuable business and contractual relationships with dental equipment manufacturers with whom Dental Fix relies in order to operate the Dental Fix Franchise System.

36.     Specifically, Defendants Cohen and Coticchio have taken affirmative actions to improperly contact Dental Fix's equipment manufacturer's directly, informing such manufacturers that the aforementioned Dental Fix franchisees "are leaving," falsely informing such manufacturers that Dental Fix is "in trouble," and attempting to secure a direct relationship and/or contract with the manufacturer, to the exclusion of Dental Fix.

37.     Defendant Cohen and Coticchio's intentional and unjustifiable interference with Dental Fix's relationship with its manufacturers has led to the manufacturers questioning the status of their relationship with Dental Fix, causing damage to Dental Fix.

ZARCO EINHORN SALKOWSKI & BRITO

ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

38.     Defendants Cohen and Coticchio have knowledge of the relationship and agreements between Dental Fix and its franchisees and manufacturers, and have intentionally and unjustifiably interfered in the same.

39.     Defendants Cohen and Cottichio's intentional and tortious interference has caused, and will continue to cause, Dental Fix to suffer substantial damages.

## CAUSES OF ACTION

### Count I – Breach of Contract (First Franchise Agreement and Guaranty)
### [Dental Fix against Coticchio]

40.     Dental Fix realleges and incorporates the allegations set forth in paragraphs 1 through 39, *supra*, as if fully set forth herein.

41.     The First Franchise Agreement is a valid and binding contract between Dental Fix and Coticchio.

42.     Dental Fix has fully performed all conditions and obligations to be performed on its part under the First Franchise Agreement.

43.     Coticchio materially breached the First Franchise Agreement by, *inter alia*, failing to make all payments due and owing to Dental Fix thereunder.

44.     Coticchio personally agreed to these covenants and is, therefore, personally liable pursuant to the Guaranty. *See* Ex. A, Attachment 6.

45.     As a direct, proximate, and foreseeable result of Defendant Coticchio's material breaches of the First Franchise Agreement and Guaranty, Dental Fix has and continues to suffer substantial damages.

**WHEREFORE**, for the foregoing reasons, Plaintiff, DENTAL FIX RX, LLC, respectfully requests that this Court enter judgment against Defendant, MICHAEL COTICCHIO, for: (1) actual, compensatory, and consequential damages in an amount to be determined at trial; (2) pre-

8

and post-judgment interest; (3) reasonable attorneys' fees and costs pursuant to Section 11.12 of the Franchise Agreement; and (4) for such other and further relief as this Court deems just and proper.

### Count I – Breach of Contract (Second Franchise Agreement and Guaranty)
### [Dental Fix against Smile 17 and Coticchio]

46.     Dental Fix realleges and incorporates the allegations set forth in paragraphs 1 through 39, *supra*, as if fully set forth herein.

47.     The Second Franchise Agreement is a valid and binding contract between Dental Fix and Smile 17.

48.     Dental Fix has fully performed all conditions and obligations to be performed on its part under the Second Franchise Agreement.

49.     Smile 17 materially breached the Second Franchise Agreement by, *inter alia*, failing to make all payments due and owing to Dental Fix thereunder.

50.     Coticchio personally agreed to these covenants and is, therefore, personally liable pursuant to the Guaranty. *See* Ex. B, Attachment 6.

51.     As a direct, proximate, and foreseeable result of Defendants Smile 17 and Coticchio's material breaches of the Second Franchise Agreement and Guaranty, Dental Fix has and continues to suffer substantial damages.

**WHEREFORE**, for the foregoing reasons, Plaintiff, DENTAL FIX RX, LLC, respectfully requests that this Court enter judgment against Defendants, SMILE 17, LLC and MICHAEL COTICCHIO, for: (1) actual, compensatory, and consequential damages in an amount to be determined at trial; (2) pre- and post-judgment interest; (3) reasonable attorneys' fees and costs pursuant to Section 11.12 of the Franchise Agreement; and (4) for such other and further relief as this Court deems just and proper.

9

## Count III – Tortious Interference
### [Dental Fix against Cohen and Coticchio]

52.     Dental Fix realleges and incorporates the allegations set forth in paragraphs 1 through 39, *supra*, as if fully set forth herein.

53.     Dental Fix has business and contractual relationships with each of its franchisees.

54.     Under these franchise relationships, Dental Fix has certain legal rights including, *inter alia*, the right to collect all fees due and owing by the franchisees.

55.     Dental Fix has further business and contractual relationships with its dental equipment manufacturers.

56.     Defendants Cohen and Coticchio are aware of these business and contractual relationships due, in part, to Coticchio's experience as a Dental Fix franchisee and Cohen's understanding of the Dental Fix Franchise System as a prospective Dental Fix franchisee and as a co-conspirator of Coticchio.

57.     Defendants Cohen and Coticchio unjustifiably interfered with Dental Fix's valuable business and contractual relationships with its franchisees by, *inter alia*, contacting Dental Fix's franchisees and convincing them to cease performing various obligations under the franchise agreements including, *inter alia*, the payment of all fees due and owing to Dental Fix thereunder.

58.     Defendants Cohen and Coticchio unjustifiably interfered with Dental Fix's valuable business and contractual relationships with its dental equipment manufacturers by, *inter alia*, contacting Dental Fix's manufacturers, improperly claiming that a group of Dental Fix franchisees are leaving the Dental Fix Franchise System, falsely informing such manufacturers that Dental Fix is "in trouble," and attempting to establish a direct business and/or contractual relationship with said manufacturers, to the exclusion of Dental Fix.

ZARCO EINHORN SALKOWSKI & BRITO
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

59. Through their wrongful and unjustifiable tortious interference, Defendants Cohen and Coticchio have caused and will continue to cause Dental Fix to suffer substantial damages.

**WHEREFORE**, for the foregoing reasons, Plaintiff, DENTAL FIX RX, LLC, respectfully requests that this Court enter judgment against Defendants, HOLDEN COHEN and MICHAEL COTICCHIO, for: (1) actual, compensatory, and consequential damages in an amount to be determined at trial; (2) pre- and post-judgment interest; and (3) for such other and further relief as this Court deems just and proper.

### Count III – Civil Conspiracy to Commit Tortious Interference
### [Dental Fix against Cohen and Coticchio]

60. Dental Fix realleges and incorporates the allegations set forth in paragraphs 1 through 39, *supra*, as if fully set forth herein.

61. There was an agreement between Defendants Cohen and Coticchio to interfere in the Dental Fix Franchise System by contacting Dental Fix franchisees and convincing them to breach their obligations under their franchise agreements with Dental Fix.

62. There was further agreement between Defendants Cohen and Coticchio to interfere in the Dental Fix Franchise System by contacting Dental Fix's manufacturers and attempting to secure direct relationships and/or contracts with the same, to the exclusion of Dental Fix.

63. Such actions were undertaken in furtherance of Defendants Cohen and Coticchio's improper scheme to usurp control over the Dental Fix Franchise System and conspiracy to convince Dental Fix franchisees to cease performing their obligations.

64. Defendants Cohen and Coticchio have acted in concert to contact said franchisees and manufacturers and convince them to refuse to perform under their agreements with Dental Fix.

65. To further the conspiracy, Defendants Cohen and Coticchio took several actions including, but not limited to:

11

a.  using false pretenses to convince Dental Fix franchisees to cease paying all monies due and owing to Dental Fix under the franchise agreements;

b.  using false pretenses to communicate with Dental Fix's manufacturers that certain Dental Fix franchisees were "leaving" the Dental Fix Franchise System;

c.  attempting to negotiate a new business and/or contractual relationship with said manufacturers to the exclusion of Dental Fix;

d.  drafting form correspondence for Dental Fix franchisees to sign regarding their refusal to perform under the franchise agreements;

e.  purporting to correspond with Dental Fix on behalf of various franchisees to which Defendants Cohen and Coticchio otherwise have no interest it or involvement with; and

f.  upon information and belief, advising Dental Fix franchisees to not correspond with Dental Fix directly and to only conduct their business and contractual relationship through Defendants Cohen and/or Coticchio.

66.    Through their wrongful actions, Defendants Cohen and Coticchio have caused and will continue to cause Dental Fix to suffer substantial damages.

**WHEREFORE**, for the foregoing reasons, Plaintiff, DENTAL FIX RX, LLC, respectfully requests that this Court enter judgment against Defendants, HOLDEN COHEN and MICHAEL COTICCHIO, jointly and severally, for: (1) actual, compensatory, and consequential damages in an amount to be determined at trial; (2) pre- and post-judgment interest; and (3) for such other and further relief as this Court deems just and proper.

Dated: August 11, 2020.

Respectfully submitted,

ZARCO EINHORN SALKOWSKI & BRITO, P.A.
One Biscayne Tower
2 S. Biscayne Blvd., Suite 3400

ZARCO EINHORN SALKOWSKI & BRITO
ONE BISCAYNE TOWER | 2 S. BISCAYNE BLVD., 34TH FLOOR | MIAMI, FLORIDA 33131 | T: (305) 374-5418 | F: (305) 374-5428

Miami, Florida 33131
T: (305) 374-5418
F: (305) 374-5428

By: /s/ *Michael D. Braunstein*

**ROBERT M. EINHORN**
Florida Bar No. 858188
reinhorn@zarcolaw.com
eservice@zarcolaw.com
**MICHAEL D. BRAUNSTEIN**
Florida Bar No. 1003845
mbraunstein@zarcolaw.com
apiriou@zarcolaw.com

# Exhibit A

# DENTAL FIX RX, LLC
## FRANCHISE AGREEMENT



# TABLE OF CONTENTS

1.  **DEFINITIONS**................................................................................2
    1.1     CLINIC ...........................................................................2
    1.2     CORPORATE SUPPORT FEE...........................................2
    1.3     DENTAL FIX BUSINESS.................................................2
    1.4     DESIGNATED PRINCIPAL...............................................2
    1.5     FRANCHISEE...................................................................2
    1.6     FRANCHISE NETWORK...................................................2
    1.7     GOOD STANDING............................................................2
    1.8     MANUAL ........................................................................2
    1.9     MARKS............................................................................2
    1.10    PREMISES.......................................................................3
    1.11    RELATED PARTY..............................................................3
    1.12    START DATE....................................................................3
    1.14    TERRITORY.....................................................................3
    1.15    TRADE NAMES................................................................3
    1.16    TRANSFER......................................................................3
    1.17    WE...................................................................................3
    1.18    YOU..................................................................................4
2.  **LICENSED RIGHTS**.......................................................................4
    2.1     GRANTING CLAUSE.........................................................4
3.  **TERRITORY**.................................................................................4
    3.1     TERRITORY.....................................................................4
    3.2     RIGHTS RESERVED BY US...............................................5
4.  **TERM AND RENEWAL**...................................................................6
    4.1     INITIAL TERM.................................................................6
    4.2     RENEWAL.......................................................................6
5.  **OUR SERVICES**............................................................................7
    5.1     TRAINING.......................................................................7
    5.2     CONSULTATION..............................................................8
    5.3     MANUAL .........................................................................8
    5.4     OUR MARKETING............................................................9
    5.5     PROPRIETARY SOFTWARE...............................................9
    5.6     SCHEDULING AND COLLECTIONS....................................9
    5.7     EQUIPMENT SERVICE......................................................9
    5.8     ANNUAL MEETINGS.......................................................10
    5.9     APPROVED EQUIPMENT, PRODUCTS AND SERVICES AND APPROVAL OF
    TERMS OF FINANCING........................................................10
6.  **YOUR PAYMENTS**.......................................................................11

| | | |
|---|---|---|
| 6.1 | INITIAL FRANCHISE FEE | 11 |
| 6.2 | MARKETING CONTRIBUTIONS | 12 |
| 6.3 | PHOTO CONSENT FOR MARKETING | 13 |
| 6.4 | CORPORATE SUPPORT FEES | 13 |
| 6.5 | AUTOMATED CLEARING HOUSE AND ELECTRONIC FUNDS TRANSFERS | 14 |
| 6.6 | SOFTWARE LICENSE FEES | 14 |
| 6.7 | TRANSFER FEE | 15 |
| 6.8 | INTEREST ON LATE PAYMENTS | 15 |
| 6.9 | APPLICATION OF PAYMENTS | 15 |
| 6.10 | ANNUAL PAYMENT ADJUSTMENTS | 15 |
| 6.11 | NO WITHHOLDING OF PAYMENTS | 15 |
| 6.12 | COMMENCEMENT OF PAYMENTS | 15 |
| **7.** | **YOUR OBLIGATIONS** | **16** |
| 7.1 | USE OF TRADE NAME AND MARKS | 16 |
| 7.2 | QUALITY ASSURANCE; PREMISES AND MOBILE SERVICE CENTER; BEGINNING OPERATIONS; COMPLIANCE WITH MANUAL | 17 |
| 7.3 | COMPLIANCE WITH LAWS, RULES AND REGULATIONS | 21 |
| 7.4 | PERSONNEL AND FULL TIME EFFORTS | 21 |
| 7.5 | FINANCIAL INFORMATION AND BOOKKEEPING SERVICES | 22 |
| 7.6 | INSURANCE | 23 |
| 7.7 | PAYMENT OF INDEBTEDNESS | 24 |
| 7.8 | ASSIGNMENT OF LISTINGS | 24 |
| 7.9 | GUARANTY AND SUBORDINATION | 25 |
| **8.** | **RELATIONSHIP OF PARTIES** | **25** |
| 8.1 | INTEREST IN MARKS AND SYSTEM | 25 |
| 8.2 | INDEPENDENT STATUS | 25 |
| 8.3 | DISPLAY OF STATUS | 25 |
| 8.4 | CONFIDENTIALITY AND RELATED PARTY RESTRICTIONS | 25 |
| 8.5 | INDEMNIFICATION | 26 |
| 8.6 | COVENANTS NOT TO COMPETE | 26 |
| 8.7 | NON-SOLICITATION | 27 |
| **9.** | **TRANSFER OF YOUR BUSINESS** | **27** |
| 9.1 | PURPOSE OF CONDITIONS FOR APPROVAL OF TRANSFER | 27 |
| 9.2 | NOTICE OF INTENTION TO TRANSFER | 28 |
| 9.3 | CONSENT BY US AND RIGHT OF FIRST REFUSAL | 28 |
| 9.4 | CONDITIONS FOR CONSENT TO TRANSFER | 28 |
| 9.5 | CHANGES OF OWNERSHIP NOT CONSIDERED TO BE TRANSFERS | 29 |
| 9.6 | CHANGES OF OWNERSHIP UPON DEATH OR TOTAL DISABILITY | 29 |
| 9.7 | ASSIGNMENT BY US | 29 |
| 9.8 | NO ENCUMBRANCES | 29 |
| 9.9 | PURCHASE OF YOUR BUSINESS BY US | 30 |
| **10.** | **TERMINATION OF AGREEMENT** | **30** |
| 10.1 | TERMINATION BY THE PARTIES | 30 |
| 10.2 | TERMINATION BY US | 30 |
| 10.3 | CROSS-DEFAULTS, NON-EXCLUSIVE REMEDIES, ETC. | 33 |
| 10.4 | RIGHTS AND OBLIGATIONS AFTER TERMINATION, NON-RENEWAL OR EXPIRATION | 34 |
| **11.** | **MISCELLANEOUS PROVISIONS** | **35** |

11.1    CONSTRUCTION OF CONTRACT ................................................................ 35
11.2    GOVERNING LAW .................................................................................... 35
11.3    NOTICES .................................................................................................... 35
11.4    AMENDMENTS .......................................................................................... 36
11.5    WAIVER ..................................................................................................... 36
11.6    INTEGRATION ........................................................................................... 36
11.7    NEGOTIATION AND MEDIATION ........................................................... 36
11.8    JURISDICTION AND VENUE .................................................................... 37
11.9    LIMITATION OF ACTIONS ....................................................................... 37
11.10   INDIVIDUAL DISPUTE RESOLUTION ..................................................... 37
11.11   JURY TRIAL WAIVER ............................................................................... 37
11.12   ATTORNEY FEES ...................................................................................... 37
11.13   SEVERABILITY ......................................................................................... 38
11.14   APPROVAL AND GUARANTIES; OWNERSHIP AND MANAGEMENT
DISCLOSURE .......................................................................................................... 38
11.15   ACCEPTANCE BY US ............................................................................... 38
11.16   DISCLAIMER OF REPRESENTATIONS; RIGHT TO COUNSEL ............... 38

ATTACHMENT 1      Territory and Premises
ATTACHMENT 2      Electronic Funds Transfer Authorization
ATTACHMENT 3      Non-Disclosure and Noncompetition Agreement
ATTACHMENT 4      Assignment of Telephone Numbers, Email Addresses and URLs and
                  Special Power Of Attorney
ATTACHMENT 5      Software License Agreement
ATTACHMENT 6      Personal Guaranty Agreement
ATTACHMENT 7      Special Release of Claims
ATTACHMENT 8      Ownership and Management

Customer Guarantee Addendum

SBA Addendum

# DENTAL FIX RX, LLC
# FRANCHISE AGREEMENT

## PARTIES

This Franchise Agreement ("Agreement") is between Dental Fix Rx, LLC ("Dental Fix" "we" or "us"), a Florida limited liability company, with its principal office at 4380 Oakes Road, Suite 814, Davie, Florida 33314, and _____ Michael Coticchio _____ (or "you"), and Michael Coticchio _____ (Guarantor(s)"). The Start Date of this Agreement is 12/15, 20/6.

## RECITALS

WHEREAS, we have developed and exclusively own a special system for operating mobile service centers which provides equipment maintenance, service and repair, equipment sales, hand piece repair, and consumable products (the "System") to dentists and dental practices ("Practitioners") under the trade name and principal mark DENTAL FIX RX® (a "Dental Fix Business");

WHEREAS, the System includes, among other things, the following elements, all or some of which may be deleted, changed, improved or further developed by us from time to time: business methods, technical knowledge, specialized services, brand concepts, operational processes, trade secrets, commercial ideas, advertising materials, marketing strategies, information on sources of supply, and training techniques, distinctive and characteristic trade names, trade dress, trademarks and service marks, including, but not limited to, our principal mark DENTAL FIX RX®, and any other trade names, service marks and trademarks that we may designate in writing for use with the System (the "Marks"), uniform standards, methods and procedures for business and financial operations, designs, signs, equipment, trade dress, training, operation, management, promotion, advertising, customer development and service techniques, and other technical assistance all of which may be changed, improved, or further developed by us;

WHEREAS, you recognize the benefits to be derived from receiving a franchise from us and desire to enter into this Agreement and receive those benefits. You recognize that your success in owning and operating a Dental Fix Business is speculative and will depend on many factors which include to a large extent your independent business ability;

WHEREAS, we have reviewed your application for a Dental Fix franchise and have decided to award you a franchise in accordance with the terms of this Agreement. In awarding this Agreement to you, we make no representations, warranties, or guaranties, express or implied that you may or will earn a profit, or that you may or will derive income from your Dental Fix Business that exceeds the price you paid to establish it; and

WHEREAS, we are willing to grant to you and you are willing to accept from us the right and obligation to own and operate a Dental Fix Business using our Marks and our System, throughout the term of this Agreement and according to the terms and conditions of this Agreement.

NOW THEREFORE, you and we agree as follows:

## 1.     DEFINITIONS

For purposes of this Agreement, when the following words and phrases begin with a capital letter, they shall have the meanings set forth in this Article 1:

**1.1     Clinic**

"Clinic" means the offices of Practitioner regardless of the number of Practitioners within the physical premises, hospitals, as well as any other business that your Dental Fix Business provides services and products to. A single Practitioner may count as one Clinic and a physical office space with more than one Practitioner may be counted as only one Clinic in our sole discretion.

**1.2     Corporate Support Fee**

"Corporate Support Fee" or "CSF" means the fees identified and required under Section 6.4 of this Agreement.

**1.3     Dental Fix Business**

"Dental Fix Business" means the franchised business that we authorized you to conduct under our Trade Names, Marks, and the System.

**1.4     Designated Principal**

"Designated Principal" means you in your role as professional operator of a Dental Fix Business or, if you are an entity, the person or persons whom you have appointed and we have certified as professional operator(s) of your Dental Fix Business.

**1.5     Franchisee**

"Franchisee" means an individual or company to whom we have granted a license or franchise to operate a Dental Fix Business.

**1.6     Franchise Network**

"Franchise Network" means the interdependent network composed of us, all Dental Fix Franchisees, our Related Parties, and any other people or companies that have been licensed to use our Trade Names, the Marks or all or any part of the Franchise System.

**1.7     Good Standing**

"Good Standing" means that you and each of your Designated Principals: (1) are not in default of your obligations or commitments, arising from this Agreement or any other agreement between you and us and, (2) are in compliance with all performance standards or similar standards in the Manual and/or that are part of the System.

**1.8     Manual**

"Manual" means our confidential operations manual that we will lend you or give you electronic access to during the term of this Agreement, and other communications delivered to our Franchisees generally, from time to time, at our sole discretion relating to procedures, methods, know how,

techniques, practices, rules, standards, business methods, technical knowledge, specialized services, brand concepts, operational processes, trade secrets, commercial ideas, advertising materials, marketing strategies, and information on sources of supply and training techniques, all as updated or modified from time to time, and containing information, forms, and requirements for the establishment and operation of a Dental Fix Business and for use of our Trade Names, Marks and System.

## 1.9    Marks

"Marks" means the trademarks, service marks, trade dress, logotypes, slogans, and other commercial symbols as changed from time to time in our discretion which we authorize you to use under this Agreement, including new marks which we may own and license to you or we may license and then sublicense to you in the future.

## 1.10    Premises

"Premises" is where your Dental Fix Business is located and each mobile service center van and equipment are located.   The physical address of your real property Premises, if any, is listed in **Attachment 1**.

## 1.11    Related Party

"Related Party" or "Related Parties" means people and companies associated with us or you, as the context suggests, including general partners, limited partners, shareholders, members, companies in which we or you have an interest, companies in which any person or company owning an interest in you also has an interest, your and our Parents, subsidiaries and affiliates, and your and our officers, directors, agents and employees.

## 1.12    Start Date

"Start Date" means the date written in the recitals to this Agreement above.   The Start Date may be changed only with our written consent.

## 1.13    System

"System" means all of the procedures, methods, know how, techniques, practices, rules, standards and all the intellectual property we license or sublicense to you under this Agreement for the operation of a Dental Fix Business, including our business methods, technical knowledge, specialized services, brand concepts, operational processes, trade secrets, commercial ideas, advertising materials, marketing strategies, information on sources of supply and training techniques.

## 1.14    Territory

"Territory" means the area identified in **Attachment 1** to this Agreement.

## 1.15    Trade Names

"Trade Names" means the commercial name Dental Fix Rx and such name(s) as may be added or substituted by us.

## 1.16    Transfer

Except as otherwise described in this Agreement, "Transfer" means any sale, gift, assignment or other change in the ownership of all or any part (1) of your rights or obligations under this Agreement, (2) of the capital assets of your Dental Fix Business or (3) of an ownership interest in you. The grant of a security interest or collateral interest in any of the foregoing shall be a "Transfer" for the purpose of this Agreement.

**1.17    We**

"We" and "us" means Dental Fix Rx, LLC our officers, directors, employees, and/or affiliates.

**1.18    You**

"You" (whether or not capitalized) means You if you are an individual or if You are an entity, You means your directors and officers, and any individual with a direct or indirect equity or beneficial interest in You. In addition, "You" means all people or entities that succeed to your interest by Transfer or other operation of law.

## 2.    LICENSED RIGHTS

**2.1    Granting Clause**

Subject to the terms and conditions contained in this Agreement, we grant to you the right and obligation and you accept from us the right and obligation to own and operate a Dental Fix Business within a designated Territory designated on **Attachment 1** to this Agreement only under our Trade Names, Marks, and System during the term of this Agreement and in accordance with our specifications, the Manual, and the provisions of this Agreement (the "Franchise").

## 3.    TERRITORY

**3.1    Territory**

**3.1.1    Your Territory**

You may conduct your Dental Fix Business only within the defined Territory specified in **Attachment 1** to this Agreement, except as otherwise expressly provided in this Agreement. During the term of this Agreement, provided that you are in compliance with this Agreement and any other agreements with us and subject to our rights set forth in Section 3.2 below and Section 7.2.3, we will not operate ourselves nor grant anyone else a franchise to locate or operate a Dental Fix Business in your Territory. Except as expressly provided in Section 7.2.3 below, you may not change your Territory without our prior written approval, which may be withheld for any or no reason.

Your Territory consists of the Clinics within the geographical area shown by map or zip codes listed in **Attachment 1** to this Agreement. We have the discretion to define the number of Clinics for your Territory, which typically includes between 50 and 350 Clinics. The number may differ for your Territory compared to other franchisees. You must have a sufficient number of mobile service centers to serve the needs of the Clinics in your Territory, which number may vary from time to time, but is reasonably likely to require one (1) mobile service center for every fifty to one hundred (50-100) Practitioners to be served by you. Annually, we will assess factors we consider relevant, which may include mobile service center capacity, your services provided, the market size, revenues, and other factors to determine if your market requires you to increase your number of mobile service centers or

make other changes in your Dental Fix Business. If we determine your market requires you to increase the number of mobile service centers for your Territory, you agree to purchase an additional mobile service center(s). If you desire to increase the number of mobile service centers for your Territory, you must obtain our prior written consent before purchasing an additional mobile service center for your Dental Fix Business. If your Territory has 250 Clinics or less, then we will not initially require you to purchase a mobile service center for your Dental Fix Business. However, if your Dental Fix Business maintains an average gross revenue of $10,000 per month for three (3) consecutive months, then we may, in our discretion, require you to purchase a mobile service center.

### 3.1.2    Territory Infringement

You may not solicit customers or service customers outside of your Territory without our advance written consent, which we may give or withhold in our discretion, based on factors, which may include without limitation existing coverage in the Territory, fulfillment of your obligations under the Agreement, finances, and market opportunities we perceive.

You shall not solicit customers, service customers, market or advertise outside of your Territory without our prior written consent, which we may give or withhold in our absolute discretion. If we consent to the operation or marketing of your Dental Fix Business outside of your Territory, we may, at any time thereafter, revoke our consent and you must immediately cease operating and/or marketing your Dental Fix Business outside of your Territory. We shall not, in any event or under any circumstances, be liable to you for any loss, injury or damage to you which may result from the failure of another Dental Fix franchisee to comply with this or similar obligation.

If you infringe upon another Dental Fix franchisee's territory by generating income from a customer for goods and/or services provided and/or rendered within such other Dental Fix franchisee's territory without first obtaining that franchisee's and our prior written permission, you shall be required to pay to us, within five (5) days after the infringement is proven: (a) for your first violation, One Thousand Dollars ($1,000), plus the invoice amount for the products or services sold; and (b) for your second and subsequent violations, Five Thousand Dollars ($5,000), plus the invoice amount for the products or services performed. These payments shall become our property and any distribution of these funds shall be in our sole discretion.

### 3.1.3    Reservation of Additional Territory

You may, only if we approve, in our sole discretion, reserve available territories for six (6) months by paying us a territory reservation fee of Fifteen Thousand Dollars ($15,000) per territory ("Territory Reservation Fee") and signing the Agreement to Reserve Additional Territory in the form attached to our Franchise Disclosure Document. The Territory Reservation Fee will be applied to the Initial Franchise Fee of the additional Dental Fix franchise at the time you sign the corresponding franchise agreement. The Territory Reservation Fee is not refundable under any circumstances, even if you do not open an additional Dental Fix franchise. However, if you do not timely purchase an additional Dental Fix franchise for the reserved territory, we will provide you with a credit equal to fifty percent (50%) of the Territory Reservation Fee you paid for the purchase of parts and equipment from us.

### 3.2    Rights Reserved by Us

We reserve and retain any and all rights with respect to the System and the Marks, the sale of any products and services anywhere in the world, including, without limitation, the right to now or in the future:

a.        operate or license others to operate mobile service centers offering the same products and services that are part of the System under the Marks anywhere outside the Territory or proximate to the Territory;

b.        to initiate and conduct national or major account programs in which large accounts contract directly with us for service on a national or regional basis, and agree upon pricing to be charged by us and/or our franchisees for servicing such accounts. We can fulfill services for national and major accounts in your Territory without paying you any compensation. However, we may collect fees from national and major accounts with locations inside your Territory and pay you a percentage of those fees to perform those services on our behalf. The amount and frequency of our payments to you based on servicing national or major accounts are at our sole and absolute discretion;

c.        to develop and operate and license others to develop and operate businesses, other than a Dental Fix Business, identified in whole or in part by the Marks, or other names and marks, in your Territory or proximate to your Territory, including, but not limited to, businesses that offer the same or similar services as Dental Fix Businesses;

d.        to directly merchandise, sell and distribute products, services and supplies that are part of the System, under the Marks, or other names and marks, anywhere, including in your Territory or proximate to your Territory, through any other method or channel of distribution, including without limitation, catalogs, telemarketing, shopping clubs, wholesale or retail facilities, the internet or other direct marketing sales. If we sell products, services or supplies directly to Practitioners in your Territory we may, but we are not obligated to, offer you a commission based on those purchases in our sole and absolute discretion. We may sell consumable supplies directly to Practitioners and Clinics within your Territory and we may, in our sole and absolute discretion, pay you a commission based on those sales;

e.        offer and sell products and services under the Marks or any other marks that are not part of the System through any distribution method anywhere, including within your Territory; and

f.        to purchase, merge, acquire or affiliate with any other chain or business regardless of the location of those businesses, and to operate, franchise, or license those businesses as Dental Fix Businesses operating under the System, the Marks, or any other mark following our purchase, merger, acquisition, affiliation, regardless of the location of such businesses (which may be within your Territory and proximate to your Territory).

From time to time, we may have the opportunity to offer you additional products and services to market in your Territory. If you are not ready, willing and able to do so, we may market them ourselves under the Dental Fix Name and Marks, or appoint anyone else to do so.

## 4.        TERM AND RENEWAL

### 4.1        Initial Term

The initial term of this Agreement will begin on the Start Date and will continue for twenty (20) years, unless otherwise terminated as provided for in this Agreement.

### 4.2        Renewal

You will have the right to renew your franchise rights for one additional term of ten (10) years, provided you comply with all of the following conditions:

(a) You provide us one hundred eighty days (180) days written notice of your desire to renew prior to the expiration of the initial term of this Agreement;

(b) You and your Related Parties are in full compliance with this Agreement and all other agreements with us and our Related Parties;

(c) You sign our then current form of franchise agreement at the time of renewal (with appropriate modifications to reflect the fact that the franchise agreement relates to the grant of a renewal franchise). This franchise agreement may be materially different from this Agreement, including, without limitation, different fees, marketing and advertising contributions, Territory, and requirements as to the number of mobile units required;

(d) You and your Related Parties sign a general release, in a form prescribed by us, releasing us and our Related Parties from all claims you have or may have against us or them;

(e) You pay us a renewal fee equal to twenty-five percent (25%) of the then-current initial franchise fee;

(f) You provide evidence satisfactory to us that you have the financial wherewithal and trained personnel to continue as a Dental Fix franchisee; and

(g) You purchase such additional mobile units, training, tools, software and other technology and refurbish your existing mobile units, software, other products and equipment as we require, so your franchise meets all then current standards and specifications for new Dental Fix franchises.

## 5. OUR SERVICES

We will perform the following services for you at times, to the extent and at places we select, as long as you are in Good Standing under this Agreement, and all other agreements with us or any of our Related Parties and the Manual. You are required to accept and receive these services, and to pay for them to the extent required.

### 5.1 Training

#### 5.1.1 Initial Training

Before the opening of your Dental Fix Business, we will conduct an initial training program in the operation of your Dental Fix Business under the System. You and, if you are an entity, your Designated Principal(s) and all employees you employ to provide technical services for your Dental Fix Business, must attend and successfully complete the initial training program to our satisfaction before you may open your Business. Your Dental Fix Business may only be supervised and managed by a person who has successfully completed our initial training program, and all operators of your mobile service centers must, likewise, have successfully completed our initial training program. You or your Designated Principal must faithfully attend all phases of the initial training program and complete it to our satisfaction, as certified by us in writing. Failure to successfully complete any aspect of that training program, as we determine in our sole discretion, constitutes grounds for immediate termination of this Agreement upon notice without providing you with any opportunity to cure.

The cost to you of initial training is Fifteen Thousand Dollars ($15,000) per trainee. Training fees are payable a minimum of thirty (30) days prior to training and no later than ninety (90) days after signing this Agreement and are non-refundable. For the initial training fee of Fifteen Thousand ($15,000), you may send one person to the initial training. The fee for additional trainees and for training each new employee is Fifteen Thousand Dollars ($15,000) per person. If you or any of your trainees do not successfully complete the initial training program to our satisfaction, the trainee may re-enroll in the initial training program, for which we will charge you a fee of Five Thousand Dollars ($5,000). In

addition to these fees, you are responsible for your and your trainees' travel, meal, lodging and living expenses.

In the event you cancel or reschedule the initial training for you, your employees or Designated Principals, you must provide us with written notice at least sixty (60) days in advance of the scheduled initial training commencement date. If you fail to do so, you must pay us a Five Thousand Dollar ($5,000) cancellation fee upon our demand.

### 5.1.2 On-Site Grand Opening Launch Training

We may, in our sole discretion, provide you with up to five (5) days of on-site training and assistance immediately before and/or after the commencement of operations of your Dental Fix Business. The duration and timing of such on-site training and assistance will be determined by us in our sole judgment. There will be no fee charged for this on-site grand opening launch training, if we decide to provide it, but you must pay us for our travel, lodging and meal expenses.

### 5.1.3 On-Going Training

You and your employees may be required to take additional training each year, as we deem appropriate. Additional training that is mandatory for franchisees will be provided without charge, but you will be responsible for lodging, meals, living and travel expenses.

We may also require you to attend training provided by third party manufacturers and other suppliers at your expense.

We may implement additional levels of training that may be required in order to qualify you or your employees to repair more types of equipment than in initial training. If for any reason you do not receive the additional levels of training and you, therefore, cannot offer the higher level of service, you will be required to send us or our designee the equipment for repair at your cost.

We may also conduct optional training classes and charge a fee for such classes which you may attend at your expense.

### 5.2 Consultation

Our personnel may be available to you by telephone or other electronic communication to consult on aspects of your Dental Fix Business operations as we deem appropriate in our discretion.

You understand and agree that all advice, consultation and guidance provided by us is only supportive of the operation of your Dental Fix Business and that the overall success of your Dental Fix Business is primarily dependent upon your business abilities and efforts, as well as the efforts of persons you employ, market factors and other factors that are not within our control.

### 5.3 Manual

We will lend you a copy of the Manual or make the Manual electronically available to you. We may revise the Manual periodically to reflect the development of our business and will distribute updated pages containing these revisions to you, or, if the Manual has been placed on an electronic communications system, we will post revised pages there. We reserve the right to make changes of any kind to the Manual, in our sole discretion. To be in Good Standing under this Agreement, you must comply with the Manual. The Manual and all methods, procedures, standards and requirements in it, and

all amendments to it made from time to time, are incorporated in this Agreement and made a part hereof. Failure to comply with the Manual is a breach of this Agreement.

### 5.4   Our Marketing

We may, but are not obligated to, conduct marketing activities on your behalf, including making marketing calls in your Territory, and, in our discretion, the creation and execution of advertising and promotional campaigns, development of new products, creation of advertising and marketing materials and other activities associated with building the Dental Fix brand and improving the System. We will determine the amount, timing, schedule and content of all marketing and advertising activities and programs, if any, in our discretion.

You agree, at your sole cost and expense, to issue, offer and participate in such rebates, give-aways, prize contests, special offers, public relations campaigns, product launches, price point promotions and other promotions in accordance with any advertising programs we may establish from time to time, so long as compliance with any of the foregoing does not contravene any applicable law, rule or regulation. You shall be responsible for the costs of such participation, which may include a commitment by you to purchase specified quantities of inventory and supplies to support these programs. You are required to obtain our prior written approval prior to implementing any program or promotion that we have not mandated or provided.

### 5.5   Proprietary Software

We will license to you, for the fee stated in Article 6, our or our designated supplier's proprietary software for use in the operation of your Dental Fix Business. You must use this software. You are required to sign the Software License Agreement set forth in **Attachment 5** to this Agreement. As recited in Attachment 5, you may be required to replace or upgrade the software and to purchase or license additional software at your expense to comply with our requirements.

### 5.6   Scheduling and Collections

Our personnel may schedule your services through our Operations Support Center ("Operations Support Center"). If you schedule services directly with a customer at the customer's request, you will advise the Operations Support Center of the appointment date, time and location and the nature of the service requested. Generally, you will advise your potential and existing customers to contact our Operations Support Center directly whenever they require your services.

If the customer does not remit payment to you within thirty (30) days of billing, you must accelerate your collection efforts using the guidelines and recommendations we make to you in the Manual or otherwise in writing.

You must report to us within three (3) days all monies you receive in any form from customers or in connection with your Dental Fix Business. You must deposit all such monies in an account over which we have the right and ability to transfer funds to ourselves electronically to satisfy any and all of your obligations to us as and when we determine. **Attachment 2** to this Agreement is the Electronic Funds Transfer ("EFT") Agreement between you and us that you are required to sign.

### 5.7   Equipment Service

#### 5.7.1   Small Equipment Repair (SER)

When you encounter repairs that cannot be repaired on-site, we will provide consultation and estimates to help determine if the equipment can be repaired by us in our Small Equipment Repair Center. If the equipment can be repaired by our Small Equipment Repair Center, then you must use us and no other vendor for such repairs in accordance with our procedures as set forth in the Manual or otherwise. You will be responsible for all shipping, delivery and repair costs and expenses and for sending us the equipment for repair.    The cost of such repairs may be more expensive than you otherwise might pay to a third-party service.

### 5.7.2   On-Site Technical Support and Repair Services

Upon your request, we or our designee may provide on-site technical support and repair services with qualified technicians as scheduled by us. You must pay us a fee for such services, which will depend upon the scope of the work to be performed, the number of technicians required, and the time and labor required, among other factors. You must also reimburse us for our or our designee's expenses for travel, lodging and meals. If we or our designee are able to provide the technical support and repair services requested, you must use us or our designee for such services and no other vendor.

## 5.8    Annual Meetings

In our discretion, we may hold an annual franchisee meeting/convention once each year to provide updates, offer continuing education, and encourage discussion of topics of importance to Franchisees and to the Franchise Network.  You or your Designated Principal must attend the national convention at your expense. We may charge a fee for these events, which will not exceed One Thousand Dollars ($1,000) per person. If we charge a fee, you must pay the fee at least 30 days in advance of the first day of such meeting/convention.   You will also be responsible for your travel, meals, living and lodging expenses.

In addition, you or your Designated Principal must attend at least seventy-five percent (75%) of the meetings, if any, called by our staff in your region each year.  Should we choose to implement a teleconference program, we may allow you to attend the meetings referred to in this section by teleconference.

## 5.9    Approved Equipment, Products and Services and Approval of Terms of Financing

We designate certain equipment, tools, products, supplies and/or services you must purchase, lease or receive from us or from a supplier or suppliers we designate, and we may do so with additional products and/or services in the future.  We also have the right to change our approved and designated suppliers in our discretion. You acknowledge that you may incur an increased cost to comply with such changes at your expense.  You must use the product(s), services, and suppliers we designate, including without limitation, mobile service centers, uniforms, tools, equipment, décor, logos, shelving, products, uplift/buildout services for your mobile service centers, merchandise, signage, small equipment repair services, special repair services, and accounting and financial services and supplier(s).  If you finance items, we reserve the right to approve the terms of your loan in advance.

You acknowledge and understand that we and/or our affiliates will be the only supplier of certain equipment, tools, products, supplies and/or services to you, and that the cost of such equipment, tools, productions, supplies and/or services may be higher than the cost of the same or similar equipment, tools, productions, supplies and/or services that may be purchased elsewhere. We shall have the right during the term of this Agreement to amend, alter, add to, delete, or revise the equipment, tools, products, supplies and/or services that you are required to purchase directly from us and/or our affiliates. You acknowledge that we and/or our affiliates will make a profit on the sale of equipment, tools, products, supplies and/or

services to you. You further understand that we and/or our affiliates may from time to time receive consideration from manufacturers, suppliers, vendors and/or other third parties in respect to sales of equipment, tools, products, supplies or services to you or in consideration of services rendered or rights licensed to such persons. You agree that we and/or our affiliates shall be entitled to said profits and/or consideration.

We shall have no obligation to sell you any equipment, tools, products, supplies and/or services, if you are in default under this Agreement.

We agree that we will use our reasonable efforts to fulfill or to cause our designees to fulfill your orders for equipment, tools, products, supplies and/or services pursuant to this Agreement. However, we shall not be liable to you in the event that we or our designee are not able to fulfill an order for equipment, tools, products, supplies and/or services placed by you.

The cost of the equipment, tools, products, supplies and/or services and other products and items you are required to purchase from us and/or our affiliates shall be based on the price then in effect, as set forth and identified from time to time on our confidential published price lists, in our Manual, or through other written communications.

You acknowledge and agree that in purchasing or leasing products, supplies, equipment, tools, materials, services or other approved or required items from us, our affiliates or suppliers approved or designated by us, **WE EXPRESSLY DISCLAIM ANY AND ALL WARRANTIES OR REPRESENTATIONS AS TO THE CONDITION OF SAME, INCLUDING, WITHOUT LIMITATION, EXPRESS OR IMPLIED WARRANTIES AS TO MERCHANTABILITY OR FITNESS FOR ANY INTENDED PURPOSE. YOU AGREE TO LOOK SOLELY TO THE MANUFACTURER OR SUPPLIER OF SAME IN THE EVENT OF ANY DEFECTS THEREIN.** In addition, we disclaim any liability arising out of or in connection with the services rendered or products furnished by any supplier approved or designated by us. Our approval or consent to any services, goods, suppliers, or any other individual, entity or any item shall not create any liability to us.

## 5.10    E-Mail Address for the Dental Fix Business

We will provide you with e-mail addresses with the dentalfixrx.com domain name for your Designated Principals' and your manager's use solely in connection with the operation of the Dental Fix Business only, and for no other purpose. You acknowledge and agree that you will not own these e-mail addresses or domain name and your rights to use such e-mail addresses will immediately cease upon the Transfer, expiration or termination of this Agreement. We will charge you an annual fee of no more than One Hundred Dollars ($100), as set forth in the Manual or otherwise, for each dentalfixrx.com e-mail address we assign to you. These e-mail addresses shall only be assigned to and used by you, your Designated Principals and your manager.

## 6.    YOUR PAYMENTS

## 6.1    Initial Franchise Fee

In consideration of the execution of this Agreement and our granting to you a franchise, you shall pay to us in immediately available funds an Initial Franchise Fee of Thirty Thousand Dollars ($30,000) when you sign this Agreement. This initial franchise fee is fully earned on receipt and is not refundable under any circumstances.

## 6.2    Marketing Contributions

### 6.2.1    Your Marketing Contribution Fee

You agree to pay to us a weekly Marketing Contribution Fee based on the number of Clinics in your Territory as follows:

| Full Term of Franchise Agreement Marketing Contribution | |
| --- | --- |
| Clinic Count | Weekly Total |
| 50 - 250 | $40 |
| 251 - and up | $65 |

Your weekly Marketing Contribution Fees will commence two (2) weeks from your grand opening date.

On occasion, as the market changes in your Territory, the Clinic Count may change based upon industry and market data that we select.  If the Clinic Count increases, then upon written notice from us, you will be required to pay the higher Marketing Contribution Fee based on the then-current Clinic Count in your Territory.  We may adjust the amount of this Marketing Contribution Fee each year up to a maximum increase of 6%.

### 6.2.2    Use of Marketing Contributions

Marketing contributions become the property of Dental Fix when paid ("Marketing Contributions").  We will direct all advertising programs that the Marketing Contributions finance with sole control over the strategic direction, creative concepts, materials, endorsements and media used in the programs, and the geographic, market and media placement and allocation of advertising. We may use the Marketing Contributions to pay for any and all marketing, promotion and advertisement of the Dental Fix System, including, but not limited to, market research, advertising materials, electronic media, websites, marketing agencies, media space, and time for a national or regional marketing program, a referral program, public relations activities, marketing grants to franchisees, collectively or individually, point-of-purchase materials, new product development and other similar projects, expenses of marketing and for marketing personnel and administering marketing programs or activities that we determine in our sole discretion to be in the best interests of the Dental Fix System.  We do not have any fiduciary obligation for administering the Marketing Contributions. We may spend in any fiscal year more or less than the total Marketing Contributions made in that year, borrow money from us or others (paying reasonable interest) to cover deficits, or invest any surplus for future use.  Any unused Marketing Contributions will rollover to the next calendar year. Upon your reasonable request, we may provide an unaudited report once each year of the amount of Marketing Contributions collected from franchisees and spent by us on marketing activities during the prior year. We will not use the marketing contributions to advertise the sale of franchises, except that we may include references to franchise availability in our advertising materials.  . You acknowledge that we undertake no obligation in administering Marketing Contributions to make expenditures for advertising or promotions for the benefit of you which are in anyway equivalent or proportionate to your contributions, or to ensure that any particular franchisee benefits directly or on a pro rata basis from the placement of advertising, or to insure that any advertising impacts or penetrates

your Territory at any level. Upon thirty (30) days prior written notice to you, we may suspend for any period of time or terminate (and, if terminated, reinstate) Marketing Contributions and our administering of Marketing Contributions. We will not terminate the administration of Marketing Contributions, however, until we have expended all Marketing Contributions received for advertising and promotional purposes.

### 6.2.3   Advertising Council

We may establish an advertising council composed of Dental Fix franchisees to consult with us concerning advertising and marketing matters. If formed, such advertising council will serve in an advisory capacity only. Members of the advertising council will prepare governing documents subject to the terms of this Agreement, the Manual and subject to our prior consent. We will choose the members of any such advertising council in our sole discretion from our franchisees in the Dental Fix Franchise Network. In order to be eligible for selection into the advertising council, you must be in Good Standing and must be actively involved in the betterment of the Dental Fix Franchise Network and System. If we appoint you to such an advertising council, you agree to join, participate in, and actively support the advertising council. We have the sole right and authority, in our discretion, to form, dissolve, change and/or merge the advertising council. We will determine the number of members of the advertising council in our sole discretion and provide you with a copy of the advertising council's governing documents upon your written request.

### 6.2.4   Local or Regional Advertising Cooperative

We do not currently require franchisees to join local or regional advertising cooperatives, but we may, and reserve the right to, in the future.

### 6.3   Photo Consent for Marketing

In connection with the advertisement, promotion and marketing of the Dental Fix System, you grant us an irrevocable license to use and/or display pictures and images of you and your Dental Fix Business in any advertising or marketing materials distributed by us, including in any and all printed or on-line brochures. You acknowledge and agree that you are not entitled to receive any compensation or any monetary consideration or remuneration of any kind for our use and/or display of your and your Dental Fix Business's picture and image in any advertising or marketing materials distributed by us, including in any and all printed or on-line brochures.

### 6.4   Corporate Support Fees

You agree to pay to us a weekly Corporate Support Fee based on the year of operation, the number of Clinics in your Territory, and the number of Mobile Service Center vans you have, as follows:

| First Year of Operation | | |
|---|---|---|
| **Clinic Count** | **Weekly CSF for 0-1 vans** | **Additional Weekly CSF for each additional van** |
| 50 – 250 | $195 | $97.50 for each additional van |
| 251 – and up | $370 | $185 for each additional van |
| **Second Year of Operation** | | |
| **Clinic Count** | **Weekly CSF for 0-1 vans** | **Additional Weekly CSF for each additional van** |
| 50 – 250 | $270 | $135 for each additional van |
| 251 – and up | $470 | $235 for each additional van |
| **Third Year of Operation through the term of this Agreement** | | |
| **Clinic Count** | **Weekly CSF for 0-1 vans** | **Additional Weekly CSF for each additional van** |
| 50 – 250 | $370 | $185 for each additional van |
| 251 – and up | $570 | $285 for each additional van |

Your weekly Corporate Support Fees commence two (2) weeks from your grand opening date. Beginning on the third anniversary of the Start Date of this Agreement, we may increase your Corporate Support Fee by a maximum of six percent (6%) annually.

On occasion, as the market changes in your Territory, the Clinic Count may change based upon industry and market data that we select. If the Clinic Count increases, then upon written notice from us, you will be required to pay the higher Corporate Support Fee based on the then-current Clinic Count in your Territory.

### 6.5    Automated Clearing House and Electronic Funds Transfers

You understand and agree that we will require that all Corporate Support Fees, Marketing Contribution Fees, software license fees, bookkeeping fees, and all other fees, payments and costs required to be paid to us or our affiliates, or any advertising cooperative that may be established, must be paid by Electronic Funds Transfer (EFT), unless otherwise specified by us, to ensure that the fees, payments and costs are received on the day due and/or that past due invoices are paid to us or our affiliates. You must establish a designated checking account in which you maintain at all times a balance of at least twice as great as your average weekly Corporate Support Fee and Marketing Contribution Fees and sign an agreement in the form of **Attachment 2** to this Agreement, or in any other form required by the bank to enable us to withdraw funds from the account via EFT. You will pay all fees associated with such transfers. In the event any EFT is not honored by your bank for any reason, you shall pay to us, upon demand, a non-sufficient funds fee of One Hundred Dollars ($100) per incident.

### 6.6    Software License Fees

Commencing your first month of operations, you agree to pay us a monthly software license fee of Two Hundred Fifty Dollars ($250) per copy, and for each copy of the software you are required to license from us, you must sign the Software License Agreement in the form of **Attachment 5** to this Agreement or, if we require, a license agreement required by our software supplier. You are required to

have one copy of our software for each of your Mobile Service Center vans, or if you are not required to operate a Mobile Service Center van, you are required to have at least one copy for your Dental Fix Business. In addition, if you have more than one user, we will charge you an additional Two Hundred Fifty Dollars ($250) per month per each additional user (the fees set forth in this Section are collectively referred to as "Software License Fees").

### 6.7    Transfer Fee

The requirements for any Transfer are set forth in Article 9 hereof. Except as specifically provided in Article 9, you must pay us a transfer fee of Fifteen Thousand Dollars ($15,000) ("Transfer Fee") for any Transfer. If the transferee commences and fails to successfully complete our initial training program, we will refund fifty percent (50%) of the Transfer Fee. Under no other circumstance is any portion or all of the Transfer Fee refundable.

### 6.8    Interest on Late Payments

Any payment that we do not receive from you when due will bear interest at eighteen percent (18%) per year, or at the highest rate allowed by applicable law, whichever is less, on the date when payment is due. The fact that we impose these charges is not a waiver of our right to be paid on time.

### 6.9    Application of Payments

We may apply any payment you make to us (which payments include without limitation all monies we obtain through EFT), at our option, to any past due debt you owe us regardless of how you state the payment should be applied. We do not have to accept payments after they are due or extend credit or otherwise finance your operations. If you do not pay all amounts when due, we may suspend our services and support until you cure the failure. We may terminate this Agreement if you fail to make any payments due to us within any applicable cure period.

### 6.10    Annual Payment Adjustments

We may in our sole and absolute discretion, on an annual basis, increase your Corporate Support Fee, Software License Fees, Bookkeeping Fee, Marketing Contribution Fees, and other fees owed to us under this Agreement, by no more than six percent (6%) from the previous year.

### 6.11    No Withholding of Payments

You agree not to withhold payment of your Corporate Support Fee, Software License Fees, Bookkeeping Fee, Marketing Contribution Fees, or any other amounts due to us or our affiliates on grounds of the alleged non-performance of any of our obligations under this Agreement.

### 6.12    Commencement of Payments

Except as expressly provided in this Agreement, the Corporate Support Fee, Marketing Contribution Fees, Software License Fees and all other payments and fees due under this Agreement, shall be paid by you either weekly or monthly, as provided in this Agreement, on a day prescribed in the Manual or elsewhere. All Corporate Support Fees, Marketing Contribution Fees, Software License Fees, Bookkeeping Fees and all other fees required to be paid under this Agreement will commence as set forth in this Agreement and will continue to be due during the entire term of this Agreement.

### 6.13   Service Fee

If we allow you to and you make any payment to us or our affiliate by credit card for any fee or required payment to us or our affiliate, we or our affiliate may charge a service fee of up to three percent (3%) of the total charge.

## 7.   YOUR OBLIGATIONS

### 7.1   Use of Trade Name and Marks

#### 7.1.1   Our Representation and Warranty

We represent and warrant to you that we have the right to use the Trade Name and Marks throughout the United States and to sublicense or license them to you as the case may be under this Agreement.

#### 7.1.2   Your Use

Nothing in this Agreement will give you any right, title or interest in or to any of the Trade Names or Marks except as a mere privilege and non-exclusive license, during the term of this Agreement, to display and use the Trade Name and Marks according to the limitations set forth in this Agreement. You understand and agree that the limited license to use the Trade Name and Marks granted by this Agreement applies only to those Trade Names and Marks which we designate (and have not designated as withdrawn from use), and those Trade Names and Marks which we may in the future designate in writing. You agree not to represent in any manner that you have acquired any ownership or equitable rights in any of the Trade Name or Marks by virtue of the limited license granted under this Agreement or your use of the Trade Name and Marks. All uses of the Trade Name and Marks by you, whether as a trademark, service mark, trade name or trade style, will inure to our benefit. Following the expiration or termination of this Agreement, no monetary amount will be attributable to any goodwill associated with your use of the Trade Name or Marks or operation of the Dental Fix Business.

You agree that the Trade Name and Marks are our exclusive property. You agree that you will not do or permit any act or thing to be done in derogation of any of our (or our affiliates') rights in connection with the Trade Names or Marks, either during or after the term of this Agreement. You agree not to apply for or obtain any trademark or service mark registration of any of the licensed Trade Names or Marks or any confusingly similar marks in your own name. You agree that you will not, during or after the term of this Agreement, in any way dispute or impugn the validity of the Trade Names or Marks, our (or our affiliates') rights to the Trade Names or Marks, or our, our affiliates, or our other franchisees' rights to use the Trade Names or Marks.

You may only use the Trade Names and Marks in the operation of a Dental Fix Business as provided for in this Agreement, the Manual, or otherwise as required by us. You may not use any other trade names or marks in connection with operation and marketing of your Dental Fix Business. You may not use our Trade Names and the Marks as part of your legal name (corporate, limited liability company, or partnership name), although you may use it as your fictitious name of your business.  You must commit no act or omission that would lead to confusion between you as franchisee and us as franchisor.

#### 7.1.3   Changes in Trade Name and Marks

We have invested time, energy, and money in promoting and protecting our Trade Names and other Marks.  We do not presently intend to change them.  However, rights in intangible property, such as

the Trade Names and Marks are often difficult to establish and defend. Changes in the cultural and economic environment within which the System operates, third party challenges to our rights in the Marks, or other factors may make it desirable or necessary to change the Trade Names and Marks. We therefore reserve the right to change our Trade Names and Marks and the specifications for each when we believe, in our reasonable discretion, that the changes will benefit the Franchise Network. You must promptly conform to any such changes. You will be responsible for the costs associated with the ordering of new signs and other trade dress, letterhead, envelopes, business cards, and all other costs associated with the name change.

### 7.1.4   Marketing Materials

All marketing and promotion that you undertake must be truthful, conform to the highest standard of ethical advertising and comply with any applicable laws and regulations. You must submit to us copies of all promotional and advertising materials that you propose to use at least fourteen (14) days before the proof approval deadline. We will review the materials and will notify you whether we approve or reject them. We may withhold our approval for any reason in our discretion. If we do not notify you of approval or rejection before the proof approval deadline, the materials are disapproved. Even if we approve specified materials, we may later withdraw our approval if we reasonably believe it is necessary to make the advertising conform to changes in the System or to correct unacceptable features of the advertising. If we prepare marketing materials, you must purchase such materials from us or our designee.

### 7.1.5   Legal Protection

You must notify us immediately in writing if you become aware of any unauthorized use of our Trade Names, Marks, or System or any part thereof. You must promptly notify us in writing of any claim, demand, or suit against you or against your principals in connection with your use of the Trade Names, Marks or System. In any action or proceeding arising from or in connection with any such claim, demand or suit, we may select legal counsel, and we shall have the right to control the proceedings. We will defend you against any third party claim, suit or demand arising out of your proper use of the Marks, as authorized by us and in accordance with the terms of this Agreement. If we determine that you have not used the Trade Names or Marks in accordance with the Franchise Agreement, you must bear the cost of defense, including the cost of any judgment or settlement, as well as any of our attorney's fees and costs. If there is any litigation due to your use of the Marks or Trade Names, you agree to sign all documents and do all things as may be necessary to carry out a defense or prosecution, including becoming a nominal party to any legal action.

### 7.2   Quality Assurance; Premises and Mobile Service Center; Beginning Operations; Compliance with Manual

### 7.2.1   Survival of Non-Disclosure/Non-Competition Covenants

Your obligations and the obligations of Related Parties concerning confidentiality and the agreement not to compete with us, contained in this Agreement and **Attachment 3** to this Agreement, will survive the termination, expiration or non-renewal of your Dental Fix Franchise Agreement or any Transfer.

### 7.2.2   Premises and Mobile Service Centers

You must purchase or lease sufficient vehicles with the specifications we require, to operate your mobile service centers, fitted with our custom equipment package, tools, required inventory and image

elements.  If your Territory has more than 250 Clinics, then you must acquire and operate mobile service center vehicles.  If your Territory has 250 Clinics or less, then, in accordance with Section 3.1 of this Agreement, we will not initially require you to purchase a mobile service center vehicle for your Dental Fix Business, and you may use a vehicle you already have, as long as we approve it for use in connection with your Dental Fix Business.  If you use a vehicle you already have, you will be required to purchase a car magnet with the *Dental Fix Rx*® Mark to display on your vehicle while servicing or visiting Practitioners.

If you are required to purchase a mobile service center, you must purchase and have the mobile service center delivered to our corporate headquarters at least 7 days, but not more than 14 days, prior to the first day of your scheduled initial training program.  If you do not have the mobile service center delivered to our headquarters at least 7 days prior to the first day of your scheduled initial training program, then we will charge you an expedited mobile service center buildout fee of Five Thousand Dollars ($5,000) ("Expedited Buildout Fee") if we, in our sole discretion, decide to expedite the buildout of and ready your mobile service center for the initial training program. If we decline to expedite the buildout of your mobile service center or are unable to complete the buildout prior to the first day of your scheduled initial training program, for any reason(s), then we may, in our sole discretion, require you to reschedule your initial training program, in which case you will be charged the $5,000 cancellation fee.

During the term of this Agreement, you may not use the mobile service centers for any purpose other than the operation of your Dental Fix Business.

If your Territory has more than 250 Clinics, you must secure a location from which to operate your Dental Fix Business with (1) adequate parking; (2) secure, dry, clean storage for inventory and supplies adequate for your Territory; and (3) office and storage space for records and files.    If your Territory has 250 Clinics or less, you may operate your Dental Fix Business from your home or office, but you will need a secure, dry, clean storage area for inventory and supplies adequate for your Territory and storage space for records and files.

You must buy and maintain, according to our specifications in the Manual, a computer running the software we designate, telephone system, fax machine, printer and high speed digital access to your computer, a GPS system to be installed on each mobile service center, and all other equipment and materials required by the System and the Manual, as amended from time to time.  All services you provide to customers must be logged into the computer software we require you to purchase. We or our designated supplier may charge you a GPS System Fee of up to Fifty Dollars ($50) per month to maintain and support the GPS system that is required to be installed on each of your mobile service centers.  We may, in our discretion, increase the GPS System Fee each year up to a maximum of six percent (6%) from the previous year.

You must order all parts and supplies used in connection with your Dental Fix Business from us or our designated or approved supplier in the manner we specify in the Manual or otherwise in writing to you from time to time.

If we supply guidelines concerning premises, equipment, products, supplies or any other matter related to your business, you must follow them.   You must advise us in writing immediately if your mobile service centers or equipment are not located at the address on this Agreement.

### 7.2.3    Beginning Operation

You shall commence the operation of your Dental Fix Business within 240 days from the Start Date and no later than 7 days after the receipt of our written approval to commence operation. You may

not begin to operate your Dental Fix Business until we consent in writing.  By consenting that your Dental Fix Business may begin operation, we do not guarantee or represent that it will be successful.

In the event you fail to commence operation of your Dental Fix Business within 240 days from the Start Date, we shall have the unconditional right, upon notice ("Notice") to you, to immediately terminate any and all of your rights granted under this Agreement to the Territory specified in Attachment 1 to this Agreement; in which case, all such rights shall revert back to us.  In the event we exercise such right, you agree that you shall no longer have any right to operate your Dental Fix Business in the Territory, have no other rights or obligations in or to the Territory, and that we shall have the absolute right to sell a Dental Fix Business franchise(s) for the Territory, all as of the date of delivery of the Notice.  You will have 180 days from the delivery of the Notice to select another then available territory in any State in which we may then grant franchises, and you will have 90 days from the date we provide our written consent of the new territory to commence operation of your Dental Fix Business.  We must first consent in writing to the proposed new territory, and, if we consent, upon such consent you must sign an amended Attachment 1 and/or such other documents as may be necessary to identify and confirm our consent to the new territory.  If you fail to select another available territory we consent to within 180 days from the date of delivery of the Notice, or fail to commence operation of your Dental Fix Business within 90 days from the date we provide our written consent of the new territory, we shall have the right to terminate this Agreement upon notice without providing you with any opportunity to cure.

### 7.2.4   Compliance with Manual

You must operate your Dental Fix Business in complete compliance with the standards and specifications stated in the Manual.  We may make changes in our standards and specifications at any time and in our sole discretion in the Manual or otherwise in writing.  Such changes may require the purchase of new equipment, supplies, software or other goods, completion of additional training or other costs to you.  We will require such changes to meet the technological and market demands of the dental equipment service and supply industry for the benefit of the Franchise Network.  During the first twelve (12) months of this Agreement, you will not be required to make additional expenditures for new equipment newly added to the System.  You must promptly conform to the modified standards and specifications at your own expense.  If you have a paper copy of the Manual, you must at all times keep your copy of the Manual current by adding any revised pages we give you and discarding obsolete pages.  If there is any dispute as to the requirements of the Manual at any point in time, the terms of our master copy of the Manual will control.

Your Dental Fix Business must be confined to the offer and sale of only such products, equipment, supplies and services we approve or designate, and as set forth in our Manual or otherwise.  You must offer from your Dental Fix Business all products, equipment, supplies and services we require.  We have the right to make modifications to these items from time to time in our sole discretion, and you agree to immediately comply with any modifications.  You may not offer or sell any other products, equipment, supplies or services from your Dental Fix Business without our prior written consent, which we may withhold for any reason in our sole discretion.

### 7.2.5   Customer Satisfaction

We may use various techniques to obtain customer feedback concerning your services.  If the feedback indicates that your performance does not meet our current standards, or if we receive customer complaints about your Dental Fix Business, you agree to immediately take such steps as are necessary to address and correct these performance and service deficiencies.  In addition, in the event a customer of your Dental Fix Business contacts us to lodge a complaint, we reserve the right to address the customer's complaint to preserve goodwill and prevent damage to the Dental Fix brand.  Our right to address

customer complaints may include refunding money to the complaining customer, in which case you must reimburse us for these amounts upon demand.  We may contact any customer of your Dental Fix Business at any time for any purpose.

### 7.2.6    Minimum Annual Performance Standard

You must exercise your best efforts to maximize the sales of your Dental Fix Business in your Territory.  These efforts may include but are not limited to daily strategy and planning, cold calling and marketing to offices, participation in on-going training exercises, and periodic conference calls.  There is no precise revenue quota, but we will evaluate your performance no less than annually. If your revenues fall below a minimum threshold that we determine in our sole and absolute discretion, we have the right, but not the obligation, to send our operational personnel to provide additional training, guidance, and/or recommendations, as we may deem appropriate, and you must pay for such personnel's expenses including travel, lodging and meals. You must comply with our personnel's recommendations to improve your Dental Fix Business within the time period required.

### 7.2.7    Special Repairs

Clinics use some equipment that you will not be trained to repair in our initial training program. You must, nonetheless, use your best efforts to sell repairs and service of such equipment to Clinics in your Territory and ship equipment to us or our designated provider for repair or service.  Repairs, pricing and logistics will be as stated in the Manual.

### 7.2.8    Product and Service Warranty

You must offer to customers and honor at your expense our standard warranty on products and services which is contained in the Manual and may, as such, be revised from time to time in our discretion.  In the event that a warranty claim involves a defect in a part that we supplied, we will replace the part.  All other expenses associated with such a claim will be borne by you.  In the event of a warranty claim associated with an item that you sent to us for repair, we will repair or replace the item as we see fit.

### 7.2.9    Maintenance and Upgrades

You must keep the Premises, your mobile service centers, your vehicle (if you are not required to have a mobile service center), and all other business equipment clean, orderly and in good repair. Periodically, we may require you to upgrade your mobile service centers and equipment at your expense to meet our then-current standards and specifications.  We may require you to replace each mobile service center when it has been in service for five (5) years.  You must promptly comply with any such repair, upgrade or replacement request at your sole expense.

### 7.2.10   Professional Conduct

In all your dealings with us, your customers, your employees, your suppliers and others, you must adhere to the highest possible standards of professional conduct, honesty, integrity, legal and ethical behavior, dependability, good faith and fair dealing.  You may not engage in any conduct that, in our reasonable opinion, may injure the goodwill associated with the Trade Names and Marks.  You must exert your best efforts to promote and maintain the excellent reputation of the Dental Fix Business and the Franchise Network.

To promote the goodwill and reputation of the Trade Names and the Marks and overall image and good name of the Franchise Network, you shall not permit anyone to operate a mobile unit: (1) who is out

of uniform (as described in the Manual) or, (2) who has been convicted of or pleaded guilty or no contest to a felony or any violation involving driving and alcohol or has his driver's license suspended or revoked.   Notwithstanding the forgoing, however, we will not have the power to hire or fire your employees, and you alone control your employees' wages, hours, assignments, hiring, firing and any benefits.

### 7.2.11   Inspections

You must allow our representatives to enter and inspect your mobile service centers without prior notice, and must allow our representatives to inspect any location where assets of or records of your Dental Fix Business are located with reasonable advance prior notice, during normal business hours to inspect, audit, photocopy, photograph and videotape your Dental Fix Business operations and records and to interview your employees and customers.  You must correct any deficiencies in your operation within the reasonable time specified in any written notification to you of such deficiencies.  If you do not take such effective steps to bring your operation up to our standards, your failure to do so will be a material breach of this Agreement. In addition, upon reasonable request, you must furnish to us, in whatever format we require, all customer information and records for your Dental Fix Business.

### 7.2.12   Notification of Legal Proceedings

You must notify us promptly if you are served with a complaint in any legal or administrative proceedings or demand for arbitration that is in any way related to your Business by any private party or if you become aware that you are the subject of any complaint to or by or investigation by a governmental authority or consumer protection agency related to your Business.

### 7.3   Compliance with Laws, Rules and Regulations

You agree to operate the Dental Fix Business in strict compliance with all applicable laws, rules and regulations of all governmental authorities; comply with all applicable wage, hour and other laws and regulations of federal, state and local governments; prepare and file all necessary tax returns; and, pay all taxes imposed on you related to the Dental Fix Business. You agree that you will be responsible for compliance with all applicable laws, rules and regulations, including, without limitation, the Americans with Disabilities Act.

You shall obtain all required licenses, permits, registrations and other required forms of governmental approval for you to offer and sell the products and services which now or in the future are or become part of the System; shall maintain such licenses and permits in full force and effect and good standing throughout the term of this Agreement; and, shall post same as required by law.  It is your sole responsibility to determine the licenses, permits or registrations that are required for you to operate the Dental Fix Business in the State in which your Territory is located. We make no representation or warranty of any kind that you will be able to obtain all required approvals, consents and licenses.  You shall forward copies of all health, sanitation or other regulatory agency reports to us immediately upon receipt thereof. You shall take prompt and effective action to correct any violation set forth in a notice issued by any governmental or municipal authority concerning such licenses and permits.

### 7.4   Personnel and Full Time Efforts

You or your Designated Principal must devote full time efforts to the management and operation of your Business.  You must ensure that your employees preserve good customer relations and comply at all times with this Agreement and the Manual.

## 7.5   Financial Information and Bookkeeping Services

### 7.5.1   Records

You must keep financial records of your Dental Fix Business in the form prescribed by the Manual for at least six (6) years.

### 7.5.2   Reports and Use of Supplier/Bookkeeping Fee

You must use us and/or our designated supplier for bookkeeping and reporting services, and you shall pay us for such services a fee of Three Hundred Dollars ($300) per month per Mobile Service Center Van, or Three Hundred Dollars ($300) per month if you are not required to operate a Mobile Service Center van (the "Bookkeeping Fee"). In addition, if your Dental Fix Business has not been in operation for the entire fiscal year for which we or our designated supplier prepares your Dental Fix Business's income tax return statements, we or our designated supplier will charge you an additional fee of not more than Fifty Dollars ($50) for each month of the tax return fiscal year your Dental Fix Business was not in operation. You must timely provide us and/or our designated supplier the financial reports and data required to provide such bookkeeping and reporting services and in the format we may require. We or the designated supplier will use the reports and data that you supply to us and/or the designated supplier, and will produce periodic profit and loss statements and prepare and file income tax returns for your Dental Fix Business only. For that flat fee, we or the designated supplier will also provide payroll service for up to one employee including calculation of gross pay, net pay, tax withholding and execution of direct deposit payments to such employee. If you have more than one employee, you may choose to hire us or our designated supplier to provide payroll service for those additional employees at an additional fee. The additional fee for that service will be comparable to fees charged by payroll service companies in the locale of our headquarters for businesses of similar size. We or our designated supplier may charge you additional fees for other optional bookkeeping and reporting services as we or our designated supplier may offer, from time to time, as set forth in the Manual or otherwise. The Bookkeeping Fee shall commence your first month of operations.

We may subcontract all or part of the bookkeeping and reporting services. We may disclose or use the data derived from these reports and other financial statements for your Dental Fix Business for any purpose we deem appropriate, in our sole discretion.

If you fail to provide the financial reports and data that we and/or our designated supplier require by the 15th day of each month for the prior month (or on such other day or on such other reoccurring basis designated by us in the Manual or otherwise), you will be charged a late fee of Fifty Dollars ($50) for every week that you are late. The Bookkeeping Fee may, in our sole discretion, be increased annually by a maximum of six percent (6%).

You must buy or lease computer and communications equipment and software that meet specifications stated in the Manual to create financial reports and transmit them to us electronically.

You must also submit to us or our designated supplier upon request copies of all your federal, state, and local income tax returns. All information that you furnish to us may be shared with a designated supplier, and all information furnished by you to a designated supplier may be shared with us. We may use this data to confirm that you are complying with your obligations under this Agreement, to formulate earnings and expense information to show to prospective franchisees and to advise you on

operations.  We will not, however, disclose your financial information with your identity attached or included, without your written permission or a valid order of a court or proper officer.

## 7.6    Insurance

You must purchase and maintain a policy or policies of commercial general liability, commercial auto insurance, property insurance, worker's compensation (if you have employees) and any other insurance required under applicable law or that we may periodically require. All such insurance policies must be written by an insurance company reasonably satisfactory to us with a Best rating of "A-" or better. To the extent legally permissible, all required policies must name Dental Fix RX, LLC as an additional insured. Each insurance policy must contain a waiver of all subrogation rights against us, our affiliates and their successors and assigns and must provide for thirty (30) days prior written notice to us of a policy's material modification, cancellation or expiration.  Each insurance policy must be satisfactory to us in form, substance and coverage.  Failure to maintain the insurance required under this Agreement and to provide us evidence of the insurance is a material breach of this Agreement.  If you fail to obtain the insurance required by this Agreement and as required by us from time to time, we reserve the right, in our sole discretion, to obtain insurance on your behalf and you agree to promptly reimburse us for the cost of such insurance.  Upon demand, you agree to immediately pay us such charges together with a twenty percent (20%) administrative fee for our expenses in obtaining insurance on your behalf.

You must obtain all insurance policies required under this Agreement and provide us with copies of your certificates of insurance prior to attending the initial training program. Upon our request, you shall supply us with copies of all insurance policies and proof of payment. Upon renewal of all insurance policies, you shall send us current certificates of insurance and copies of all insurance policies.

We may increase the minimum coverage requirements as necessary to reflect inflation or other changes in circumstances.  The insurance maintained by us does not in any way limit or affect your obligation to obtain and maintain the following policy or policies in the amounts specified below. Our performance of your obligations does not relieve you of liability under the indemnity provisions set forth in this Agreement.

### 7.6.1 General Liability Insurance

Your commercial general liability policy must include the following minimum limits and must provide coverage for us, as an additional insured, on a primary and non-contributory basis notwithstanding any other insurance and whether or not collectible:

| | Limits |
| --- | --- |
| Each Occurrence | 1,000,000 |
| Damage to Rented Premises | 100,000 |
| MED EXP (any one person) | 5,000 |
| Personal & ADV Injury | 1,000,000 |
| Genreal Aggregate | 2,000,000 |
| Products - COMP/OP AGG | 1,000,000 |

Under a general liability insurance policy, the insurer is obligated to pay the legal costs of a business in a covered liability claim or lawsuit.  Covered liability claims include bodily injury, property damage, personal injury, and advertising injury (damage from slander or false advertising).  This includes

injuries at your place of business, or if an employee damages property or injures someone at a client's site. The insurance company also covers compensatory and general damages. Punitive damages are not covered under general liability insurance policies because they are considered to be punishment for intentional acts.

In the event an additional mobile service center van(s) is added to your Territory, you must purchase an umbrella policy with total coverage of at least One Million Dollars ($1,000,000) per van, which provides excess auto and general liability coverage. Such umbrella policy shall include Dental Fix RX, LLC as an additional insured and shall provide coverage for us, as an additional insured, on a primary and non-contributory basis notwithstanding any other insurance and whether or not collectible.

### 7.6.2 Commercial Auto Insurance

This insurance is mandatory whether or not the vehicle is owned or leased and protects the insured against losses involving the use of their commercial vehicles.

This type of business insurance covers a variety of vehicles and is also referred to as commercial car insurance, truck insurance, or fleet insurance. Commercial auto insurance, like your personal auto policy, provides similar coverage, such as liability, collision, comprehensive, medical payments (or personal injury protection) and uninsured motorist's coverage. However, there are also differences between a commercial auto insurance policy and your personal auto policy that may include eligibility, definitions coverage, exclusions and limits.

The auto policy must state One Million Dollars ($1,000,000) combined single limits naming Dental Fix RX, LLC as an additional insured.

### 7.6.3 Other Insurance

You must also carry property insurance with fire and lightening, extended coverage, theft, vandalism and malicious mischief, inland marine insurance, and flood insurance (if your Dental Fix Business is in a designated flood hazard area) on the mobile service center van(s) and all fixtures, equipment, supplies, and other property used in the operation of the Dental Fix Business, for not less than 100% of the replacement value of same.

In addition, if you have employees and if required by applicable law, you must maintain policies of workers' compensation insurance affording statutory coverage, employers liability coverage subject to a limit of no less than $1,000,000 each employee, $1,000,000 each accident and $1,000,000 policy limit, unemployment insurance, and/or disability insurance in such amounts as prescribed by law in your Territory, and any other types of insurance required by applicable law.

## 7.7    Payment of Indebtedness

You must pay promptly when due all taxes and debts that you incur in the conduct of your Dental Fix Business, particularly debts to us and to our approved or designated suppliers. You and your Related Parties must remain current in any financial responsibilities to your lessor and to us and our Related Parties.

## 7.8    Assignment of Listings

You must sign **Attachment 4** to this Agreement, assigning us rights to the telephone numbers, email addresses, URLs and all other listings you use as a Franchisee or in any way associated with your Dental Fix Business, effective upon termination, expiration or non-renewal of this Agreement.

### 7.9    Guaranty and Subordination

You, your spouse, and any person or entity holding at least a twenty percent (20%) interest in you or your Dental Fix Business, must sign **Attachment 6** to this Agreement, the Personal Guaranty and Subordination Agreement.

## 8.    RELATIONSHIP OF PARTIES

### 8.1    Interest in Marks and System

You may not at any time do or cause to be done anything contesting or impairing our interest in our Trade Names, Marks or System.  You have not been granted any rights in our Trade Names, Marks or System except for your right to use them according to the express terms of this Agreement.  We retain the right to grant other franchises or licenses to use the Trade Names, Marks and System on any terms that we would like, subject only to your rights described in this Agreement.

### 8.2    Independent Status

You are an independent contractor and must make this fact clear publicly in your dealings with suppliers, lessors, government agencies, employees, clients, customers, and others.  You must rely on your own knowledge and judgment in making business decisions, subject only to the requirements of this Agreement and the Manual.  This Agreement does not create a fiduciary relationship, joint venture, partnership, or agency relationship between you and us, and neither party to this Agreement is an employee, agent, servant, partner or joint venture of the other; meaning that, except as expressly provided for in this Agreement, no party to this Agreement has the authority, implied, apparent or expressed, to lawfully bind the other with respect to any matter.  No employee of yours shall be deemed to be an employee of ours. Neither you nor any of your employees whose compensation for services is paid by you may, in any way, directly or indirectly, expressly or by implication, be construed to be an employee of ours for any purpose, including, but not limited to, with respect to any mandated or other insurance coverage, tax or contributions, or requirements pertaining to withholdings, levied or fixed by any city, state or federal governmental agency. We will not have the power to hire or fire your employees, and you alone control your employees' wages, hours, assignments, hiring, firing and any benefits.  You may not use the Dental Fix Trade Names or Marks as part of your legal name (corporate, limited liability company, or partnership name), although you may use it as part of your fictitious name of your business.

### 8.3    Display of Status

Business cards, stationary, purchase order forms, invoices, leases, tax returns, and other documents you use in your business dealings with suppliers, lessors, government agencies, employees, and clients must clearly identify you as an independent legal entity operating under a Dental Fix franchise.

### 8.4    Confidentiality and Related Party Restrictions

The information, ideas, forms, marketing plans, and other materials we disclose to you under this Agreement, whether or not included in the Manual, are our confidential and proprietary information and trade secrets. You agree to maintain the confidentiality of all such material. You may not disclose any such information to any third party, except to your employees and agents as necessary in the operation of your Dental Fix Business and except as we authorize otherwise in writing. It is your responsibility to ensure the compliance of your Related Parties (which includes without limitation all your employees) with the provisions of this section. Each of your Related Parties must sign a written nondisclosure agreement and noncompetition agreement, in the form of **Attachment 3** to this Agreement, when you sign this Agreement. You must obtain a nondisclosure and noncompetition agreement in the same form from each new Related Party with which you become affiliated during the term of this Agreement within five (5) days from such affiliation and promptly send a copy of that nondisclosure agreement to us. This provision shall survive termination or expiration of this Agreement.

## 8.5    Indemnification

You agree to indemnify and hold us harmless from all claims, obligations and damages, directly or indirectly arising out of your Dental Fix Business' operation, the business you conduct under the Agreement or your breach of the Agreement. For the purposes of this indemnification, "claims" include all obligations, damages (actual, consequential, incidental, punitive, or otherwise) and costs that we incur in defending any claims against us, including, without limitation, reasonable accountants', attorneys', and expert witness fees, costs of investigation and proof of facts, court costs, travel and living expenses and other expenses of litigation or alternative dispute resolution, regardless of whether litigation or alternative dispute resolution is commenced. We may defend any claim against us at your expense and agree to settlement terms or take other remedial, corrective, or other actions in our sole discretion. We have the right to designate attorneys that you must retain, at your expense, to defend any claims subject to this indemnification provision.

We agree to indemnify and hold you harmless from all direct expenses and liabilities arising from or in any way connected with any third party claim that your operation of a Dental Fix Business in compliance with this Agreement infringes its intellectual property rights or misappropriates its trade secrets. If you are made a party to a legal proceeding in connection with a claim of this type, we will hire counsel to protect our interests and will defend you at our own expense. We may enter into any settlement in our sole discretion and any settlement we negotiate will bind you. This provision shall survive termination or expiration of this Agreement.

## 8.6    Covenants Not to Compete

### (a) In-Term Covenant

Neither you nor any of your Related Parties nor your spouse or children may, during the term of this Agreement operate, own a beneficial interest in or assist directly or indirectly, be employed by or gain any financial benefit or other remuneration from any company or business that is competitive with our business.

### (b) Post-Term Covenant

For two (2) years after the termination, expiration, Transfer or non-renewal of this Agreement, neither you nor any of your Related Parties nor your spouse or children may, directly or indirectly:

    i.    solicit or otherwise attempt to induce (by combining or conspiring with, or attempting to do so), or influence in any other manner any of our employees, officers, directors, agents,

consultants, representatives, contractors, suppliers, distributors, franchisees, or other business contacts ("Business Affiliates") to terminate or modify their business relationship with us or to compete against us;

ii.    as owner, officer, director, employee, agent, lender, lessor, broker, consultant, franchisor, franchisee, or in any other similar capacity whatsoever connected in any manner with the ownership, management, operation or control, or conduct of a Competitive Business that is located or markets within your Territory or within twenty (20) miles of any Practitioner in your Territory or the Territory of any other party in the Dental Fix Franchise Network. As stated also in Section 8.4, you must obtain the individual written agreement of each of your Related Parties to the provisions of this section in the form of Attachment 3 of this Agreement.

iii.   in any manner interfere with, disturb, disrupt, impair, diminish, or otherwise jeopardize our System, our business, or the business of our franchisees.

For the purposes of this Agreement, a "Competitive Business" is any business which is engaged wholly or partially, directly or indirectly, in operating a business which provides the same or similar services or products as Franchisee, Franchisor, and Franchisor's other franchisees.

**(c)    Reasonableness; Modification**

You agree that the above covenants are reasonable for the protection of the Dental Fix Franchise Network, are reasonable with respect to your future endeavors, and to the extent a court determines any of them to be unenforceable, you agree that any such covenant shall be rewritten by the court to make it enforceable.

**(d)    Irreparable Harm**

You agree that a violation of any of the above covenants by you or any other person governed by these provisions will cause the Dental Fix Franchise Network irreparable harm and that we are entitled to and you agree to entry of temporary, preliminary and permanent injunctive relief enforcing any such covenant, without the need to post bond.

**(e)**    The covenants contained in this Section 8.6 and Section 8.7 below shall be construed as severable and independent, and may be enforced by our successors or assigns.

**8.7    Non-Solicitation**

During the term of this Agreement and for two (2) years after its termination, expiration or non-renewal, you may not disrupt, damage, impair, or interfere with our business or that of any of our franchisees by directly or indirectly soliciting our or their employees to work for you or for any individual or company then in competition with us, with them or with the Franchise Network.

**9.       TRANSFER OF YOUR BUSINESS**

**9.1    Purpose of Conditions for Approval of Transfer**

We signed this Agreement in reliance on your integrity, ability, experience and financial resources. You may not sell, assign or transfer the Agreement, any ownership interest in you (if you are an entity), or your Dental Fix Business operated under this Agreement, or any part of or interest in either

this Agreement or your Dental Fix Business, unless you have first obtained our written consent, which may not be unreasonably withheld. To ensure that no Transfer jeopardizes the Trade Names, Marks, or our interest in the successful operation of your Dental Fix Business, we will consent to a Transfer only if you comply with the provisions of Sections 9.2 through 9.5 of this Agreement.

**9.2     Notice of Intention to Transfer**

If you would like to Transfer this Agreement, your Dental Fix Business, and/or an ownership interest in you (if you are an entity), you must first submit to us: (a) the form of transfer application we then use, if any, completed by the prospective transferee, and (b) a written notice describing all the terms and conditions of the proposed Transfer.

**9.3     Consent by Us and Right of First Refusal**

We will advise you in writing of our position concerning the proposed Transfer. We may either consent in writing to the Transfer, refuse to consent, or purchase your Business from you ourselves on the same terms and conditions as those offered by proposed third party. We may seek and you must provide us information so we can ascertain the nature and details of the offer. Silence is not consent. Our consent to the Transfer is merely a consent to the proposed third party as a Dental Fix Franchisee and is not meant as consent to all of the terms and conditions of your agreements and arrangements with the proposed transferee. Our consent to a particular Transfer will not be consent to any other or subsequent Transfer. If any terms or conditions in the notice, or any terms or conditions in the documents memorializing the agreement between you and the proposed third party contradict any of the terms of this Agreement, the terms of this Agreement shall control and shall supersede any such terms and conditions.

**9.4     Conditions for Consent to Transfer**

Our consent to your proposed Transfer will be subject to the following conditions:

(a)     Our determination, based on the information that you submit and any other information available, that the proposed transferee meets all of our criteria of character, business experience, financial responsibility, and net worth;

(b)     Payment of all your outstanding debts to us and our Related Parties;

(c)     Our determination that you and your Related Parties are in full compliance with all of the terms of this Agreement, any other agreements between us or our Related Parties on the one hand and you or your Related Parties on the other and with the Manual;

(d)     Signing by the transferee of our then current form of franchise agreement and our then current form of personal guarantee and signing by the transferee's Related Parties of required ancillary agreements in the forms attached to the applicable franchise agreement. The term of the new franchise agreement will expire on the date of expiration of this Agreement. The execution of the new franchise agreement will terminate this Agreement, except for the guarantees of your Related Parties and the post-termination and post-expiration provisions under this Agreement;

(e)     Your payment in full of the Transfer Fee stated in Section 6.7 of this Agreement;

(f)     Successful completion by the transferee of the Dental Fix initial training program to our satisfaction;

(g)     Signing by you and your Related Parties that are guarantors to this Agreement of a release of all claims that you and your Related Parties have or may have against us or our Related Parties in a form satisfactory to us; and

(h)     You must comply with the terms of the post-termination covenants not to compete set forth in this Agreement, commencing on the effective date of the Transfer, and agree to continue to be bound by the confidentiality obligations set forth in this Agreement.

**9.5     Changes of Ownership Not Considered to be Transfers**

As used in this Agreement the word "Transfer" does not mean an assignment to:

(a)     Any trustee, guardian, executor or conservator for the account and benefit of a spouse, ancestor, or descendant either of you, your Designated Principal or your principal owner;

(b)     Any business entity if the beneficial ownership of the transferee immediately after the assignment is the same and in the same proportions as the beneficial ownership of the transferor immediately before the assignment.  For the assignment to be effective, you, if you are an individual franchisee, or each of your owners, if you are not, must (1) first sign and deliver a personal guaranty to us, (2) submit to us information on any proposed change of this type in the equity ownership of the franchisee, the identity and address of all proposed owners of any interest in the franchise or the franchisee, the percentage of ownership, and the address where business records are maintained and (3) enter into a new franchise agreement, amended to eliminate the initial franchise fee and shorten the term to the remainder of the original agreement's term.

**9.6     Changes of Ownership Upon Death or Total Disability**

If you or your principal owner or Designated Principal dies or suffers a Permanent Disability, as defined below, while this Agreement is in effect, the individual's heirs, successors or beneficiaries will have ninety (90) days within which to complete initial training to our satisfaction (or appoint one of their number to do so) and pay the then current training fees.  If we approve the heirs, successors or beneficiaries or any of them as transferees of the Business, we will waive any transfer fee in connection with the Transfer.  If we advise the heirs or beneficiaries in writing that we do not approve them as transferees of the franchise, or if we do not approve or disapprove the Transfer within sixty (60) days following the death or Permanent Disability, your heirs or beneficiaries may have one hundred twenty (120) additional days from the date of disapproval of the Transfer within which to find and notify us of a proposed Transfer to a qualified transferee.  If your heirs or beneficiaries do not submit a qualified transferee within the specified period, the Agreement will automatically terminate at the end of that period unless we have granted a written extension of time.

"Permanent Disability" means that the individual is unable, through mental or physical infirmity, to participate actively in the business for six (6) calendar months or more during a consecutive twelve (12) month period.

**9.7     Assignment by Us**

We may assign this Agreement or any rights or obligations created by it without your consent, provided that the assignee expressly agrees in writing to assume our obligations under this Agreement.

**9.8     No Encumbrances**

You shall not have the right to pledge, encumber, hypothecate, assign or otherwise give a third party any security interest in this Agreement, the Trade Names or Marks, other Dental Fix Rx, LLC trade names, and copyrighted materials, or your Dental Fix Business or any of its assets in any manner whatsoever without our express written permission, specifically stating that the encumbrance is

permissible and describing the specific nature of the encumbrance. Any attempted encumbrance made in violation of this section is a material breach of this Agreement and voids the security interest. You expressly agree to notify the beneficiary or holder of any attempted encumbrance of the restrictions on encumbrances in this Agreement.

**9.9    Purchase of Your Business by Us**

In addition to our other rights to terminate this Agreement under certain circumstances when you are in default, we may, at any time, purchase all of the assets of your Dental Fix business from you provided that: (1) we pay you in immediately available funds 30% of your gross sales the previous twelve months; (2) we assume your prospective obligations under contracts with customers, landlords and suppliers of goods and services (provided that we will not be required to assume any obligations incurred for services or rights provided prior to the transfer of title of the assets to us); and (3) we reimburse you for the amount of any prepayment penalties that you may incur by reason of terminating financing arrangement you have theretofore made in connection with any of these assets. We will deliver written notice to you of our intention to purchase the assets of your Dental Fix Business specifying the date, no sooner than sixty (60) days from the date of the notice, when the conveyance shall close. On the closing date, you shall (1) sign appropriate transfer documents to convey, sell, assign and transfer all of your rights, title and interest in and to the assets to us or our designee, (2) certify and sign such representations, warranties and covenants concerning yourself and the Dental Fix Business as we may reasonably request, and (3) deliver a general release, in form satisfactory to us, of any and all claims against us and our Related Parties.

With respect to any transfer of the Franchise Agreement, if the parties cannot agree on the fair market value, we will hire an appraiser acceptable to both of us who will determine the fair market value.

## 10.    TERMINATION OF AGREEMENT

**10.1    Termination by the Parties**

This Agreement may be terminated by the written agreement of both parties; provided, however, you must provide us with at least six (6) months' prior written notice of your intent to terminate the Agreement and must:

(i)    immediately pay us a fee of Ten Thousand Dollars ($10,000) for administrative and legal expenses we will incur in connection with your request to terminate;

(ii)    have all of your financial statements up to date as of the notice and through the effective date of termination;

(iii)    sign, along with your Related Parties that are guarantors to this Agreement, a general release of all claims that you and your Related Parties have or may have against us or our Related Parties in a form satisfactory to us; and

(iv)    comply with your post-termination obligations, as set forth in Sections 8.4 - 8.7 and 10.4.

**10.2    Termination by Us**

**10.2.1   Termination Upon Notice Without Opportunity to Cure**

We also have the right to terminate this Agreement upon notice with no opportunity to cure as a result of certain defaults. You shall be deemed to be in default and we may, at our option, terminate this Agreement and all of your rights granted hereunder, without affording you any opportunity to cure the default, effective immediately upon the delivery of written notice to you by us, upon the occurrence of any of the following events:

10.2.1.1   You have made or make any intentional material misrepresentation or omission in your application for, or in acquiring, the license and franchise rights, or in operating the Dental Fix Business;

10.2.1.2   You make or attempt to make any Transfer in violation of this Agreement;

10.2.1.3   You abandon the franchise relationship or abandon the franchise by failing actively to operate the Dental Fix Business for ten (10) or more consecutive calendar days, unless you close the Dental Fix Business for a purpose we approve or your failure to operate is due to fire, flood, other Acts of God or other similar causes beyond your control;

10.2.1.4   You knowingly fail to maintain any required licenses, permits, or certifications to open or operate the Dental Fix Business, or fail to comply with any federal, state, or local law regulation,

10.2.1.5   You are or have been convicted of, or plead guilty or plead no contest to a felony, or a violation which involves driving, alcohol or drugs, or your driver's license is suspended or revoked;

10.2.1.6   You engage in any dishonest or unethical conduct which adversely affects the reputation of Dental Fix or the Franchise Network or the goodwill associated with the Trade Names or the Marks;

10.2.1.7   You knowingly make any unauthorized use or disclosure of any part of the Manual, the System or any other Confidential Information;

10.2.1.8   You interfere with our relations with third parties or our ability to operate, and/or grant franchises under, the System;

10.2.1.9   You knowingly fail to maintain the insurance we require or you fail to repay us for the insurance that we have paid on your behalf and you do not correct the failure within ten (10) days after we deliver written notice of that failure to you;

10.2.1.10   You fail to pay us (or our Related Parties or approved suppliers) any amounts due and do not correct the failure within five (5) days after we deliver written notice of that failure to you;

10.2.1.11   You receive three (3) or more notices of default within any eighteen (18) month period;

10.2.1.12   You have materially breached any other agreement with us or any of our Related Parties, and we (or any of our Related Parties) have terminated such agreement for cause;

10.2.1.13    You fail to select another territory we consent to within 180 days from delivery of the Notice, or fail to commence operation of your Dental Fix Business within 90 days from the date we provide our written consent of the new territory, as provided for in Section 7.2.3;

10.2.1.14    You fail to purchase any required equipment, tools, supplies, products or services from us, our affiliates and/or from suppliers we designate as required by us;

10.2.1.15    You interfere with or prevent our representatives or designees from conducting inspections or audits during normal business hours;

10.2.1.16    You fail to satisfactorily complete the initial or a subsequent required supplemental training program; or

10.2.1.17    Subject to applicable bankruptcy law, you become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by you or such a petition is filed against you and not opposed by you; or if you are adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver of you or other custodian for your business or assets is filed and consented to by you; or if a receiver or other custodian (permanent or temporary) of your assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against you; or if a final judgment against you remains unsatisfied or of record for thirty days or longer (unless unappealed or a supersedeas bond is filed); or if you are dissolved; or if execution is levied against your business or property; of if suit to foreclose any lien or mortgage against the Dental Fix Business Premises or equipment is instituted against you and not dismissed within thirty (30) days; or if real or personal property of your Dental Fix Business shall be sold after levy thereupon by any sheriff, marshal, or constable.

**10.2.2    Termination Upon Notice and Opportunity to Cure**

Except as otherwise provided in Section 10.2.1 above, upon any other default by you of your obligations hereunder, including those identified below, we may terminate this Agreement by giving written notice of termination, setting forth the nature of such default to you at least thirty (30) days prior to the effective date of termination; provided, however, that you may avoid termination by immediately initiating a remedy to cure such default, curing it to our satisfaction, and by promptly providing proof thereof to us, all within the thirty (30) day period. If any such default is not cured within the specified time, this Agreement shall terminate effective upon another notice delivered to you upon the expiration of the thirty (30) day period or such longer period as applicable law may require.  The following is a non-exclusive list of illustrative events of default for which you may have an opportunity to cure the default to avoid termination:

10.2.2.1    You misuse our Trade Names or Marks, or use our Trade Names or Marks without our authorization at any location or on any vehicle other than the Premises and mobile units approved by us;

10.2.2.2    You make any unauthorized use of our System or proprietary software;

10.2.2.3    You fail to operate the Dental Fix Business during the days and hours specified in the Manual without our prior approval;

10.2.2.4     You fail to operate the Dental Fix Business from the Premises or mobile service centers approved by us;

10.2.2.5     You fail to satisfy any minimum annual performance standard provided for in this Agreement;

10.2.2.6     You fail to pay when due any federal or state income, service, sales, or other taxes due on the Dental Fix Business's operation, unless you are in good faith contesting your liability for these taxes;

10.2.2.7     You fail to promptly pay your suppliers, including any of our Related Parties, when such payments are due;

10.2.2.8     You fail to comply with any other material provision of this Agreement, the Manual, or any System Standard;

10.2.2.9     You operate the Dental Fix Business in an unsafe manner, and you do not cure or substantially commence to cure this failure;

10.2.2.10     You fail to participate in the advertising, promotional, or marketing activities, services, and programs that are established by us, if said program are mandatory; or

10.2.2.11     You fail to have your mobile service center delivered to our headquarters at least 7 days prior to the first day of your scheduled initial training program, and we decline to expedite the buildout of your mobile service center or are unable to complete the buildout prior to the first day of your scheduled initial training program, for any reason(s).

### 10.2.3   Extended Notice of Termination

If any law applicable to this Agreement requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor franchise agreement, than is specified in this Agreement, a different standard of "cause" for termination or the taking of some other action or forbearance not required under this Agreement, the prior notice, "cause" standard, and/or other action required by such law will be substituted for the comparable provisions in this Agreement.

### 10.2.4   Your Failure to Pay

Your failure to make payments of any Corporate Support Fees, Marketing Contributions or other money due and owing to us, after receipt from us of a notice of the default granting you an opportunity to cure, will be deemed a willful and wrongful breach by you under this Agreement and your decision to reject and terminate this Agreement and all related agreements between you and us.

### 10.3   Cross-Defaults, Non-Exclusive Remedies, etc.

Any default by you (or any of your Related Parties) under this Agreement shall be a default under all other agreements between us (or any of our Related Parties) and you (or any of your Related Parties). Any default by you (or any Related Parties) under any other agreement, including, but not limited to, any lease and/or sublease, between us (or any of our Related Parties) and you (or any of your Related Parties), and any default by you (or any Related Parties) under any obligation to us (or any of our Related Parties) shall be a default under this Agreement.  Any default by you (or any of your Related Parties) under any lease, sublease, loan agreement, security agreement or other agreement related to your Dental Fix

Business, with any third party shall be a default under this Agreement and all other agreements between us (or any of our Related Parties) and you (or any of your Related Parties).

In each of the foregoing cases, we (and our Related Parties) will have all remedies allowed at law, including termination of your rights (and/or those of any of your Related Parties) and our (and/or our Related Parties') obligations under all agreements between us. No right or remedy that we may have (including termination) is exclusive of any other right or remedy provided under law or equity and we may pursue any rights and/or remedies available.

**10.4    Rights and Obligations After Termination, Non-Renewal or Expiration**

Upon termination, non-renewal or expiration of this Agreement for any reason, the parties will have the following rights and obligations:

(a)    We will have no further or continuing obligations under this Agreement.

(b)    You must give us and our designee a final accounting of your Dental Fix Business, pay us within thirty (30) days all payments due to us, and return the Manual, marketing materials, proprietary forms, software, videotapes and any other property belonging to us or our Related Parties to containing proprietary information.

(c)    You must immediately and permanently stop using the Marks or any confusingly similar marks, the System, and any advertising, signs, stationery, forms and other items that bear the Trade Names, the Marks or any other identifying marks or colors that might give others the impression that you are operating a Dental Fix Business.

(d)    You and all others bound by them will honor all post-term covenants stated in the Agreement.

(e)    You must promptly sign any documents and take any steps that in our judgment are necessary to delete your listings from classified telephone directories, disconnect or, at our option, assign to us any telephone numbers, email addresses, URLs and listings as in **Attachment 4**, that have been used in connection with your Business, and cease all other references that suggest you are associated with us. By signing this Agreement, you irrevocably appoint us your attorney-in-fact to take actions described in this paragraph if you do not do so yourself within seven (7) days after this Agreement is terminated.

(f)    You must maintain all records we require you to maintain under this Agreement for not less than six (6) years after final payment of any money you owe to us when this Agreement is terminated.

(g)    We have the option to buy some or all of the assets of your Dental Fix Business from you after termination upon the following terms:

   i.    The physical assets of your Dental Fix Business, including its equipment, supplies and inventory will be valued at the lower of fully depreciated book value or fair market value of the assets alone, without regard to any going concern value of the then terminated Business. If the parties do not agree on a price for the physical assets, the parties will select an independent appraiser who will determine the lower of fully depreciated book value or fair market value.

   ii.    Upon our request, you must give us copies of the leases for any and all real property and equipment used in your Business and allow us the opportunity, at a mutually satisfactory time, to inspect the leased property and equipment. We will advise you whether or not we wish to assume any real property or equipment lease in consideration of our assumption of future obligations under the lease. We will not, however, assume any responsibility for any debts to the lessor that already exist on the date when we assume the lease or for any events that occurred before such date. If we elect to assume any such leases, you must assign them to us.

iii.    We may elect to assume the contracts you have with existing customers for work that has not yet been performed, if applicable.  If we elect to assume those contracts, you must assign to us any interest you may have in your existing client contracts and in any income generated by them after termination, non-renewal or expiration.  We will in turn assume responsibility for providing the service under the contracts and may reassign them to other members of our Franchise Network or perform the work ourselves.

iv.    Upon our written election to buy some or all of the assets of your Dental Fix Business, we have the right to immediate possession and may seek injunctive relief from any court of competent jurisdiction to enforce this right.

(h)    If the license granted in this Agreement is terminated or not renewed because of your default, the rights described in this section are not our exclusive remedies, but will instead supplement any other equitable or legal remedies available to us.

(i)    Termination, non-renewal or expiration of this Agreement will not end any of your obligations that came into existence before that event.  All of your obligations that, by their terms or by reasonable implication, are to be performed in whole or in part after termination, non-renewal or expiration will survive that event.

(j)    You shall continue to be responsible for any warranty claims that may arise from your former customers and agree to work in good faith and in a professional manner with us, as well as your former customers, to resolve any such claims.  You may not, however, represent to such former customers that you are still a Dental Fix franchisee or associated with us.

## 11.    MISCELLANEOUS PROVISIONS

### 11.1    Construction of Contract

Section headings in this Agreement are for reference purposes only and will not in any way modify the statements contained in any section of this Agreement.  Each word in this Agreement may be considered to include any number or gender that the context requires.

### 11.2    Governing Law

A substantial portion of the negotiations, anticipated performance, and execution of this Agreement occurred or will occur at our headquarters in the State of Florida. Therefore, you agree that except to the extent governed by the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. §§ 1051 et seq.) or other federal law, this Agreement and any other agreement relating to this Agreement, and all transactions contemplated by this Agreement, as well as our offer, sale, or negotiation of a franchise or the relationship of the parties arising there from or from entering into this Agreement, are governed by, and must be construed and enforced in accordance with, the internal laws of the State of Florida, without regard to its conflict-of-laws principles. Notwithstanding the foregoing, any statutes in the foregoing jurisdiction regulating the offer or sale of franchises, business opportunities, or similar interests or governing the relationship between the parties to this Agreement, or between you, your Related Parties, and us, do not apply unless their respective jurisdictional requirements are met independently without reference to this Section 11.2.

### 11.3    Notices

The parties to this Agreement must direct any notices to the other party at the address below that party's name on the final page of this Agreement or at another address if advised in writing that the address has been changed.  Notice may be delivered by email, by confirmed facsimile, delivery service,

express or first class mail. Notice by email or facsimile will be considered delivered upon transmission unless the facsimile is confirmed not received; by delivery service, upon delivery; by express, one (1) day after transmission; and by first class mail, three (3) days after posting.

## 11.4   Amendments

This Agreement may be amended only by a written document signed by all of the parties to this Agreement.

## 11.5   Waiver

Waiver of any breach of this Agreement shall not be interpreted as a waiver of any subsequent breach.  Any representations requiring you as a prospective franchisee to assent to a release, estoppel or waiver of liability are not intended nor shall they act as a release, estoppel, or waiver of any liability incurred under the Maryland Franchise Registration and Disclosure Law.

## 11.6   Integration

This Agreement and all ancillary agreements executed contemporaneously with this Agreement, constitute the entire agreement between the parties with reference to the subject matter of this Agreement and supersede any and all prior negotiations, understandings, representations and agreements. You acknowledge that you are entering into this Agreement, and all ancillary agreements executed contemporaneously with this Agreement, as a result of your own independent investigation of the franchised Dental Fix Business and not as a result of any representations about us or the System made by our shareholders, members, officers, directors, employees, agents, independent contractors or other Dental Fix franchisees that are contrary to the terms set forth in this Agreement or of any disclosure document or other similar document required or permitted to be given to you pursuant to applicable law. This provision shall not serve to waive reliance on any representation made by us in the disclosure document or in its exhibits or amendments.  Neither shall it serve to disclaim liability for statements authorized by us in our disclosure document.

## 11.7   Negotiation and Mediation

### 11.7.1   Agreement to Use Procedure

The parties have reached this Agreement in good faith and in the belief that it is mutually advantageous to them.  In the same spirit of cooperation, they pledge to try to resolve any dispute without litigation.  They agree that, if any dispute arises between them before beginning any legal action to interpret or enforce this Agreement or to resolve any dispute relating to their relationship with one another, they will first attempt to negotiate a settlement and, if either party files a mediation proceeding, will participate in the mediation.  Good faith participation in these procedures to the greatest extent reasonably possible is a precondition to maintaining any legal action to interpret or enforce this Agreement, except for our assertion of equitable rights in this Agreement.

### 11.7.2   Mediation

If the dispute has not been resolved within a reasonable time through negotiations, either party may, at its option, begin mediation procedures.  Mediation will be conducted by and under the rules of the American Arbitration Association ("AAA") in Miami-Dade, Florida.  The parties shall share the costs of mediation, such as the mediator's fees and cost of the facility, equally.  The parties will pay their own attorney's fees and travel expenses associated with mediation.

**11.8    Jurisdiction and Venue**

Any dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof, or the relationship between the parties, not resolved by negotiation or mediation, shall be instituted exclusively in a court of competent jurisdiction in Broward County, Florida.  Franchisee agrees to submit to the personal jurisdiction of the courts in Broward County, Florida and waives any right to contest venue and jurisdiction in Broward County, Florida and also waives any claims that venue and jurisdiction in Broward County, Florida are invalid.

**11.9    Limitation of Actions**

ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE RELATIONSHIP OF YOU AND US, OR YOUR OPERATION OF THE DENTAL FIX BUSINESS (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET OFF OR RECOUPMENT), MUST BE BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF ONE YEAR AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM; OR IT IS EXPRESSLY ACKNOWLEDGED AND AGREED BY ALL PARTIES THAT SUCH CLAIMS OR ACTIONS SHALL BE IRREVOCABLY BARRED. THERE SHALL BE NO CLASS ACTIONS.   NOTWITHSTANDING THIS, OUR CLAIMS ATTRIBUTABLE TO UNDER-REPORTING OF SALES, AND CLAIMS OF ANY PARTY FOR FAILURE TO PAY MONIES OWED AND FOR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.   HOWEVER, ANY CLAIMS ARISING UNDER THE MARYLAND FRANCHISE REGISTRATION DISCLOSURE LAW MUST BE BROUGHT WITHIN THREE YEARS AFTER THE GRANT OF THE FRANCHISE.

**11.10    Individual Dispute Resolution**

You and we agree that the relationship contemplated by this Agreement is a unique and individual relationship between the parties and will be characterized by unique circumstances, actions and experiences that relate only to you and your relationship with us.  Therefore, you and we agree that any litigation between or among the parties to this Agreement and any of their Related Parties will be conducted on an individual basis and not on a consolidated, group, or class-wide basis.

**11.11    Jury Trial Waiver**

THE PARTIES HEREBY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ALL LITIGATION ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR ANY AGREEMENT BETWEEN THE PARTIES, OR CONCERNING THEIR RELATIONSHIP.

**11.12    Attorney Fees**

If legal action, including any action on appeal is instituted to enforce the terms and conditions of this Agreement, the substantially prevailing party shall recover attorney fees from the other.  The judge shall determine which party is the prevailing party, and a party need not prevail on all of its claims or defenses in the suit to be found to have substantially prevailed.

## 11.13    Severability

Each provision of this Agreement is severable.  If any of its provisions is determined to be invalid or in conflict with any existing or future law or regulation, that provision will not impair the operation of the remaining provisions of this Agreement.  The invalid provisions will be considered not to be a part of this Agreement.  However, if we decide that the finding of illegality adversely affects the basic consideration for our performance under this Agreement, we may, at our option, terminate and not renew it.

## 11.14    Approval and Guaranties; Ownership and Management Disclosure

You, and if you are a corporation, all officers and shareholders with a ten percent (10%) or greater interest in you, or, if you are a partnership, all your partners, or, if you are a limited liability company, all your members must approve this Agreement, permit you to furnish the financial information we and our designee requires and agree to the restrictions placed on them, including without limitation restrictions on the transferability of their interests in you, in the license and in your Business and limitations on their rights to compete, and agree to sign guaranties of your obligations in the form of Attachment 6 to this Agreement.  All transferees of any interest in your Dental Fix Business, this Agreement or any equity or voting interest in you, in your corporation, partnership or limited liability company must comply with this provision as a condition precedent to our consent to transfer.

You must sign Attachment 8, the "Ownership and Management Disclosure" form, when signing this Agreement.

## 11.15    Acceptance by Us

This Agreement will not be binding on us unless and until it has been signed by our chief executive officer, chairman of the board or president.

## 11.16    Disclaimer of Representations; Right to Counsel

YOU AGREE THAT WE HAVE MADE NO REPRESENTATIONS OR PROMISES OF ANY KIND TO INDUCE YOU TO SIGN THIS AGREEMENT EXCEPT THOSE SPECIFICALLY STATED IN THE FRANCHISE DISCLOSURE DOCUMENT THAT HAS BEEN DELIVERED TO YOU.  YOU ACKNOWLEDGE THAT NEITHER WE NOR ANY OTHER PERSON HAS GUARANTEED THAT YOU WILL SUCCEED IN THE OPERATION OF YOUR DENTAL FIX BUSINESS AND THAT NO EMPLOYEE, AGENT OR REPRESENTATIVE OF OURS HAS PROVIDED ANY SALES OR INCOME PROJECTIONS OF ANY KIND TO YOU OTHER THAN THOSE, IF ANY, INCLUDED IN THE FRANCHISE DISCLOSURE DOCUMENT.  YOU HAVE MADE AN INDEPENDENT INVESTIGATION OF ALL IMPORTANT ASPECTS OF THE BUSINESS YOU WILL OPERATE UNDER THIS AGREEMENT.  YOU UNDERSTAND THAT WE ARE NOT A FIDUCIARY AND HAVE NO SPECIAL RESPONSIBILITIES BEYOND THE NORMAL RESPONSIBILITIES OF A SELLER IN A BUSINESS TRANSACTION.  YOU ARE AWARE OF NO FACTS GIVING RISE TO ANY CLAIM AGAINST US BY YOU.  WE HAVE ADVISED YOU TO CONSULT AN ATTORNEY TO REVIEW THIS AGREEMENT AND ADVISE YOU ABOUT IT AND WE HAVE GIVEN YOU SUFFICIENT TIME WITHIN WHICH TO DO THIS.

IN WITNESS TO THE PROVISIONS OF THIS AGREEMENT, the undersigned has signed it and dated on the date stated below.

FRANCHISEE

By: _____

Name: Michael Coticchio
Michael Coticchio

Title  President /Owner /Operator

Address: 2449 Riverside Dr.

Wantagh, N.Y. 11793

Date: December 15th, 2016


FRANCHISOR
DENTAL FIX RX, LLC

By: _____

Name: _____

Title: _____ C E O _____

4380 Oakes Road
Suite 814
Davie, Florida 33314

Date: 12/15/16

**ATTACHMENT 1**
**TERRITORY AND PREMISES**

Your Premises is the physical address where your business is located (where you keep your mobile
service centers and equipment) and is at
_____ .

Your Territory is defined as the following zip codes:

11558
11561
11572
11570
11510
11520
11575
11566
11710
11793
11783
11758
11762
11726
11757
11701
11702

**ATTACHMENT 2**
ELECTRONIC FUNDS TRANSFER
AUTHORIZATION TO HONOR CHARGES DRAWN BY AND PAYABLE TO
DENTAL FIX RX, LLC ("PAYEE")

The undersigned Depositor hereby authorizes and requests the Depository designated below to honor and to charge to the following designated account, checks, and electronic debits (collectively, "debits") drawn on such account which are payable to the above named Payee.  It is agreed that Depository's rights with respect to each such debit shall be the same with or without cause and whether intentionally or inadvertently, Depository shall be under no liability whatsoever.  This authorization shall continue in force until Depository and Payee have received at least thirty days written notification from Depositor of its termination.

The Depositor agrees with respect to any action taken according to the above authorization:

(1)      To indemnify the Depository and hold it harmless from any loss it may suffer resulting from or in connection with any debit, including, without limitation, execution and issuance of any check, draft or order, whether or not genuine, purporting to be authorized or executed by the Payee and received by the Depository in the regular course of business for the purpose of payment, including any costs or expenses reasonably incurred in connection therewith.

(2)      To indemnify Payee and the Depository for any loss arising in the event that any such debit shall be dishonored, whether with or without cause and whether intentionally or inadvertently.

(3)      To defend at Depositor's own cost and expense any action which might be brought by a depositor or any other persons because of any actions taken by the Depository or Payee under the foregoing request and authorization, or in any manner arising by reason of the Depository's or Payee's participation therein.

Name of Depository: _____

Name of Depositor:  _____

Designated Bank Acct.: _____
(Please attach one voided check for the above account)

Store Location: _____

Store #: _____

Address: _____

Phone #: _____

Fax #: _____

Name of Franchisee/Depositor (please print)

By: _Michael Coticchio_____

Signature and Title of Authorized Representative

Date: __12/15/2016_____

Dental Fix/Franchise Agreement-March 2016                    1

## ATTACHMENT 3
### NON-DISCLOSURE AND NONCOMPETITION AGREEMENT

This Nondisclosure and Noncompetition Agreement is entered into between Michael Coticchio ("Confidant") in favor of Dental Fix Rx, LLC ("Franchisor") dated *12/15/2016* in connection with that certain Franchise Agreement between Dental Fix and ("Franchisee") under which the franchisee has been licensed to operate a Dental Fix franchise. Capitalized terms used below, if not defined here, shall have the meanings assigned to them in the Franchise Agreement.

Confidant is about to undergo training by Franchisor or is an owner or Related Party of Franchisee. As a result of this process or status, Confidant has learned or will learn a great deal about the Dental Fix System, including information about the franchisor's business affairs, finances, management, marketing programs, philosophy, customers, systems, standards, know-how, trade secrets, confidential information and methods of doing business. Confidant will have access to confidential information developed and maintained at substantial cost by the Franchisor. This information is proprietary to Dental Fix. Its use by third parties could cause substantial and irreparable damage to the company.

In accord with the Franchise Agreement, the Franchisor will provide or is providing valuable marketing and administrative services.

Therefore, in return for either (a) his or her training or (b) his or her employment by or ownership of the Franchisee and (c) the valuable services provided by the Franchisor to the Franchisee, the undersigned ("Confidant") agrees as follows.

1. Non-disclosure of Trade Secrets and Confidential Information

Confidant agrees, during the term of the Franchise Agreement and following termination, expiration, non-renewal, transfer or assignment of the Franchise Agreement, not to disclose, duplicate, sell, reveal, divulge, publish, furnish, or communicate, either directly or indirectly, any Trade Secret or other Confidential Information of the Franchisor to any other person or company unless authorized in writing by the Franchisor. Confidant agrees not to use any Trade Secret or Confidential Information for his or her personal gain or for purposes of others, whether or not the Trade Secret or Confidential Information has been conceived, originated, discovered, or developed, in whole or in part, by Confidant or represents Confidant's work product. If Confidant has assisted in the past or will assist in the future in the preparation of any information that we consider to be a Trade Secret or Confidential Information or has himself or herself prepared or created or in the future will prepare or create the information, Confidant assigns any rights that he or she may have in the information as its creator to the Franchisor, including all ideas made or conceived by Confidant.

2. Definition of Trade Secrets and Confidential Information

For purposes of this Agreement, and subject to any applicable trade secrets statute, the terms "Trade Secret" and "Confidential Information" mean any knowledge, technique, processes, formulas, recipes, designs, methods, systems and other information made known or available to Confidant that the Franchisor treats as confidential, whether existing now or created in the future, including but not limited to information about the cost of materials and supplies, supplier lists or sources of supplies, sales and marketing information, pricing information, proprietary software, internal business forms, orders, customer accounts, manuals and instructional materials describing our methods of operation, including our Operations Manual, audiotapes and video

tapes, products, drawings, designs, plans, proposals, and marketing plans, all concepts or ideas in, or reasonably related to the Franchisor's business that have not previously been publicly released by the Franchisor, and any other information or property of any kind of the Franchisor that may be protected by law as a trade secret, confidential, or proprietary.  The Trade Secrets and Confidential Information described in this agreement are the sole property of or are licensed exclusively to the Franchisor.

3.      Return of Proprietary Materials

Upon termination or expiration of Confidant's ownership or employment by the Franchisee Confidant must surrender to the Franchisor all materials considered proprietary by the Franchisor, technical or non-technical, whether or not copyrighted, that relate to a Trade Secret, Confidential Information, or to the conduct of the operations of the Franchisor.  Confidant expressly acknowledges that any such materials of any kind given to him or her are and will remain the sole property of the Franchisor.

4.      Solicitation of Clients

During the term of Confidant's relationship with the Franchisor or the Franchisee, and for two (2) years after the relationship ends, Confidant agrees that he or she will not, directly or indirectly or by action in concert with others, solicit, induce or influence or seek to solicit, induce or influence any customer or prospective customer with whom Confidant or the Franchisee did business during that relationship for the purpose of promoting or selling any products or services that are competitive with those offered by Franchisor and its franchisees.

5.      Solicitation of Employees

Confidant further agrees that, during the term of his or her relationship with the Franchisor or the Franchisee and for two (2) years after the relationship ends, he or she will not, directly or indirectly or in concert with others, furnish to or for the benefit of any competitor of the Franchisor or the Franchisee, or the competitor's employees, agents, or licensees, or the competitor's subsidiaries, the name of any person who is employed or engaged as an independent contractor by the Franchisor by the Franchisee or by any other franchisee of the Franchisor.  In addition, Confidant agrees that, during the term of his or her relationship with the Franchisor or the Franchisee and for two (2) years after the relationship terminates, he or she will not, directly or indirectly or by action in concert with others, solicit, induce or influence, or seek to solicit, induce or influence any person who is employed by or engaged as an independent contractor by the Franchisor, the Franchisee or by any other franchisee of the franchisor to terminate his or her employment or engagement.

6.      Covenant Against Competition

For two (2) years after the termination, expiration, or non-renewal of the relationship between Confidant and the Franchisor or the Franchisee, neither Confidant will not, directly or indirectly:

i.      solicit or otherwise attempt to induce (by combining or conspiring with, or attempting to do so), or influence in any other manner any of Franchisor's employees, officers, directors, agents, consultants, representatives, contractors, suppliers, distributors, franchisees, or other business contacts ("Business

Affiliates") to terminate or modify their business relationship with Franchisor or to compete against Franchisor;

ii.  as owner, officer, director, employee, agent, lender, lessor, broker, consultant, franchisor, franchisee, or in any other similar capacity whatsoever connected in any manner with the ownership, management, operation or control, or conduct of a Competitive Business that is located or markets within the Territory of Franchisee or within twenty (20) miles of any Practitioner in the Franchisee's Territory or the Territory of any other Dental Fix franchisee;

iii.  in any manner interfere with, disturb, disrupt, impair, diminish, or otherwise jeopardize the Dental Fix franchise system, the Franchisor's business, or the business of Franchisor's franchisees.

For the purposes of this Agreement, a "Competitive Business" is any business which is engaged wholly or partially, directly or indirectly, in operating a business which provides the same or similar services or products as Franchisee, Franchisor, and Franchisor's other franchisees.

7.      Saving Provision

Confidant agrees and stipulates that the agreements and covenants not to compete contained in the preceding paragraph are fair and reasonable in light of all the facts and circumstances of the relationship between Confidant and the Franchisor or the Franchisee. However, Confidant and the Franchisor are aware that in certain circumstances courts have refused to enforce certain agreements not to compete. Therefore, in furtherance of the provisions of the preceding paragraph, Confidant and the Franchisor agree that if a court or arbitrator should decline to enforce the provisions of the preceding paragraph, that paragraph must be considered modified to restrict Confidant's competition with the Franchisor and the Franchisee to the maximum extent, in both time and geography, which the court or arbitrator finds enforceable.

8.      Irreparable Harm to the Franchisor

Confidant understands and agrees that the Franchisor will suffer irreparable injury that cannot be precisely measured in monetary damages if the Trade Secrets, Confidential Information or the Franchisor's proprietary information is obtained by any person, firm, or corporation and is used in competition with the Franchisor. Accordingly, Confidant agrees that it is reasonable for the protection of the business and goodwill of the Franchisor to require Confidant to enter into this agreement. If there is a breach of this agreement by Confidant, Confidant consents to entry of temporary, preliminary and permanent injunction, or other equitable relief, all without need for bond, that may be granted by a court having proper jurisdiction.

9.      Binding Effect

This agreement will bind Confidant's heirs, executors, successors, and assignees as though originally signed by them.

10.     Applicable Law

        The validity of this Agreement will be governed by the laws of the State where Confidant lives. If any provision of this Agreement is void or unenforceable in that State, the remainder of the Agreement will be fully enforceable according to its terms.

CONFIDANT

_____
Franchisee

Printed Name: Michael Coticchio

Date: ___December 15th, 2016___

**ATTACHMENT 4**
**ASSIGNMENT OF TELEPHONE NUMBERS, EMAIL ADDRESS AND URLs AND**
**SPECIAL POWER OF ATTORNEY**

1. Michael Coticchio ("Franchisee"), to induce Dental Fix Rx, LLC ("Dental Fix") to grant Franchisee a franchise, assigns to Dental Fix all telephone numbers, email addresses, and URL's and listings Franchisee uses, advertises, publicizes, or otherwise makes known to clients, customers or to the public in the operation of its Dental Fix business, both now and in the future, in the city where its business is operated.

2. This assignment will automatically become effective immediately upon termination, expiration, or nonrenewal of Franchisee's Dental Fix franchise agreement. When the franchise agreement is terminated, Franchisee agrees to do whatever is necessary to cause the companies providing service to its Business to promptly transfer its telephone numbers, email addresses and URL's and associated directory listings to Dental Fix or its designee.

3. Franchisee agrees to pay these service providers, on or before the date when the franchise agreement is terminated, all amounts Franchisee owes it in connection with the telephone numbers, including payment for any advertisements or listings in a classified directory or directories. Franchisee further agrees to indemnify Dental Fix for any money Dental Fix must pay the service providers before the service providers will carry out this agreement.

4. Franchisee appoints Dental Fix as his, her or its attorney-in-fact to sign any documents and do any things necessary to carry out this agreement if Franchisee fails to sign or do them within seven business days after termination of the franchise agreement. Franchisee further agrees to indemnify Dental Fix for any expenses, including legal fees, that Dental Fix incurs which would not have been incurred if Franchisee had performed as promised under this agreement.

Dated: December 15th, 2016

Sign here if Franchisee is an individual:

FRANCHISEE

Signature: _____

Print Name:  Michael   Michael Coticchio

Coticchio

Print Title:  President /Owner/Operator

Sign here if Franchisee is a company:

FRANCHISEE

Signature: _____

Print Name: _____

Print Title: _____

**ATTACHMENT 5**
SOFTWARE LICENSE AGREEMENT

This Software License Agreement is entered into in connection with that certain Franchise Agreement between Dental Fix Rx, LLC ("Dental Fix" or "us" or "we") and Michael Coticchio ("you") under which you have been licensed to operate a Dental Fix franchise. Capitalized terms used below, if not defined here, shall have the meanings assigned to them in the Franchise Agreement.

1.    License

Dental Fix grants you a nontransferable, nonexclusive, limited license to use its proprietary operations and financial software program ("the Software") on the equipment agreed to by the parties during the term of the Franchise Agreement.

2.    Payment

In return for a monthly license fee of two hundred fifty dollars ($250.00), payable on the first day of each month, Dental Fix grants you a license to use one copy of the Software for your Dental Fix Business. If you have more than one user, we will charge you an additional $250 per month per each additional user (the fees are collectively referred to as "Software License Fees"). We may, in our sole discretion, increase the monthly Software License Fees annually by a maximum of six percent (6%) from the previous year. You understand and agree that a separate software license agreement must be signed for each copy of the Software you are required to license from Dental Fix, and a separate copy of the Software must be licensed for each of your Dental Fix Mobile Service Center vans, or if you are not required to operate a Mobile Service Center van, then you must license one copy of the Software for your Dental Fix Business.

3.    Proprietary Information

The original and all copies of the Software and related materials, whether copyrighted or patented, will be considered confidential and proprietary information of Dental Fix and will be and remain the sole property of Dental Fix. You agree to maintain the confidential and proprietary information in strict compliance. You agree to take all reasonable steps to safeguard the confidential and proprietary information from unauthorized disclosure, theft, and third party access.

The Software may not be sold, leased, assigned, sublicensed, or otherwise transferred, in whole or in part, unless otherwise permitted in writing by us. You will not copy, modify, disassemble, decompile, reverse engineer or otherwise misuse the Software.

4.    Software "As Is"

You understand that the Software provided under this Software License Agreement is provided on an "as is" basis. You further understand and acknowledge that WE MAKE NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WITH RESPECT TO THIS SOFTWARE, INCLUDING ITS QUALITY, PERFORMANCE, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT WILL WE BE LIABLE FOR DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OF OR INABILITY TO USE THE SOFTWARE.

5.    Termination

You agree that if either party terminates or fails to renew the Franchise Agreement or it expires, this Software License Agreement will terminate immediately.

Upon termination of this license, use of the licensed Software must be discontinued, and the license and rights granted under this Software License Agreement will terminate and you will have no further rights or access to the Software. You must return or destroy, in our sole discretion, all copies of Software or related documentation.

6.     Changes
       You agree to make all changes and upgrades (including, replacing Software with new software) required by us immediately upon our notice.

7.     Damage Limitation
       **IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR THE PAYMENT OF ANY INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES.**

8.     Severability
       The invalidity, in whole or in part, of any provision in this Software License Agreement will not affect the validity of any of its other provisions.

9.     Assignment
       We may assign this Software License Agreement, provided that the assignee agrees to be bound by all of our obligations here. You may not assign or subcontract part or all of your responsibilities under this Software License Agreement, or any interest in this agreement, without our explicit written consent.

10.    No Waiver of Future Violations
       The failure of either party to insist on strict performance of any of the provisions of this Software License Agreement or to exercise any right it grants will not be construed as a relinquishment or future waiver, rather, the provision or right will continue in full force. No waiver of any provision or right will be valid unless it is in writing and signed by the party giving it.

11.    Taxes
       You will be responsible for the payment of all taxes in connection with this Software License Agreement, except for any tax based on our net income.

12.    Dispute Resolution; Jury Waiver and Other Waivers
       Any disputes arising out of this Software License Agreement shall be governed by the dispute resolution provisions in the Franchise Agreement and **YOU WAIVE THE RIGHT TO TRIAL BY JURY, CONSOLIDATED OR CLASS ACTIONS, AND PUNITIVE DAMAGES.**

13.    Applicable Law
       This Agreement will be governed by the laws of the State applicable to the Franchise Agreement.

14.    <u>Notices</u>
       The parties to this Agreement should direct any notices to the other party at the address below that party's name on the final page of the Franchise Agreement or at another address if advised in writing that the address has been changed.  Notice may be delivered by email or by confirmed facsimile, delivery service or first class mail.  Notice by facsimile or email will be considered delivered upon transmission unless the facsimile is not received; by delivery service, upon delivery; and by first class mail, three (3) days after posting.

15.    <u>Entire Agreement</u>
       This Software License Agreement, together with all appendices and other attachments to it, and any recitations in Franchise Agreement concerning software constitute the entire agreement between the parties relating to the Software and they supersede all prior oral and written agreements.  Amendments to this agreement will not be effective unless in writing and signed by the party against whom or which enforcement of the amendment is sought.

       IN WITNESS TO THE FOREGOING, the parties have signed this Software License Agreement.

FRANCHISOR
Dental Fix Rx LLC

By: _____

Title: _____

Date: __12/15/16__


FRANCHISEE: _____

By: ____Michael Coticchio____

Title: _President /Owner/Operator_

Date: _December 15th, 2016_

**ATTACHMENT 6**
**PERSONAL GUARANTY AGREEMENT**

In consideration of the execution by Dental Fix Rx, LLC of the Franchise Agreement, and acknowledging that the undersigned will benefit directly or indirectly from the execution of the Franchise Agreement, the undersigned, because of his or her beneficial relationship as principal, principal's spouse, or owner of at least a twenty percent (20%) interest in the Franchisee, hereby agrees to be bound by, and agrees to guaranty the performance of, all of the terms and conditions of the Franchise Agreement and any amendments thereto or renewals thereof, and does hereby sign this Guaranty for the purpose of binding and obligating himself or herself to the terms and conditions of the aforesaid Franchise Agreement and any amendments thereto or renewals thereof.

The guarantor hereunder hereby waives notice of termination or default under the Franchise Agreement.

GUARANTOR: _____

Name: _____ Michael Coticchio _____

Address: __ 2449 Riverside Dr. __

__ Wantagh, N.Y. 11793 __

Date: __ December 15th, 2016 __

GUARANTOR: _____

Name: _____

Address: _____

_____

Date: _____

## ATTACHMENT 7

## OWNERSHIP AND MANAGEMENT

<u>Principal Owner and Minority Owners</u>.  You represent and warrant to us that the following person(s) and entities, and only the following person(s) and entities, shall be the Principal Owner and Minority Owners of the franchise:

| <u>NAME</u> | <u>HOME ADDRESS</u> | PERCENTAGE OF INTEREST |
|---|---|---|
| Michael Coticchio | 2449 Riverside Dr, Wantagh, N.Y 11793 | 100% |
| | | |
| | | |
| | | |

<u>Designated Principal</u>.  You represent and warrant to us that the following person, and only the following person, shall be the Designated Principal of the Franchise Business:

| <u>NAME</u> | <u>TITLE</u> | <u>ADDRESS</u> |
|---|---|---|
| Michael Coticchio | President/Owner/Operator | 2449 Riverside Dr, Wantagh, N.Y, 1179- |

<u>Change</u>.  You shall immediately notify us in writing of any change in the information contained in the Addendum and, at our request, prepare and sign a new Addendum containing the correct information.

<u>Effective Date</u>.  This Addendum is effective as of this 15th day of December , 20 16 .

_____
Franchisee

DENTAL FIX RX, LLC

By: _____

Title: CEO

# Exhibit B

**DENTAL FIX RX, LLC**
**FRANCHISE AGREEMENT**

# 277



**Service & Equipment**

Dental Fix/Franchise Agreement-March 2016

# TABLE OF CONTENTS

1.    **DEFINITIONS**............................................................................................2
1.1    CLINIC...............................................................................................2
1.2    CORPORATE SUPPORT FEE....................................................2
1.3    DENTAL FIX BUSINESS...............................................................2
1.4    DESIGNATED PRINCIPAL...........................................................2
1.5    FRANCHISEE....................................................................................2
1.6    FRANCHISE NETWORK...............................................................2
1.7    GOOD STANDING..........................................................................2
1.8    MANUAL............................................................................................2
1.9    MARKS................................................................................................3
1.10   PREMISES.........................................................................................3
1.11   RELATED PARTY..........................................................................3
1.12   START DATE.....................................................................................3
1.14   TERRITORY......................................................................................3
1.15   TRADE NAMES................................................................................3
1.16   TRANSFER.......................................................................................3
1.17   WE.......................................................................................................4
1.18   YOU....................................................................................................4
2.    **LICENSED RIGHTS**................................................................................4
2.1    GRANTING CLAUSE....................................................................4
3.    **TERRITORY**............................................................................................4
3.1    TERRITORY......................................................................................4
3.2    RIGHTS RESERVED BY US.........................................................5
4.    **TERM AND RENEWAL**.........................................................................6
4.1    INITIAL TERM................................................................................6
4.2    RENEWAL.........................................................................................6
5.    **OUR SERVICES**.....................................................................................7
5.1    TRAINING.........................................................................................7
5.2    CONSULTATION.............................................................................8
5.3    MANUAL............................................................................................8
5.4    OUR MARKETING.........................................................................9
5.5    PROPRIETARY SOFTWARE......................................................9
5.6    SCHEDULING AND COLLECTIONS.........................................9
5.7    EQUIPMENT SERVICE.................................................................9
5.8    ANNUAL MEETINGS...................................................................10
5.9    APPROVED EQUIPMENT, PRODUCTS AND SERVICES AND APPROVAL OF TERMS OF FINANCING.....................................................................10
6.    **YOUR PAYMENTS**...............................................................................11

6.1     INITIAL FRANCHISE FEE ................................................................................11
6.2     MARKETING CONTRIBUTIONS .....................................................................12
6.3     PHOTO CONSENT FOR MARKETING ...........................................................13
6.4     CORPORATE SUPPORT FEES .........................................................................13
6.5     AUTOMATED CLEARING HOUSE AND ELECTRONIC FUNDS TRANSFERS ...14
6.6     SOFTWARE LICENSE FEES .............................................................................14
6.7     TRANSFER FEE .................................................................................................15
6.8     INTEREST ON LATE PAYMENTS ..................................................................15
6.9     APPLICATION OF PAYMENTS .......................................................................15
6.10    ANNUAL PAYMENT ADJUSTMENTS ............................................................15
6.11    NO WITHHOLDING OF PAYMENTS ..............................................................15
6.12    COMMENCEMENT OF PAYMENTS ...............................................................15
7.      YOUR OBLIGATIONS ......................................................................................16
7.1     USE OF TRADE NAME AND MARKS ............................................................16
7.2     QUALITY ASSURANCE; PREMISES AND MOBILE SERVICE CENTER;
BEGINNING OPERATIONS; COMPLIANCE WITH MANUAL .....................................17
7.3     COMPLIANCE WITH LAWS, RULES AND REGULATIONS .........................21
7.4     PERSONNEL AND FULL TIME EFFORTS .....................................................21
7.5     FINANCIAL INFORMATION AND BOOKKEEPING SERVICES ..................22
7.6     INSURANCE ........................................................................................................23
7.7     PAYMENT OF INDEBTEDNESS .....................................................................24
7.8     ASSIGNMENT OF LISTINGS ..........................................................................24
7.9     GUARANTY AND SUBORDINATION .............................................................25
8.      RELATIONSHIP OF PARTIES ........................................................................25
8.1     INTEREST IN MARKS AND SYSTEM ...........................................................25
8.2     INDEPENDENT STATUS ..................................................................................25
8.3     DISPLAY OF STATUS .......................................................................................25
8.4     CONFIDENTIALITY AND RELATED PARTY RESTRICTIONS ..................25
8.5     INDEMNIFICATION .........................................................................................26
8.6     COVENANTS NOT TO COMPETE ...................................................................26
8.7     NON-SOLICITATION .........................................................................................27
9.      TRANSFER OF YOUR BUSINESS ..................................................................27
9.1     PURPOSE OF CONDITIONS FOR APPROVAL OF TRANSFER ..................27
9.2     NOTICE OF INTENTION TO TRANSFER ......................................................28
9.3     CONSENT BY US AND RIGHT OF FIRST REFUSAL ..................................28
9.4     CONDITIONS FOR CONSENT TO TRANSFER ............................................28
9.5     CHANGES OF OWNERSHIP NOT CONSIDERED TO BE TRANSFERS ......29
9.6     CHANGES OF OWNERSHIP UPON DEATH OR TOTAL DISABILITY ........29
9.7     ASSIGNMENT BY US ........................................................................................29
9.8     NO ENCUMBRANCES .......................................................................................29
9.9     PURCHASE OF YOUR BUSINESS BY US ......................................................30
10.     TERMINATION OF AGREEMENT ..................................................................30
10.1    TERMINATION BY THE PARTIES ..................................................................30
10.2    TERMINATION BY US ......................................................................................30
10.3    CROSS-DEFAULTS, NON-EXCLUSIVE REMEDIES, ETC. ..........................33
10.4    RIGHTS AND OBLIGATIONS AFTER TERMINATION, NON-RENEWAL OR
EXPIRATION ..................................................................................................................34
11.     MISCELLANEOUS PROVISIONS ...................................................................35

| 11.1 | CONSTRUCTION OF CONTRACT | 35 |
| 11.2 | GOVERNING LAW | 35 |
| 11.3 | NOTICES | 35 |
| 11.4 | AMENDMENTS | 36 |
| 11.5 | WAIVER | 36 |
| 11.6 | INTEGRATION | 36 |
| 11.7 | NEGOTIATION AND MEDIATION | 36 |
| 11.8 | JURISDICTION AND VENUE | 37 |
| 11.9 | LIMITATION OF ACTIONS | 37 |
| 11.10 | INDIVIDUAL DISPUTE RESOLUTION | 37 |
| 11.11 | JURY TRIAL WAIVER | 37 |
| 11.12 | ATTORNEY FEES | 37 |
| 11.13 | SEVERABILITY | 38 |
| 11.14 | APPROVAL AND GUARANTIES; OWNERSHIP AND MANAGEMENT DISCLOSURE | 38 |
| 11.15 | ACCEPTANCE BY US | 38 |
| 11.16 | DISCLAIMER OF REPRESENTATIONS; RIGHT TO COUNSEL | 38 |

| ATTACHMENT 1 | Territory and Premises |
| ATTACHMENT 2 | Electronic Funds Transfer Authorization |
| ATTACHMENT 3 | Non-Disclosure and Noncompetition Agreement |
| ATTACHMENT 4 | Assignment of Telephone Numbers, Email Addresses and URLs and Special Power Of Attorney |
| ATTACHMENT 5 | Software License Agreement |
| ATTACHMENT 6 | Personal Guaranty Agreement |
| ATTACHMENT 7 | Special Release of Claims |
| ATTACHMENT 8 | Ownership and Management |

Customer Guarantee Addendum

SBA Addendum

# DENTAL FIX RX, LLC
# FRANCHISE AGREEMENT

## PARTIES

This Franchise Agreement ("Agreement") is between Dental Fix Rx, LLC ("Dental Fix" "we" or "us"), a Florida limited liability company, with its principal office at 4380 Oakes Road, Suite 814, Davie, Florida 33314, and _____ (or "you"), and _____ (Guarantor(s)"). The Start Date of this Agreement is 3/15, 2017.

## RECITALS

WHEREAS, we have developed and exclusively own a special system for operating mobile service centers which provides equipment maintenance, service and repair, equipment sales, hand piece repair, and consumable products (the "System") to dentists and dental practices ("Practitioners") under the trade name and principal mark DENTAL FIX RX® (a "Dental Fix Business");

WHEREAS, the System includes, among other things, the following elements, all or some of which may be deleted, changed, improved or further developed by us from time to time: business methods, technical knowledge, specialized services, brand concepts, operational processes, trade secrets, commercial ideas, advertising materials, marketing strategies, information on sources of supply, and training techniques, distinctive and characteristic trade names, trade dress, trademarks and service marks, including, but not limited to, our principal mark DENTAL FIX RX®, and any other trade names, service marks and trademarks that we may designate in writing for use with the System (the "Marks"), uniform standards, methods and procedures for business and financial operations, designs, signs, equipment, trade dress, training, operation, management, promotion, advertising, customer development and service techniques, and other technical assistance all of which may be changed, improved, or further developed by us;

WHEREAS, you recognize the benefits to be derived from receiving a franchise from us and desire to enter into this Agreement and receive those benefits. You recognize that your success in owning and operating a Dental Fix Business is speculative and will depend on many factors which include to a large extent your independent business ability;

WHEREAS, we have reviewed your application for a Dental Fix franchise and have decided to award you a franchise in accordance with the terms of this Agreement. In awarding this Agreement to you, we make no representations, warranties, or guaranties, express or implied that you may or will earn a profit, or that you may or will derive income from your Dental Fix Business that exceeds the price you paid to establish it; and

WHEREAS, we are willing to grant to you and you are willing to accept from us the right and obligation to own and operate a Dental Fix Business using our Marks and our System, throughout the term of this Agreement and according to the terms and conditions of this Agreement.

NOW THEREFORE, you and we agree as follows:

## DENTAL FIX RX, LLC
## FRANCHISE AGREEMENT

### PARTIES

This Franchise Agreement ("Agreement") is between Dental Fix Rx, LLC ("Dental Fix" "we" or "us"), a Florida limited liability company, with its principal office at 4380 Oakes Road, Suite 814, Davie, Florida 33314, and ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ (or "you"), and ⬛⬛⬛⬛⬛⬛⬛⬛ (Guarantor(s)"). The Start Date of this Agreement is 3/15, 20 17.

### RECITALS

WHEREAS, we have developed and exclusively own a special system for operating mobile service centers which provides equipment maintenance, service and repair, equipment sales, hand piece repair, and consumable products (the "System") to dentists and dental practices ("Practitioners") under the trade name and principal mark DENTAL FIX RX® (a "Dental Fix Business");

WHEREAS, the System includes, among other things, the following elements, all or some of which may be deleted, changed, improved or further developed by us from time to time: business methods, technical knowledge, specialized services, brand concepts, operational processes, trade secrets, commercial ideas, advertising materials, marketing strategies, information on sources of supply, and training techniques, distinctive and characteristic trade names, trade dress, trademarks and service marks, including, but not limited to, our principal mark DENTAL FIX RX®, and any other trade names, service marks and trademarks that we may designate in writing for use with the System (the "Marks"), uniform standards, methods and procedures for business and financial operations, designs, signs, equipment, trade dress, training, operation, management, promotion, advertising, customer development and service techniques, and other technical assistance all of which may be changed, improved, or further developed by us;

WHEREAS, you recognize the benefits to be derived from receiving a franchise from us and desire to enter into this Agreement and receive those benefits. You recognize that your success in owning and operating a Dental Fix Business is speculative and will depend on many factors which include to a large extent your independent business ability;

WHEREAS, we have reviewed your application for a Dental Fix franchise and have decided to award you a franchise in accordance with the terms of this Agreement. In awarding this Agreement to you, we make no representations, warranties, or guaranties, express or implied that you may or will earn a profit, or that you may or will derive income from your Dental Fix Business that exceeds the price you paid to establish it; and

WHEREAS, we are willing to grant to you and you are willing to accept from us the right and obligation to own and operate a Dental Fix Business using our Marks and our System, throughout the term of this Agreement and according to the terms and conditions of this Agreement,

NOW THEREFORE, you and we agree as follows:

## 1. DEFINITIONS

For purposes of this Agreement, when the following words and phrases begin with a capital letter, they shall have the meanings set forth in this Article 1:

### 1.1 Clinic

"Clinic" means the offices of Practitioner regardless of the number of Practitioners within the physical premises, hospitals, as well as any other business that your Dental Fix Business provides services and products to. A single Practitioner may count as one Clinic and a physical office space with more than one Practitioner may be counted as only one Clinic in our sole discretion.

### 1.2 Corporate Support Fee

"Corporate Support Fee" or "CSF" means the fees identified and required under Section 6.4 of this Agreement.

### 1.3 Dental Fix Business

"Dental Fix Business" means the franchised business that we authorized you to conduct under our Trade Names, Marks, and the System.

### 1.4 Designated Principal

"Designated Principal" means you in your role as professional operator of a Dental Fix Business or, if you are an entity, the person or persons whom you have appointed and we have certified as professional operator(s) of your Dental Fix Business.

### 1.5 Franchisee

"Franchisee" means an individual or company to whom we have granted a license or franchise to operate a Dental Fix Business.

### 1.6 Franchise Network

"Franchise Network" means the interdependent network composed of us, all Dental Fix Franchisees, our Related Parties, and any other people or companies that have been licensed to use our Trade Names, the Marks or all or any part of the Franchise System.

### 1.7 Good Standing

"Good Standing" means that you and each of your Designated Principals: (1) are not in default of your obligations or commitments, arising from this Agreement or any other agreement between you and us and, (2) are in compliance with all performance standards or similar standards in the Manual and/or that are part of the System.

### 1.8 Manual

"Manual" means our confidential operations manual that we will lend you or give you electronic access to during the term of this Agreement, and other communications delivered to our Franchisees generally, from time to time, at our sole discretion relating to procedures, methods, know how,

techniques, practices, rules, standards, business methods, technical knowledge, specialized services, brand concepts, operational processes, trade secrets, commercial ideas, advertising materials, marketing strategies, and information on sources of supply and training techniques, all as updated or modified from time to time, and containing information, forms, and requirements for the establishment and operation of a Dental Fix Business and for use of our Trade Names, Marks and System.

**1.9    Marks**

"Marks" means the trademarks, service marks, trade dress, logotypes, slogans, and other commercial symbols as changed from time to time in our discretion which we authorize you to use under this Agreement, including new marks which we may own and license to you or we may license and then sublicense to you in the future.

**1.10    Premises**

"Premises" is where your Dental Fix Business is located and each mobile service center van and equipment are located. The physical address of your real property Premises, if any, is listed in **Attachment 1**.

**1.11    Related Party**

"Related Party" or "Related Parties" means people and companies associated with us or you, as the context suggests, including general partners, limited partners, shareholders, members, companies in which we or you have an interest, companies in which any person or company owning an interest in you also has an interest, your and our Parents, subsidiaries and affiliates, and your and our officers, directors, agents and employees.

**1.12    Start Date**

"Start Date" means the date written in the recitals to this Agreement above. The Start Date may be changed only with our written consent.

**1.13    System**

"System" means all of the procedures, methods, know how, techniques, practices, rules, standards and all the intellectual property we license or sublicense to you under this Agreement for the operation of a Dental Fix Business, including our business methods, technical knowledge, specialized services, brand concepts, operational processes, trade secrets, commercial ideas, advertising materials, marketing strategies, information on sources of supply and training techniques.

**1.14    Territory**

"Territory" means the area identified in **Attachment 1** to this Agreement.

**1.15    Trade Names**

"Trade Names" means the commercial name Dental Fix Rx and such name(s) as may be added or substituted by us.

**1.16    Transfer**

Except as otherwise described in this Agreement, "Transfer" means any sale, gift, assignment or other change in the ownership of all or any part (1) of your rights or obligations under this Agreement, (2) of the capital assets of your Dental Fix Business or (3) of an ownership interest in you. The grant of a security interest or collateral interest in any of the foregoing shall be a "Transfer" for the purpose of this Agreement.

### 1.17    We

"We" and "us" means Dental Fix Rx, LLC our officers, directors, employees, and/or affiliates.

### 1.18    You

"You" (whether or not capitalized) means You if you are an individual or if You are an entity, You means your directors and officers, and any individual with a direct or indirect equity or beneficial interest in You. In addition, "You" means all people or entities that succeed to your interest by Transfer or other operation of law.

## 2.    LICENSED RIGHTS

### 2.1    Granting Clause

Subject to the terms and conditions contained in this Agreement, we grant to you the right and obligation and you accept from us the right and obligation to own and operate a Dental Fix Business within a designated Territory designated on **Attachment 1** to this Agreement only under our Trade Names, Marks, and System during the term of this Agreement and in accordance with our specifications, the Manual, and the provisions of this Agreement (the "Franchise").

## 3.    TERRITORY

### 3.1    Territory

#### 3.1.1    Your Territory

You may conduct your Dental Fix Business only within the defined Territory specified in **Attachment 1** to this Agreement, except as otherwise expressly provided in this Agreement. During the term of this Agreement, provided that you are in compliance with this Agreement and any other agreements with us and subject to our rights set forth in Section 3.2 below and Section 7.2.3, we will not operate ourselves nor grant anyone else a franchise to locate or operate a Dental Fix Business in your Territory. Except as expressly provided in Section 7.2.3 below, you may not change your Territory without our prior written approval, which may be withheld for any or no reason.

Your Territory consists of the Clinics within the geographical area shown by map or zip codes listed in **Attachment 1** to this Agreement. We have the discretion to define the number of Clinics for your Territory, which typically includes between 50 and 350 Clinics. The number may differ for your Territory compared to other franchisees. You must have a sufficient number of mobile service centers to serve the needs of the Clinics in your Territory, which number may vary from time to time, but is reasonably likely to require one (1) mobile service center for every fifty to one hundred (50-100) Practitioners to be served by you. Annually, we will assess factors we consider relevant, which may include mobile service center capacity, your services provided, the market size, revenues, and other factors to determine if your market requires you to increase your number of mobile service centers or

make other changes in your Dental Fix Business.  If we determine your market requires you to increase the number of mobile service centers for your Territory, you agree to purchase an additional mobile service center(s).  If you desire to increase the number of mobile service centers for your Territory, you must obtain our prior written consent before purchasing an additional mobile service center for your Dental Fix Business.  If your Territory has 250 Clinics or less, then we will not initially require you to purchase a mobile service center for your Dental Fix Business.  However, if your Dental Fix Business maintains an average gross revenue of $10,000 per month for three (3) consecutive months, then we may, in our discretion, require you to purchase a mobile service center.

### 3.1.2    Territory Infringement

You may not solicit customers or service customers outside of your Territory without our advance written consent, which we may give or withhold in our discretion, based on factors, which may include without limitation existing coverage in the Territory, fulfillment of your obligations under the Agreement, finances, and market opportunities we perceive. .

You shall not solicit customers, service customers, market or advertise outside of your Territory without our prior written consent, which we may give or withhold in our absolute discretion.  If we consent to the operation or marketing of your Dental Fix Business outside of your Territory, we may, at any time thereafter, revoke our consent and you must immediately cease operating and/or marketing your Dental Fix Business outside of your Territory.  We shall not, in any event or under any circumstances, be liable to you for any loss, injury or damage to you which may result from the failure of another Dental Fix franchisee to comply with this or similar obligation.

If you infringe upon another Dental Fix franchisee's territory by generating income from a customer for goods and/or services provided and/or rendered within such other Dental Fix franchisee's territory without first obtaining that franchisee's and our prior written permission, you shall be required to pay to us, within five (5) days after the infringement is proven: (a) for your first violation, One Thousand Dollars ($1,000), plus the invoice amount for the products or services sold; and (b) for your second and subsequent violations, Five Thousand Dollars ($5,000), plus the invoice amount for the products or services performed.  These payments shall become our property and any distribution of these funds shall be in our sole discretion.

### 3.1.3    Reservation of Additional Territory

You may, only if we approve, in our sole discretion, reserve available territories for six (6) months by paying us a territory reservation fee of Fifteen Thousand Dollars ($15,000) per territory ("Territory Reservation Fee") and signing the Agreement to Reserve Additional Territory in the form attached to our Franchise Disclosure Document.  The Territory Reservation Fee will be applied to the Initial Franchise Fee of the additional Dental Fix franchise at the time you sign the corresponding franchise agreement.  The Territory Reservation Fee is not refundable under any circumstances, even if you do not open an additional Dental Fix franchise.  However, if you do not timely purchase an additional Dental Fix franchise for the reserved territory, we will provide you with a credit equal to fifty percent (50%) of the Territory Reservation Fee you paid for the purchase of parts and equipment from us.

### 3.2    Rights Reserved by Us

We reserve and retain any and all rights with respect to the System and the Marks, the sale of any products and services anywhere in the world, including, without limitation, the right to now or in the future:

a. operate or license others to operate mobile service centers offering the same products and services that are part of the System under the Marks anywhere outside the Territory or proximate to the Territory;

b. to initiate and conduct national or major account programs in which large accounts contract directly with us for service on a national or regional basis, and agree upon pricing to be charged by us and/or our franchisees for servicing such accounts. We can fulfill services for national and major accounts in your Territory without paying you any compensation. However, we may collect fees from national and major accounts with locations inside your Territory and pay you a percentage of those fees to perform those services on our behalf. The amount and frequency of our payments to you based on servicing national or major accounts are at our sole and absolute discretion;

c. to develop and operate and license others to develop and operate businesses, other than a Dental Fix Business, identified in whole or in part by the Marks, or other names and marks, in your Territory or proximate to your Territory, including, but not limited to, businesses that offer the same or similar services as Dental Fix Businesses;

d. to directly merchandise, sell and distribute products, services and supplies that are part of the System, under the Marks, or other names and marks, anywhere, including in your Territory or proximate to your Territory, through any other method or channel of distribution, including without limitation, catalogs, telemarketing, shopping clubs, wholesale or retail facilities, the internet or other direct marketing sales. If we sell products, services or supplies directly to Practitioners in your Territory we may, but we are not obligated to, offer you a commission based on those purchases in our sole and absolute discretion. We may sell consumable supplies directly to Practitioners and Clinics within your Territory and we may, in our sole and absolute discretion, pay you a commission based on those sales;

e. offer and sell products and services under the Marks or any other marks that are not part of the System through any distribution method anywhere, including within your Territory; and

f. to purchase, merge, acquire or affiliate with any other chain or business regardless of the location of those businesses, and to operate, franchise, or license those businesses as Dental Fix Businesses operating under the System, the Marks, or any other mark following our purchase, merger, acquisition, affiliation, regardless of the location of such businesses (which may be within your Territory and proximate to your Territory).

From time to time, we may have the opportunity to offer you additional products and services to market in your Territory. If you are not ready, willing and able to do so, we may market them ourselves under the Dental Fix Name and Marks, or appoint anyone else to do so.

## 4. TERM AND RENEWAL

### 4.1 Initial Term

The initial term of this Agreement will begin on the Start Date and will continue for twenty (20) years, unless otherwise terminated as provided for in this Agreement.

### 4.2 Renewal

You will have the right to renew your franchise rights for one additional term of ten (10) years, provided you comply with all of the following conditions:

(a) You provide us one hundred eighty days (180) days written notice of your desire to renew prior to the expiration of the initial term of this Agreement;

(b) You and your Related Parties are in full compliance with this Agreement and all other agreements with us and our Related Parties;

(c) You sign our then current form of franchise agreement at the time of renewal (with appropriate modifications to reflect the fact that the franchise agreement relates to the grant of a renewal franchise). This franchise agreement may be materially different from this Agreement, including, without limitation, different fees, marketing and advertising contributions, Territory, and requirements as to the number of mobile units required;

(d) You and your Related Parties sign a general release, in a form prescribed by us, releasing us and our Related Parties from all claims you have or may have against us or them;

(e) You pay us a renewal fee equal to twenty-five percent (25%) of the then-current initial franchise fee;

(f) You provide evidence satisfactory to us that you have the financial wherewithal and trained personnel to continue as a Dental Fix franchisee; and

(g) You purchase such additional mobile units, training, tools, software and other technology and refurbish your existing mobile units, software, other products and equipment as we require, so your franchise meets all then current standards and specifications for new Dental Fix franchises.

## 5.    OUR SERVICES

We will perform the following services for you at times, to the extent and at places we select, as long as you are in Good Standing under this Agreement, and all other agreements with us or any of our Related Parties and the Manual. You are required to accept and receive these services, and to pay for them to the extent required.

### 5.1    Training

#### 5.1.1    Initial Training

Before the opening of your Dental Fix Business, we will conduct an initial training program in the operation of your Dental Fix Business under the System. You and, if you are an entity, your Designated Principal(s) and all employees you employ to provide technical services for your Dental Fix Business, must attend and successfully complete the initial training program to our satisfaction before you may open your Business. Your Dental Fix Business may only be supervised and managed by a person who has successfully completed our initial training program, and all operators of your mobile service centers must, likewise, have successfully completed our initial training program. You or your Designated Principal must faithfully attend all phases of the initial training program and complete it to our satisfaction, as certified by us in writing. Failure to successfully complete any aspect of that training program, as we determine in our sole discretion, constitutes grounds for immediate termination of this Agreement upon notice without providing you with any opportunity to cure.

The cost to you of initial training is Fifteen Thousand Dollars ($15,000) per trainee. Training fees are payable a minimum of thirty (30) days prior to training and no later than ninety (90) days after signing this Agreement and are non-refundable. For the initial training fee of Fifteen Thousand ($15,000), you may send one person to the initial training. The fee for additional trainees and for training each new employee is Fifteen Thousand Dollars ($15,000) per person. If you or any of your trainees do not successfully complete the initial training program to our satisfaction, the trainee may re-enroll in the initial training program, for which we will charge you a fee of Five Thousand Dollars ($5,000). In

addition to these fees, you are responsible for your and your trainees' travel, meal, lodging and living expenses.

In the event you cancel or reschedule the initial training for you, your employees or Designated Principals, you must provide us with written notice at least sixty (60) days in advance of the scheduled initial training commencement date. If you fail to do so, you must pay us a Five Thousand Dollar ($5,000) cancellation fee upon our demand.

### 5.1.2 On-Site Grand Opening Launch Training

We may, in our sole discretion, provide you with up to five (5) days of on-site training and assistance immediately before and/or after the commencement of operations of your Dental Fix Business. The duration and timing of such on-site training and assistance will be determined by us in our sole judgment. There will be no fee charged for this on-site grand opening launch training, if we decide to provide it, but you must pay us for our travel, lodging and meal expenses.

### 5.1.3 On-Going Training

You and your employees may be required to take additional training each year, as we deem appropriate. Additional training that is mandatory for franchisees will be provided without charge, but you will be responsible for lodging, meals, living and travel expenses.

We may also require you to attend training provided by third party manufacturers and other suppliers at your expense.

We may implement additional levels of training that may be required in order to qualify you or your employees to repair more types of equipment than in initial training. If for any reason you do not receive the additional levels of training and you, therefore, cannot offer the higher level of service, you will be required to send us or our designee the equipment for repair at your cost.

We may also conduct optional training classes and charge a fee for such classes which you may attend at your expense.

### 5.2    Consultation

Our personnel may be available to you by telephone or other electronic communication to consult on aspects of your Dental Fix Business operations as we deem appropriate in our discretion.

You understand and agree that all advice, consultation and guidance provided by us is only supportive of the operation of your Dental Fix Business and that the overall success of your Dental Fix Business is primarily dependent upon your business abilities and efforts, as well as the efforts of persons you employ, market factors and other factors that are not within our control.

### 5.3    Manual

We will lend you a copy of the Manual or make the Manual electronically available to you. We may revise the Manual periodically to reflect the development of our business and will distribute updated pages containing these revisions to you, or, if the Manual has been placed on an electronic communications system, we will post revised pages there. We reserve the right to make changes of any kind to the Manual, in our sole discretion. To be in Good Standing under this Agreement, you must comply with the Manual. The Manual and all methods, procedures, standards and requirements in it, and

all amendments to it made from time to time, are incorporated in this Agreement and made a part hereof. Failure to comply with the Manual is a breach of this Agreement.

**5.4    Our Marketing**

We may, but are not obligated to, conduct marketing activities on your behalf, including making marketing calls in your Territory, and, in our discretion, the creation and execution of advertising and promotional campaigns, development of new products, creation of advertising and marketing materials and other activities associated with building the Dental Fix brand and improving the System. We will determine the amount, timing, schedule and content of all marketing and advertising activities and programs, if any, in our discretion.

You agree, at your sole cost and expense, to issue, offer and participate in such rebates, give-aways, prize contests, special offers, public relations campaigns, product launches, price point promotions and other promotions in accordance with any advertising programs we may establish from time to time, so long as compliance with any of the foregoing does not contravene any applicable law, rule or regulation. You shall be responsible for the costs of such participation, which may include a commitment by you to purchase specified quantities of inventory and supplies to support these programs. You are required to obtain our prior written approval prior to implementing any program or promotion that we have not mandated or provided.

**5.5    Proprietary Software**

We will license to you, for the fee stated in Article 6, our or our designated supplier's proprietary software for use in the operation of your Dental Fix Business. You must use this software. You are required to sign the Software License Agreement set forth in **Attachment 5** to this Agreement. As recited in Attachment 5, you may be required to replace or upgrade the software and to purchase or license additional software at your expense to comply with our requirements.

**5.6    Scheduling and Collections**

Our personnel may schedule your services through our Operations Support Center ("Operations Support Center"). If you schedule services directly with a customer at the customer's request, you will advise the Operations Support Center of the appointment date, time and location and the nature of the service requested. Generally, you will advise your potential and existing customers to contact our Operations Support Center directly whenever they require your services.

If the customer does not remit payment to you within thirty (30) days of billing, you must accelerate your collection efforts using the guidelines and recommendations we make to you in the Manual or otherwise in writing.

You must report to us within three (3) days all monies you receive in any form from customers or in connection with your Dental Fix Business. You must deposit all such monies in an account over which we have the right and ability to transfer funds to ourselves electronically to satisfy any and all of your obligations to us as and when we determine. **Attachment 2** to this Agreement is the Electronic Funds Transfer ("EFT") Agreement between you and us that you are required to sign.

**5.7    Equipment Service**

**5.7.1    Small Equipment Repair (SER)**

When you encounter repairs that cannot be repaired on-site, we will provide consultation and estimates to help determine if the equipment can be repaired by us in our Small Equipment Repair Center. If the equipment can be repaired by our Small Equipment Repair Center, then you must use us and no other vendor for such repairs in accordance with our procedures as set forth in the Manual or otherwise. You will be responsible for all shipping, delivery and repair costs and expenses and for sending us the equipment for repair.    The cost of such repairs may be more expensive than you otherwise might pay to a third-party service.

### 5.7.2    On-Site Technical Support and Repair Services

Upon your request, we or our designee may provide on-site technical support and repair services with qualified technicians as scheduled by us. You must pay us a fee for such services, which will depend upon the scope of the work to be performed, the number of technicians required, and the time and labor required, among other factors. You must also reimburse us for our or our designee's expenses for travel, lodging and meals. If we or our designee are able to provide the technical support and repair services requested, you must use us or our designee for such services and no other vendor.

### 5.8    Annual Meetings

In our discretion, we may hold an annual franchisee meeting/convention once each year to provide updates, offer continuing education, and encourage discussion of topics of importance to Franchisees and to the Franchise Network.  You or your Designated Principal must attend the national convention at your expense.  We may charge a fee for these events, which will not exceed One Thousand Dollars ($1,000) per person. If we charge a fee, you must pay the fee at least 30 days in advance of the first day of such meeting/convention.  You will also be responsible for your travel, meals, living and lodging expenses.

In addition, you or your Designated Principal must attend at least seventy-five percent (75%) of the meetings, if any, called by our staff in your region each year.  Should we choose to implement a teleconference program, we may allow you to attend the meetings referred to in this section by teleconference.

### 5.9    Approved Equipment, Products and Services and Approval of Terms of Financing

We designate certain equipment, tools, products, supplies and/or services you must purchase, lease or receive from us or from a supplier or suppliers we designate, and we may do so with additional products and/or services in the future.  We also have the right to change our approved and designated suppliers in our discretion. You acknowledge that you may incur an increased cost to comply with such changes at your expense.  You must use the product(s), services, and suppliers we designate, including without limitation, mobile service centers, uniforms, tools, equipment, décor, logos, shelving, products, uplift/buildout services for your mobile service centers, merchandise, signage, small equipment repair services, special repair services, and accounting and financial services and supplier(s).  If you finance items, we reserve the right to approve the terms of your loan in advance.

You acknowledge and understand that we and/or our affiliates will be the only supplier of certain equipment, tools, products, supplies and/or services to you, and that the cost of such equipment, tools, productions, supplies and/or services may be higher than the cost of the same or similar equipment, tools, productions, supplies and/or services that may be purchased elsewhere. We shall have the right during the term of this Agreement to amend, alter, add to, delete, or revise the equipment, tools, products, supplies and/or services that you are required to purchase directly from us and/or our affiliates. You acknowledge that we and/or our affiliates will make a profit on the sale of equipment, tools, products, supplies and/or

services to you. You further understand that we and/or our affiliates may from time to time receive consideration from manufacturers, suppliers, vendors and/or other third parties in respect to sales of equipment, tools, products, supplies or services to you or in consideration of services rendered or rights licensed to such persons.  You agree that we and/or our affiliates shall be entitled to said profits and/or consideration.

We shall have no obligation to sell you any equipment, tools, products, supplies and/or services, if you are in default under this Agreement.

We agree that we will use our reasonable efforts to fulfill or to cause our designees to fulfill your orders for equipment, tools, products, supplies and/or services pursuant to this Agreement. However, we shall not be liable to you in the event that we or our designee are not able to fulfill an order for equipment, tools, products, supplies and/or services placed by you.

The cost of the equipment, tools, products, supplies and/or services and other products and items you are required to purchase from us and/or our affiliates shall be based on the price then in effect, as set forth and identified from time to time on our confidential published price lists, in our Manual, or through other written communications.

You acknowledge and agree that in purchasing or leasing products, supplies, equipment, tools, materials, services or other approved or required items from us, our affiliates or suppliers approved or designated by us, **WE EXPRESSLY DISCLAIM ANY AND ALL WARRANTIES OR REPRESENTATIONS AS TO THE CONDITION OF SAME, INCLUDING, WITHOUT LIMITATION, EXPRESS OR IMPLIED WARRANTIES AS TO MERCHANTABILITY OR FITNESS FOR ANY INTENDED PURPOSE.  YOU AGREE TO LOOK SOLELY TO THE MANUFACTURER OR SUPPLIER OF SAME IN THE EVENT OF ANY DEFECTS THEREIN.** In addition, we disclaim any liability arising out of or in connection with the services rendered or products furnished by any supplier approved or designated by us.  Our approval or consent to any services, goods, suppliers, or any other individual, entity or any item shall not create any liability to us.

**5.10    E-Mail Address for the Dental Fix Business**

We will provide you with e-mail addresses with the dentalfixrx.com domain name for your Designated Principals' and your manager's use solely in connection with the operation of the Dental Fix Business only, and for no other purpose.  You acknowledge and agree that you will not own these e-mail addresses or domain name and your rights to use such e-mail addresses will immediately cease upon the Transfer, expiration or termination of this Agreement.  We will charge you an annual fee of no more than One Hundred Dollars ($100), as set forth in the Manual or otherwise, for each dentalfixrx.com e-mail address we assign to you.  These e-mail addresses shall only be assigned to and used by you, your Designated Principals and your manager.

**6.    YOUR PAYMENTS**

**6.1    Initial Franchise Fee**

In consideration of the execution of this Agreement and our granting to you a franchise, you shall pay to us in immediately available funds an Initial Franchise Fee of Thirty Thousand Dollars ($30,000) when you sign this Agreement.  This initial franchise fee is fully earned on receipt and is not refundable under any circumstances.

## 6.2 Marketing Contributions

### 6.2.1 Your Marketing Contribution Fee

You agree to pay to us a weekly Marketing Contribution Fee based on the number of Clinics in your Territory as follows:

| Full Term of Franchise Agreement | |
|---|---|
| **Marketing Contribution** | |
| **Clinic Count** | **Weekly Total** |
| 50 - 250 | $40 |
| 251 - and up | $65 |

Your weekly Marketing Contribution Fees will commence two (2) weeks from your grand opening date.

On occasion, as the market changes in your Territory, the Clinic Count may change based upon industry and market data that we select. If the Clinic Count increases, then upon written notice from us, you will be required to pay the higher Marketing Contribution Fee based on the then-current Clinic Count in your Territory. We may adjust the amount of this Marketing Contribution Fee each year up to a maximum increase of 6%.

### 6.2.2 Use of Marketing Contributions

Marketing contributions become the property of Dental Fix when paid ("Marketing Contributions"). We will direct all advertising programs that the Marketing Contributions finance with sole control over the strategic direction, creative concepts, materials, endorsements and media used in the programs, and the geographic, market and media placement and allocation of advertising. We may use the Marketing Contributions to pay for any and all marketing, promotion and advertisement of the Dental Fix System, including, but not limited to, market research, advertising materials, electronic media, websites, marketing agencies, media space, and time for a national or regional marketing program, a referral program, public relations activities, marketing grants to franchisees, collectively or individually, point-of-purchase materials, new product development and other similar projects, expenses of marketing and for marketing personnel and administering marketing programs or activities that we determine in our sole discretion to be in the best interests of the Dental Fix System. We do not have any fiduciary obligation for administering the Marketing Contributions. We may spend in any fiscal year more or less than the total Marketing Contributions made in that year, borrow money from us or others (paying reasonable interest) to cover deficits, or invest any surplus for future use. Any unused Marketing Contributions will rollover to the next calendar year. Upon your reasonable request, we may provide an unaudited report once each year of the amount of Marketing Contributions collected from franchisees and spent by us on marketing activities during the prior year. We will not use the marketing contributions to advertise the sale of franchises, except that we may include references to franchise availability in our advertising materials. . You acknowledge that we undertake no obligation in administering Marketing Contributions to make expenditures for advertising or promotions for the benefit of you which are in anyway equivalent or proportionate to your contributions, or to ensure that any particular franchisee benefits directly or on a pro rata basis from the placement of advertising, or to insure that any advertising impacts or penetrates

your Territory at any level.  Upon thirty (30) days prior written notice to you, we may suspend for any period of time or terminate (and, if terminated, reinstate) Marketing Contributions and our administering of Marketing Contributions. We will not terminate the administration of Marketing Contributions, however, until we have expended all Marketing Contributions received for advertising and promotional purposes.

### 6.2.3    Advertising Council

We may establish an advertising council composed of Dental Fix franchisees to consult with us concerning advertising and marketing matters.  If formed, such advertising council will serve in an advisory capacity only. Members of the advertising council will prepare governing documents subject to the terms of this Agreement, the Manual and subject to our prior consent.  We will choose the members of any such advertising council in our sole discretion from our franchisees in the Dental Fix Franchise Network.  In order to be eligible for selection into the advertising council, you must be in Good Standing and must be actively involved in the betterment of the Dental Fix Franchise Network and System.  If we appoint you to such an advertising council, you agree to join, participate in, and actively support the advertising council.  We have the sole right and authority, in our discretion, to form, dissolve, change and/or merge the advertising council.  We will determine the number of members of the advertising council in our sole discretion and provide you with a copy of the advertising council's governing documents upon your written request.

### 6.2.4    Local or Regional Advertising Cooperative

We do not currently require franchisees to join local or regional advertising cooperatives, but we may, and reserve the right to, in the future.

### 6.3    Photo Consent for Marketing

In connection with the advertisement, promotion and marketing of the Dental Fix System, you grant us an irrevocable license to use and/or display pictures and images of you and your Dental Fix Business in any advertising or marketing materials distributed by us, including in any and all printed or on-line brochures.  You acknowledge and agree that you are not entitled to receive any compensation or any monetary consideration or remuneration of any kind for our use and/or display of your and your Dental Fix Business's picture and image in any advertising or marketing materials distributed by us, including in any and all printed or on-line brochures.

### 6.4    Corporate Support Fees

You agree to pay to us a weekly Corporate Support Fee based on the year of operation, the number of Clinics in your Territory, and the number of Mobile Service Center vans you have, as follows:

| First Year of Operation | | |
|---|---|---|
| **Clinic Count** | **Weekly CSF for 0-1 vans** | **Additional Weekly CSF for each additional van** |
| 50 – 250 | $195 | $97.50 for each additional van |
| 251 – and up | $370 | $185 for each additional van |
| Second Year of Operation | | |
| **Clinic Count** | **Weekly CSF for 0-1 vans** | **Additional Weekly CSF for each additional van** |
| 50 – 250 | $270 | $135 for each additional van |
| 251 – and up | $470 | $235 for each additional van |
| Third Year of Operation through the term of this Agreement | | |
| **Clinic Count** | **Weekly CSF for 0-1 vans** | **Additional Weekly CSF for each additional van** |
| 50 – 250 | $370 | $185 for each additional van |
| 251 – and up | $570 | $285 for each additional van |

Your weekly Corporate Support Fees commence two (2) weeks from your grand opening date. Beginning on the third anniversary of the Start Date of this Agreement, we may increase your Corporate Support Fee by a maximum of six percent (6%) annually.

On occasion, as the market changes in your Territory, the Clinic Count may change based upon industry and market data that we select. If the Clinic Count increases, then upon written notice from us, you will be required to pay the higher Corporate Support Fee based on the then-current Clinic Count in your Territory.

**6.5    Automated Clearing House and Electronic Funds Transfers**

You understand and agree that we will require that all Corporate Support Fees, Marketing Contribution Fees, software license fees, bookkeeping fees, and all other fees, payments and costs required to be paid to us or our affiliates, or any advertising cooperative that may be established, must be paid by Electronic Funds Transfer (EFT), unless otherwise specified by us, to ensure that the fees, payments and costs are received on the day due and/or that past due invoices are paid to us or our affiliates. You must establish a designated checking account in which you maintain at all times a balance of at least twice as great as your average weekly Corporate Support Fee and Marketing Contribution Fees and sign an agreement in the form of **Attachment 2** to this Agreement, or in any other form required by the bank to enable us to withdraw funds from the account via EFT. You will pay all fees associated with such transfers. In the event any EFT is not honored by your bank for any reason, you shall pay to us, upon demand, a non-sufficient funds fee of One Hundred Dollars ($100) per incident.

**6.6    Software License Fees**

Commencing your first month of operations, you agree to pay us a monthly software license fee of Two Hundred Fifty Dollars ($250) per copy, and for each copy of the software you are required to license from us, you must sign the Software License Agreement in the form of **Attachment 5** to this Agreement or, if we require, a license agreement required by our software supplier. You are required to

have one copy of our software for each of your Mobile Service Center vans, or if you are not required to operate a Mobile Service Center van, you are required to have at least one copy for your Dental Fix Business. In addition, if you have more than one user, we will charge you an additional Two Hundred Fifty Dollars ($250) per month per each additional user (the fees set forth in this Section are collectively referred to as "Software License Fees").

## 6.7    Transfer Fee

The requirements for any Transfer are set forth in Article 9 hereof. Except as specifically provided in Article 9, you must pay us a transfer fee of Fifteen Thousand Dollars ($15,000) ("Transfer Fee") for any Transfer. If the transferee commences and fails to successfully complete our initial training program, we will refund fifty percent (50%) of the Transfer Fee. Under no other circumstance is any portion or all of the Transfer Fee refundable.

## 6.8    Interest on Late Payments

Any payment that we do not receive from you when due will bear interest at eighteen percent (18%) per year, or at the highest rate allowed by applicable law, whichever is less, on the date when payment is due. The fact that we impose these charges is not a waiver of our right to be paid on time.

## 6.9    Application of Payments

We may apply any payment you make to us (which payments include without limitation all monies we obtain through EFT), at our option, to any past due debt you owe us regardless of how you state the payment should be applied. We do not have to accept payments after they are due or extend credit or otherwise finance your operations. If you do not pay all amounts when due, we may suspend our services and support until you cure the failure. We may terminate this Agreement if you fail to make any payments due to us within any applicable cure period.

## 6.10    Annual Payment Adjustments

We may in our sole and absolute discretion, on an annual basis, increase your Corporate Support Fee, Software License Fees, Bookkeeping Fee, Marketing Contribution Fees, and other fees owed to us under this Agreement, by no more than six percent (6%) from the previous year.

## 6.11    No Withholding of Payments

You agree not to withhold payment of your Corporate Support Fee, Software License Fees, Bookkeeping Fee, Marketing Contribution Fees, or any other amounts due to us or our affiliates on grounds of the alleged non-performance of any of our obligations under this Agreement.

## 6.12    Commencement of Payments

Except as expressly provided in this Agreement, the Corporate Support Fee, Marketing Contribution Fees, Software License Fees and all other payments and fees due under this Agreement, shall be paid by you either weekly or monthly, as provided in this Agreement, on a day prescribed in the Manual or elsewhere. All Corporate Support Fees, Marketing Contribution Fees, Software License Fees, Bookkeeping Fees and all other fees required to be paid under this Agreement will commence as set forth in this Agreement and will continue to be due during the entire term of this Agreement.

**6.13    Service Fee**

If we allow you to and you make any payment to us or our affiliate by credit card for any fee or required payment to us or our affiliate, we or our affiliate may charge a service fee of up to three percent (3%) of the total charge.

## 7.    YOUR OBLIGATIONS

**7.1    Use of Trade Name and Marks**

### 7.1.1    Our Representation and Warranty

We represent and warrant to you that we have the right to use the Trade Name and Marks throughout the United States and to sublicense or license them to you as the case may be under this Agreement.

### 7.1.2    Your Use

Nothing in this Agreement will give you any right, title or interest in or to any of the Trade Names or Marks except as a mere privilege and non-exclusive license, during the term of this Agreement, to display and use the Trade Name and Marks according to the limitations set forth in this Agreement. You understand and agree that the limited license to use the Trade Name and Marks granted by this Agreement applies only to those Trade Names and Marks which we designate (and have not designated as withdrawn from use), and those Trade Names and Marks which we may in the future designate in writing. You agree not to represent in any manner that you have acquired any ownership or equitable rights in any of the Trade Name or Marks by virtue of the limited license granted under this Agreement or your use of the Trade Name and Marks. All uses of the Trade Name and Marks by you, whether as a trademark, service mark, trade name or trade style, will inure to our benefit. Following the expiration or termination of this Agreement, no monetary amount will be attributable to any goodwill associated with your use of the Trade Name or Marks or operation of the Dental Fix Business.

You agree that the Trade Name and Marks are our exclusive property. You agree that you will not do or permit any act or thing to be done in derogation of any of our (or our affiliates') rights in connection with the Trade Names or Marks, either during or after the term of this Agreement. You agree not to apply for or obtain any trademark or service mark registration of any of the licensed Trade Names or Marks or any confusingly similar marks in your own name. You agree that you will not, during or after the term of this Agreement, in any way dispute or impugn the validity of the Trade Names or Marks, our (or our affiliates') rights to the Trade Names or Marks, or our, our affiliates, or our other franchisees' rights to use the Trade Names or Marks.

You may only use the Trade Names and Marks in the operation of a Dental Fix Business as provided for in this Agreement, the Manual, or otherwise as required by us. You may not use any other trade names or marks in connection with operation and marketing of your Dental Fix Business. You may not use our Trade Names and the Marks as part of your legal name (corporate, limited liability company, or partnership name), although you may use it as your fictitious name of your business. You must commit no act or omission that would lead to confusion between you as franchisee and us as franchisor.

### 7.1.3    Changes in Trade Name and Marks

We have invested time, energy, and money in promoting and protecting our Trade Names and other Marks. We do not presently intend to change them. However, rights in intangible property, such as

the Trade Names and Marks are often difficult to establish and defend. Changes in the cultural and economic environment within which the System operates, third party challenges to our rights in the Marks, or other factors may make it desirable or necessary to change the Trade Names and Marks. We therefore reserve the right to change our Trade Names and Marks and the specifications for each when we believe, in our reasonable discretion, that the changes will benefit the Franchise Network. You must promptly conform to any such changes. You will be responsible for the costs associated with the ordering of new signs and other trade dress, letterhead, envelopes, business cards, and all other costs associated with the name change.

### 7.1.4 Marketing Materials

All marketing and promotion that you undertake must be truthful, conform to the highest standard of ethical advertising and comply with any applicable laws and regulations. You must submit to us copies of all promotional and advertising materials that you propose to use at least fourteen (14) days before the proof approval deadline. We will review the materials and will notify you whether we approve or reject them. We may withhold our approval for any reason in our discretion. If we do not notify you of approval or rejection before the proof approval deadline, the materials are disapproved. Even if we approve specified materials, we may later withdraw our approval if we reasonably believe it is necessary to make the advertising conform to changes in the System or to correct unacceptable features of the advertising. If we prepare marketing materials, you must purchase such materials from us or our designee.

### 7.1.5 Legal Protection

You must notify us immediately in writing if you become aware of any unauthorized use of our Trade Names, Marks, or System or any part thereof. You must promptly notify us in writing of any claim, demand, or suit against you or against your principals in connection with your use of the Trade Names, Marks or System. In any action or proceeding arising from or in connection with any such claim, demand or suit, we may select legal counsel, and we shall have the right to control the proceedings. We will defend you against any third party claim, suit or demand arising out of your proper use of the Marks, as authorized by us and in accordance with the terms of this Agreement. If we determine that you have not used the Trade Names or Marks in accordance with the Franchise Agreement, you must bear the cost of defense, including the cost of any judgment or settlement, as well as any of our attorney's fees and costs. If there is any litigation due to your use of the Marks or Trade Names, you agree to sign all documents and do all things as may be necessary to carry out a defense or prosecution, including becoming a nominal party to any legal action.

## 7.2 Quality Assurance; Premises and Mobile Service Center; Beginning Operations; Compliance with Manual

### 7.2.1 Survival of Non-Disclosure/Non-Competition Covenants

Your obligations and the obligations of Related Parties concerning confidentiality and the agreement not to compete with us, contained in this Agreement and **Attachment 3** to this Agreement, will survive the termination, expiration or non-renewal of your Dental Fix Franchise Agreement or any Transfer.

### 7.2.2 Premises and Mobile Service Centers

You must purchase or lease sufficient vehicles with the specifications we require, to operate your mobile service centers, fitted with our custom equipment package, tools, required inventory and image

elements.  If your Territory has more than 250 Clinics, then you must acquire and operate mobile service center vehicles.  If your Territory has 250 Clinics or less, then, in accordance with Section 3.1 of this Agreement, we will not initially require you to purchase a mobile service center vehicle for your Dental Fix Business, and you may use a vehicle you already have, as long as we approve it for use in connection with your Dental Fix Business.  If you use a vehicle you already have, you will be required to purchase a car magnet with the *Dental Fix Rx®* Mark to display on your vehicle while servicing or visiting Practitioners.

If you are required to purchase a mobile service center, you must purchase and have the mobile service center delivered to our corporate headquarters at least 7 days, but not more than 14 days, prior to the first day of your scheduled initial training program.  If you do not have the mobile service center delivered to our headquarters at least 7 days prior to the first day of your scheduled initial training program, then we will charge you an expedited mobile service center buildout fee of Five Thousand Dollars ($5,000) ("Expedited Buildout Fee") if we, in our sole discretion, decide to expedite the buildout of and ready your mobile service center for the initial training program. If we decline to expedite the buildout of your mobile service center or are unable to complete the buildout prior to the first day of your scheduled initial training program, for any reason(s), then we may, in our sole discretion, require you to reschedule your initial training program, in which case you will be charged the $5,000 cancellation fee.

During the term of this Agreement, you may not use the mobile service centers for any purpose other than the operation of your Dental Fix Business.

If your Territory has more than 250 Clinics, you must secure a location from which to operate your Dental Fix Business with (1) adequate parking; (2) secure, dry, clean storage for inventory and supplies adequate for your Territory; and (3) office and storage space for records and files.    If your Territory has 250 Clinics or less, you may operate your Dental Fix Business from your home or office, but you will need a secure, dry, clean storage area for inventory and supplies adequate for your Territory and storage space for records and files.

You must buy and maintain, according to our specifications in the Manual, a computer running the software we designate, telephone system, fax machine, printer and high speed digital access to your computer, a GPS system to be installed on each mobile service center, and all other equipment and materials required by the System and the Manual, as amended from time to time.  All services you provide to customers must be logged into the computer software we require you to purchase. We or our designated supplier may charge you a GPS System Fee of up to Fifty Dollars ($50) per month to maintain and support the GPS system that is required to be installed on each of your mobile service centers.  We may, in our discretion, increase the GPS System Fee each year up to a maximum of six percent (6%) from the previous year.

You must order all parts and supplies used in connection with your Dental Fix Business from us or our designated or approved supplier in the manner we specify in the Manual or otherwise in writing to you from time to time.

If we supply guidelines concerning premises, equipment, products, supplies or any other matter related to your business, you must follow them.  You must advise us in writing immediately if your mobile service centers or equipment are not located at the address on this Agreement.

### 7.2.3   Beginning Operation

You shall commence the operation of your Dental Fix Business within 240 days from the Start Date and no later than 7 days after the receipt of our written approval to commence operation. You may

not begin to operate your Dental Fix Business until we consent in writing.  By consenting that your Dental Fix Business may begin operation, we do not guarantee or represent that it will be successful.

In the event you fail to commence operation of your Dental Fix Business within 240 days from the Start Date, we shall have the unconditional right, upon notice ("Notice) to you, to immediately terminate any and all of your rights granted under this Agreement to the Territory specified in Attachment 1 to this Agreement; in which case, all such rights shall revert back to us.  In the event we exercise such right, you agree that you shall no longer have any right to operate your Dental Fix Business in the Territory, have no other rights or obligations in or to the Territory, and that we shall have the absolute right to sell a Dental Fix Business franchise(s) for the Territory, all as of the date of delivery of the Notice.  You will have 180 days from the delivery of the Notice to select another then available territory in any State in which we may then grant franchises, and you will have 90 days from the date we provide our written consent of the new territory to commence operation of your Dental Fix Business.  We must first consent in writing to the proposed new territory, and, if we consent, upon such consent you must sign an amended Attachment 1 and/or such other documents as may be necessary to identify and confirm our consent to the new territory.  If you fail to select another available territory we consent to within 180 days from the date of delivery of the Notice, or fail to commence operation of your Dental Fix Business within 90 days from the date we provide our written consent of the new territory, we shall have the right to terminate this Agreement upon notice without providing you with any opportunity to cure.

### 7.2.4    Compliance with Manual

You must operate your Dental Fix Business in complete compliance with the standards and specifications stated in the Manual.  We may make changes in our standards and specifications at any time and in our sole discretion in the Manual or otherwise in writing.  Such changes may require the purchase of new equipment, supplies, software or other goods, completion of additional training or other costs to you.  We will require such changes to meet the technological and market demands of the dental equipment service and supply industry for the benefit of the Franchise Network.  During the first twelve (12) months of this Agreement, you will not be required to make additional expenditures for new equipment newly added to the System.  You must promptly conform to the modified standards and specifications at your own expense.  If you have a paper copy of the Manual, you must at all times keep your copy of the Manual current by adding any revised pages we give you and discarding obsolete pages.  If there is any dispute as to the requirements of the Manual at any point in time, the terms of our master copy of the Manual will control.

Your Dental Fix Business must be confined to the offer and sale of only such products, equipment, supplies and services we approve or designate, and as set forth in our Manual or otherwise.  You must offer from your Dental Fix Business all products, equipment, supplies and services we require.  We have the right to make modifications to these items from time to time in our sole discretion, and you agree to immediately comply with any modifications.  You may not offer or sell any other products, equipment, supplies or services from your Dental Fix Business without our prior written consent, which we may withhold for any reason in our sole discretion.

### 7.2.5    Customer Satisfaction

We may use various techniques to obtain customer feedback concerning your services.  If the feedback indicates that your performance does not meet our current standards, or if we receive customer complaints about your Dental Fix Business, you agree to immediately take such steps as are necessary to address and correct these performance and service deficiencies.  In addition, in the event a customer of your Dental Fix Business contacts us to lodge a complaint, we reserve the right to address the customer's complaint to preserve goodwill and prevent damage to the Dental Fix brand.  Our right to address

customer complaints may include refunding money to the complaining customer, in which case you must reimburse us for these amounts upon demand. We may contact any customer of your Dental Fix Business at any time for any purpose.

### 7.2.6 Minimum Annual Performance Standard

You must exercise your best efforts to maximize the sales of your Dental Fix Business in your Territory. These efforts may include but are not limited to daily strategy and planning, cold calling and marketing to offices, participation in on-going training exercises, and periodic conference calls. There is no precise revenue quota, but we will evaluate your performance no less than annually. If your revenues fall below a minimum threshold that we determine in our sole and absolute discretion, we have the right, but not the obligation, to send our operational personnel to provide additional training, guidance, and/or recommendations, as we may deem appropriate, and you must pay for such personnel's expenses including travel, lodging and meals. You must comply with our personnel's recommendations to improve your Dental Fix Business within the time period required.

### 7.2.7 Special Repairs

Clinics use some equipment that you will not be trained to repair in our initial training program. You must, nonetheless, use your best efforts to sell repairs and service of such equipment to Clinics in your Territory and ship equipment to us or our designated provider for repair or service. Repairs, pricing and logistics will be as stated in the Manual.

### 7.2.8 Product and Service Warranty

You must offer to customers and honor at your expense our standard warranty on products and services which is contained in the Manual and may, as such, be revised from time to time in our discretion. In the event that a warranty claim involves a defect in a part that we supplied, we will replace the part. All other expenses associated with such a claim will be borne by you. In the event of a warranty claim associated with an item that you sent to us for repair, we will repair or replace the item as we see fit.

### 7.2.9 Maintenance and Upgrades

You must keep the Premises, your mobile service centers, your vehicle (if you are not required to have a mobile service center), and all other business equipment clean, orderly and in good repair. Periodically, we may require you to upgrade your mobile service centers and equipment at your expense to meet our then-current standards and specifications. We may require you to replace each mobile service center when it has been in service for five (5) years. You must promptly comply with any such repair, upgrade or replacement request at your sole expense.

### 7.2.10 Professional Conduct

In all your dealings with us, your customers, your employees, your suppliers and others, you must adhere to the highest possible standards of professional conduct, honesty, integrity, legal and ethical behavior, dependability, good faith and fair dealing. You may not engage in any conduct that, in our reasonable opinion, may injure the goodwill associated with the Trade Names and Marks. You must exert your best efforts to promote and maintain the excellent reputation of the Dental Fix Business and the Franchise Network.

To promote the goodwill and reputation of the Trade Names and the Marks and overall image and good name of the Franchise Network, you shall not permit anyone to operate a mobile unit: (1) who is out

of uniform (as described in the Manual) or, (2) who has been convicted of or pleaded guilty or no contest to a felony or any violation involving driving and alcohol or has his driver's license suspended or revoked.   Notwithstanding the forgoing, however, we will not have the power to hire or fire your employees, and you alone control your employees' wages, hours, assignments, hiring, firing and any benefits.

### 7.2.11   Inspections

You must allow our representatives to enter and inspect your mobile service centers without prior notice, and must allow our representatives to inspect any location where assets of or records of your Dental Fix Business are located with reasonable advance prior notice, during normal business hours to inspect, audit, photocopy, photograph and videotape your Dental Fix Business operations and records and to interview your employees and customers.  You must correct any deficiencies in your operation within the reasonable time specified in any written notification to you of such deficiencies.  If you do not take such effective steps to bring your operation up to our standards, your failure to do so will be a material breach of this Agreement.  In addition, upon reasonable request, you must furnish to us, in whatever format we require, all customer information and records for your Dental Fix Business.

### 7.2.12   Notification of Legal Proceedings

You must notify us promptly if you are served with a complaint in any legal or administrative proceedings or demand for arbitration that is in any way related to your Business by any private party or if you become aware that you are the subject of any complaint to or by or investigation by a governmental authority or consumer protection agency related to your Business.

### 7.3   Compliance with Laws, Rules and Regulations

You agree to operate the Dental Fix Business in strict compliance with all applicable laws, rules and regulations of all governmental authorities; comply with all applicable wage, hour and other laws and regulations of federal, state and local governments; prepare and file all necessary tax returns; and, pay all taxes imposed on you related to the Dental Fix Business. You agree that you will be responsible for compliance with all applicable laws, rules and regulations, including, without limitation, the Americans with Disabilities Act.

You shall obtain all required licenses, permits, registrations and other required forms of governmental approval for you to offer and sell the products and services which now or in the future are or become part of the System; shall maintain such licenses and permits in full force and effect and good standing throughout the term of this Agreement; and, shall post same as required by law.  It is your sole responsibility to determine the licenses, permits or registrations that are required for you to operate the Dental Fix Business in the State in which your Territory is located. We make no representation or warranty of any kind that you will be able to obtain all required approvals, consents and licenses.  You shall forward copies of all health, sanitation or other regulatory agency reports to us immediately upon receipt thereof. You shall take prompt and effective action to correct any violation set forth in a notice issued by any governmental or municipal authority concerning such licenses and permits.

### 7.4   Personnel and Full Time Efforts

You or your Designated Principal must devote full time efforts to the management and operation of your Business.  You must ensure that your employees preserve good customer relations and comply at all times with this Agreement and the Manual.

## 7.5     Financial Information and Bookkeeping Services

### 7.5.1     Records

You must keep financial records of your Dental Fix Business in the form prescribed by the Manual for at least six (6) years.

### 7.5.2     Reports and Use of Supplier/Bookkeeping Fee

You must use us and/or our designated supplier for bookkeeping and reporting services, and you shall pay us for such services a fee of Three Hundred Dollars ($300) per month per Mobile Service Center Van, or Three Hundred Dollars ($300) per month if you are not required to operate a Mobile Service Center van (the "Bookkeeping Fee").  In addition, if your Dental Fix Business has not been in operation for the entire fiscal year for which we or our designated supplier prepares your Dental Fix Business's income tax return statements, we or our designated supplier will charge you an additional fee of not more than Fifty Dollars ($50) for each month of the tax return fiscal year your Dental Fix Business was not in operation.  You must timely provide us and/or our designated supplier the financial reports and data required to provide such bookkeeping and reporting services and in the format we may require.  We or the designated supplier will use the reports and data that you supply to us and/or the designated supplier, and will produce periodic profit and loss statements and prepare and file income tax returns for your Dental Fix Business only.  For that flat fee, we or the designated supplier will also provide payroll service for up to one employee including calculation of gross pay, net pay, tax withholding and execution of direct deposit payments to such employee. If you have more than one employee, you may choose to hire us or our designated supplier to provide payroll service for those additional employees at an additional fee. The additional fee for that service will be comparable to fees charged by payroll service companies in the locale of our headquarters for businesses of similar size.  We or our designated supplier may charge you additional fees for other optional bookkeeping and reporting services as we or our designated supplier may offer, from time to time, as set forth in the Manual or otherwise.  The Bookkeeping Fee shall commence your first month of operations.

We may subcontract all or part of the bookkeeping and reporting services. We may disclose or use the data derived from these reports and other financial statements for your Dental Fix Business for any purpose we deem appropriate, in our sole discretion.

If you fail to provide the financial reports and data that we and/or our designated supplier require by the 15th day of each month for the prior month (or on such other day or on such other reoccurring basis designated by us in the Manual or otherwise), you will be charged a late fee of Fifty Dollars ($50) for every week that you are late.  The Bookkeeping Fee may, in our sole discretion, be increased annually by a maximum of six percent (6%).

You must buy or lease computer and communications equipment and software that meet specifications stated in the Manual to create financial reports and transmit them to us electronically.

You must also submit to us or our designated supplier upon request copies of all your federal, state, and local income tax returns.  All information that you furnish to us may be shared with a designated supplier, and all information furnished by you to a designated supplier may be shared with us. We may use this data to confirm that you are complying with your obligations under this Agreement, to formulate earnings and expense information to show to prospective franchisees and to advise you on

operations. We will not, however, disclose your financial information with your identity attached or included, without your written permission or a valid order of a court or proper officer.

### 7.6 Insurance

You must purchase and maintain a policy or policies of commercial general liability, commercial auto insurance, property insurance, worker's compensation (if you have employees) and any other insurance required under applicable law or that we may periodically require. All such insurance policies must be written by an insurance company reasonably satisfactory to us with a Best rating of "A-" or better. To the extent legally permissible, all required policies must name Dental Fix RX, LLC as an additional insured. Each insurance policy must contain a waiver of all subrogation rights against us, our affiliates and their successors and assigns and must provide for thirty (30) days prior written notice to us of a policy's material modification, cancellation or expiration. Each insurance policy must be satisfactory to us in form, substance and coverage. Failure to maintain the insurance required under this Agreement and to provide us evidence of the insurance is a material breach of this Agreement. If you fail to obtain the insurance required by this Agreement and as required by us from time to time, we reserve the right, in our sole discretion, to obtain insurance on your behalf and you agree to promptly reimburse us for the cost of such insurance. Upon demand, you agree to immediately pay us such charges together with a twenty percent (20%) administrative fee for our expenses in obtaining insurance on your behalf.

You must obtain all insurance policies required under this Agreement and provide us with copies of your certificates of insurance prior to attending the initial training program. Upon our request, you shall supply us with copies of all insurance policies and proof of payment. Upon renewal of all insurance policies, you shall send us current certificates of insurance and copies of all insurance policies.

We may increase the minimum coverage requirements as necessary to reflect inflation or other changes in circumstances. The insurance maintained by us does not in any way limit or affect your obligation to obtain and maintain the following policy or policies in the amounts specified below. Our performance of your obligations does not relieve you of liability under the indemnity provisions set forth in this Agreement.

#### 7.6.1 General Liability Insurance

Your commercial general liability policy must include the following minimum limits and must provide coverage for us, as an additional insured, on a primary and non-contributory basis notwithstanding any other insurance and whether or not collectible:

| | Limits |
|---|---|
| Each Occurrence | 1,000,000 |
| Damage to Rented Premises | 100,000 |
| MED EXP (any one person) | 5,000 |
| Personal & ADV Injury | 1,000,000 |
| Genreal Aggregate | 2,000,000 |
| Products - COMP/OP AGG | 1,000,000 |

Under a general liability insurance policy, the insurer is obligated to pay the legal costs of a business in a covered liability claim or lawsuit. Covered liability claims include bodily injury, property damage, personal injury, and advertising injury (damage from slander or false advertising). This includes

injuries at your place of business, or if an employee damages property or injures someone at a client's site. The insurance company also covers compensatory and general damages. Punitive damages are not covered under general liability insurance policies because they are considered to be punishment for intentional acts.

In the event an additional mobile service center van(s) is added to your Territory, you must purchase an umbrella policy with total coverage of at least One Million Dollars ($1,000,000) per van, which provides excess auto and general liability coverage. Such umbrella policy shall include Dental Fix RX, LLC as an additional insured and shall provide coverage for us, as an additional insured, on a primary and non-contributory basis notwithstanding any other insurance and whether or not collectible.

### 7.6.2 Commercial Auto Insurance

This insurance is mandatory whether or not the vehicle is owned or leased and protects the insured against losses involving the use of their commercial vehicles.

This type of business insurance covers a variety of vehicles and is also referred to as commercial car insurance, truck insurance, or fleet insurance. Commercial auto insurance, like your personal auto policy, provides similar coverage, such as liability, collision, comprehensive, medical payments (or personal injury protection) and uninsured motorist's coverage. However, there are also differences between a commercial auto insurance policy and your personal auto policy that may include eligibility, definitions coverage, exclusions and limits.

The auto policy must state One Million Dollars ($1,000,000) combined single limits naming Dental Fix RX, LLC as an additional insured.

### 7.6.3 Other Insurance

You must also carry property insurance with fire and lightening, extended coverage, theft, vandalism and malicious mischief, inland marine insurance, and flood insurance (if your Dental Fix Business is in a designated flood hazard area) on the mobile service center van(s) and all fixtures, equipment, supplies, and other property used in the operation of the Dental Fix Business, for not less than 100% of the replacement value of same.

In addition, if you have employees and if required by applicable law, you must maintain policies of workers' compensation insurance affording statutory coverage, employers liability coverage subject to a limit of no less than $1,000,000 each employee, $1,000,000 each accident and $1,000,000 policy limit, unemployment insurance, and/or disability insurance in such amounts as prescribed by law in your Territory, and any other types of insurance required by applicable law.

### 7.7    Payment of Indebtedness

You must pay promptly when due all taxes and debts that you incur in the conduct of your Dental Fix Business, particularly debts to us and to our approved or designated suppliers. You and your Related Parties must remain current in any financial responsibilities to your lessor and to us and our Related Parties.

### 7.8    Assignment of Listings

You must sign **Attachment 4** to this Agreement, assigning us rights to the telephone numbers, email addresses, URLs and all other listings you use as a Franchisee or in any way associated with your Dental Fix Business, effective upon termination, expiration or non-renewal of this Agreement.

**7.9    Guaranty and Subordination**

You, your spouse, and any person or entity holding at least a twenty percent (20%) interest in you or your Dental Fix Business, must sign **Attachment 6** to this Agreement, the Personal Guaranty and Subordination Agreement.

## 8.    RELATIONSHIP OF PARTIES

**8.1    Interest in Marks and System**

You may not at any time do or cause to be done anything contesting or impairing our interest in our Trade Names, Marks or System.  You have not been granted any rights in our Trade Names, Marks or System except for your right to use them according to the express terms of this Agreement.  We retain the right to grant other franchises or licenses to use the Trade Names, Marks and System on any terms that we would like, subject only to your rights described in this Agreement.

**8.2    Independent Status**

You are an independent contractor and must make this fact clear publicly in your dealings with suppliers, lessors, government agencies, employees, clients, customers, and others.  You must rely on your own knowledge and judgment in making business decisions, subject only to the requirements of this Agreement and the Manual.  This Agreement does not create a fiduciary relationship, joint venture, partnership, or agency relationship between you and us, and neither party to this Agreement is an employee, agent, servant, partner or joint venture of the other; meaning that, except as expressly provided for in this Agreement, no party to this Agreement has the authority, implied, apparent or expressed, to lawfully bind the other with respect to any matter.  No employee of yours shall be deemed to be an employee of ours. Neither you nor any of your employees whose compensation for services is paid by you may, in any way, directly or indirectly, expressly or by implication, be construed to be an employee of ours for any purpose, including, but not limited to, with respect to any mandated or other insurance coverage, tax or contributions, or requirements pertaining to withholdings, levied or fixed by any city, state or federal governmental agency. We will not have the power to hire or fire your employees, and you alone control your employees' wages, hours, assignments, hiring, firing and any benefits.  You may not use the Dental Fix Trade Names or Marks as part of your legal name (corporate, limited liability company, or partnership name), although you may use it as part of your fictitious name of your business.

**8.3    Display of Status**

Business cards, stationary, purchase order forms, invoices, leases, tax returns, and other documents you use in your business dealings with suppliers, lessors, government agencies, employees, and clients must clearly identify you as an independent legal entity operating under a Dental Fix franchise.

**8.4    Confidentiality and Related Party Restrictions**

The information, ideas, forms, marketing plans, and other materials we disclose to you under this Agreement, whether or not included in the Manual, are our confidential and proprietary information and trade secrets. You agree to maintain the confidentiality of all such material. You may not disclose any such information to any third party, except to your employees and agents as necessary in the operation of your Dental Fix Business and except as we authorize otherwise in writing. It is your responsibility to ensure the compliance of your Related Parties (which includes without limitation all your employees) with the provisions of this section. Each of your Related Parties must sign a written nondisclosure agreement and noncompetition agreement, in the form of **Attachment 3** to this Agreement, when you sign this Agreement. You must obtain a nondisclosure and noncompetition agreement in the same form from each new Related Party with which you become affiliated during the term of this Agreement within five (5) days from such affiliation and promptly send a copy of that nondisclosure agreement to us. This provision shall survive termination or expiration of this Agreement.

**8.5    Indemnification**

You agree to indemnify and hold us harmless from all claims, obligations and damages, directly or indirectly arising out of your Dental Fix Business' operation, the business you conduct under the Agreement or your breach of the Agreement. For the purposes of this indemnification, "claims" include all obligations, damages (actual, consequential, incidental, punitive, or otherwise) and costs that we incur in defending any claims against us, including, without limitation, reasonable accountants', attorneys', and expert witness fees, costs of investigation and proof of facts, court costs, travel and living expenses and other expenses of litigation or alternative dispute resolution, regardless of whether litigation or alternative dispute resolution is commenced. We may defend any claim against us at your expense and agree to settlement terms or take other remedial, corrective, or other actions in our sole discretion. We have the right to designate attorneys that you must retain, at your expense, to defend any claims subject to this indemnification provision.

We agree to indemnify and hold you harmless from all direct expenses and liabilities arising from or in any way connected with any third party claim that your operation of a Dental Fix Business in compliance with this Agreement infringes its intellectual property rights or misappropriates its trade secrets. If you are made a party to a legal proceeding in connection with a claim of this type, we will hire counsel to protect our interests and will defend you at our own expense. We may enter into any settlement in our sole discretion and any settlement we negotiate will bind you. This provision shall survive termination or expiration of this Agreement.

**8.6    Covenants Not to Compete**

**(a)  In-Term Covenant**

Neither you nor any of your Related Parties nor your spouse or children may, during the term of this Agreement operate, own a beneficial interest in or assist directly or indirectly, be employed by or gain any financial benefit or other remuneration from any company or business that is competitive with our business.

**(b)  Post-Term Covenant**

For two (2) years after the termination, expiration, Transfer or non-renewal of this Agreement, neither you nor any of your Related Parties nor your spouse or children may, directly or indirectly:

    i.    solicit or otherwise attempt to induce (by combining or conspiring with, or attempting to do so), or influence in any other manner any of our employees, officers, directors, agents,

consultants, representatives, contractors, suppliers, distributors, franchisees, or other business contacts ("Business Affiliates") to terminate or modify their business relationship with us or to compete against us;

ii.  as owner, officer, director, employee, agent, lender, lessor, broker, consultant, franchisor, franchisee, or in any other similar capacity whatsoever connected in any manner with the ownership, management, operation or control, or conduct of a Competitive Business that is located or markets within your Territory or within twenty (20) miles of any Practitioner in your Territory or the Territory of any other party in the Dental Fix Franchise Network. As stated also in Section 8.4, you must obtain the individual written agreement of each of your Related Parties to the provisions of this section in the form of Attachment 3 of this Agreement.

iii.  in any manner interfere with, disturb, disrupt, impair, diminish, or otherwise jeopardize our System, our business, or the business of our franchisees.

For the purposes of this Agreement, a "Competitive Business" is any business which is engaged wholly or partially, directly or indirectly, in operating a business which provides the same or similar services or products as Franchisee, Franchisor, and Franchisor's other franchisees.

**(c)  Reasonableness; Modification**

You agree that the above covenants are reasonable for the protection of the Dental Fix Franchise Network, are reasonable with respect to your future endeavors, and to the extent a court determines any of them to be unenforceable, you agree that any such covenant shall be rewritten by the court to make it enforceable.

**(d)  Irreparable Harm**

You agree that a violation of any of the above covenants by you or any other person governed by these provisions will cause the Dental Fix Franchise Network irreparable harm and that we are entitled to and you agree to entry of temporary, preliminary and permanent injunctive relief enforcing any such covenant, without the need to post bond.

(e)  The covenants contained in this Section 8.6 and Section 8.7 below shall be construed as severable and independent, and may be enforced by our successors or assigns.

**8.7  Non-Solicitation**

During the term of this Agreement and for two (2) years after its termination, expiration or non-renewal, you may not disrupt, damage, impair, or interfere with our business or that of any of our franchisees by directly or indirectly soliciting our or their employees to work for you or for any individual or company then in competition with us, with them or with the Franchise Network.

**9.  TRANSFER OF YOUR BUSINESS**

**9.1  Purpose of Conditions for Approval of Transfer**

We signed this Agreement in reliance on your integrity, ability, experience and financial resources. You may not sell, assign or transfer the Agreement, any ownership interest in you (if you are an entity), or your Dental Fix Business operated under this Agreement, or any part of or interest in either

this Agreement or your Dental Fix Business, unless you have first obtained our written consent, which may not be unreasonably withheld. To ensure that no Transfer jeopardizes the Trade Names, Marks, or our interest in the successful operation of your Dental Fix Business, we will consent to a Transfer only if you comply with the provisions of Sections 9.2 through 9.5 of this Agreement.

**9.2 Notice of Intention to Transfer**

If you would like to Transfer this Agreement, your Dental Fix Business, and/or an ownership interest in you (if you are an entity), you must first submit to us: (a) the form of transfer application we then use, if any, completed by the prospective transferee, and (b) a written notice describing all the terms and conditions of the proposed Transfer.

**9.3 Consent by Us and Right of First Refusal**

We will advise you in writing of our position concerning the proposed Transfer. We may either consent in writing to the Transfer, refuse to consent, or purchase your Business from you ourselves on the same terms and conditions as those offered by proposed third party. We may seek and you must provide us information so we can ascertain the nature and details of the offer. Silence is not consent. Our consent to the Transfer is merely a consent to the proposed third party as a Dental Fix Franchisee and is not meant as consent to all of the terms and conditions of your agreements and arrangements with the proposed transferee. Our consent to a particular Transfer will not be consent to any other or subsequent Transfer. If any terms or conditions in the notice, or any terms or conditions in the documents memorializing the agreement between you and the proposed third party contradict any of the terms of this Agreement, the terms of this Agreement shall control and shall supersede any such terms and conditions.

**9.4 Conditions for Consent to Transfer**

Our consent to your proposed Transfer will be subject to the following conditions:

(a) Our determination, based on the information that you submit and any other information available, that the proposed transferee meets all of our criteria of character, business experience, financial responsibility, and net worth;

(b) Payment of all your outstanding debts to us and our Related Parties;

(c) Our determination that you and your Related Parties are in full compliance with all of the terms of this Agreement, any other agreements between us or our Related Parties on the one hand and you or your Related Parties on the other and with the Manual;

(d) Signing by the transferee of our then current form of franchise agreement and our then current form of personal guarantee and signing by the transferee's Related Parties of required ancillary agreements in the forms attached to the applicable franchise agreement. The term of the new franchise agreement will expire on the date of expiration of this Agreement. The execution of the new franchise agreement will terminate this Agreement, except for the guarantees of your Related Parties and the post-termination and post-expiration provisions under this Agreement;

(e) Your payment in full of the Transfer Fee stated in Section 6.7 of this Agreement;

(f) Successful completion by the transferee of the Dental Fix initial training program to our satisfaction;

(g) Signing by you and your Related Parties that are guarantors to this Agreement of a release of all claims that you and your Related Parties have or may have against us or our Related Parties in a form satisfactory to us; and

(h)     You must comply with the terms of the post-termination covenants not to compete set forth in this Agreement, commencing on the effective date of the Transfer, and agree to continue to be bound by the confidentiality obligations set forth in this Agreement.

**9.5     Changes of Ownership Not Considered to be Transfers**

As used in this Agreement the word "Transfer" does not mean an assignment to:

(a)     Any trustee, guardian, executor or conservator for the account and benefit of a spouse, ancestor, or descendant either of you, your Designated Principal or your principal owner;

(b)     Any business entity if the beneficial ownership of the transferee immediately after the assignment is the same and in the same proportions as the beneficial ownership of the transferor immediately before the assignment. For the assignment to be effective, you, if you are an individual franchisee, or each of your owners, if you are not, must (1) first sign and deliver a personal guaranty to us, (2) submit to us information on any proposed change of this type in the equity ownership of the franchisee, the identity and address of all proposed owners of any interest in the franchise or the franchisee, the percentage of ownership, and the address where business records are maintained and (3) enter into a new franchise agreement, amended to eliminate the initial franchise fee and shorten the term to the remainder of the original agreement's term.

**9.6     Changes of Ownership Upon Death or Total Disability**

If you or your principal owner or Designated Principal dies or suffers a Permanent Disability, as defined below, while this Agreement is in effect, the individual's heirs, successors or beneficiaries will have ninety (90) days within which to complete initial training to our satisfaction (or appoint one of their number to do so) and pay the then current training fees. If we approve the heirs, successors or beneficiaries or any of them as transferees of the Business, we will waive any transfer fee in connection with the Transfer. If we advise the heirs or beneficiaries in writing that we do not approve them as transferees of the franchise, or if we do not approve or disapprove the Transfer within sixty (60) days following the death or Permanent Disability, your heirs or beneficiaries may have one hundred twenty (120) additional days from the date of disapproval of the Transfer within which to find and notify us of a proposed Transfer to a qualified transferee. If your heirs or beneficiaries do not submit a qualified transferee within the specified period, the Agreement will automatically terminate at the end of that period unless we have granted a written extension of time.

"Permanent Disability" means that the individual is unable, through mental or physical infirmity, to participate actively in the business for six (6) calendar months or more during a consecutive twelve (12) month period.

**9.7     Assignment by Us**

We may assign this Agreement or any rights or obligations created by it without your consent, provided that the assignee expressly agrees in writing to assume our obligations under this Agreement.

**9.8     No Encumbrances**

You shall not have the right to pledge, encumber, hypothecate, assign or otherwise give a third party any security interest in this Agreement, the Trade Names or Marks, other Dental Fix Rx, LLC trade names, and copyrighted materials, or your Dental Fix Business or any of its assets in any manner whatsoever without our express written permission, specifically stating that the encumbrance is

permissible and describing the specific nature of the encumbrance. Any attempted encumbrance made in violation of this section is a material breach of this Agreement and voids the security interest. You expressly agree to notify the beneficiary or holder of any attempted encumbrance of the restrictions on encumbrances in this Agreement.

**9.9      Purchase of Your Business by Us**

In addition to our other rights to terminate this Agreement under certain circumstances when you are in default, we may, at any time, purchase all of the assets of your Dental Fix business from you provided that: (1) we pay you in immediately available funds 30% of your gross sales the previous twelve months; (2) we assume your prospective obligations under contracts with customers, landlords and suppliers of goods and services (provided that we will not be required to assume any obligations incurred for services or rights provided prior to the transfer of title of the assets to us); and (3) we reimburse you for the amount of any prepayment penalties that you may incur by reason of terminating financing arrangement you have theretofore made in connection with any of these assets. We will deliver written notice to you of our intention to purchase the assets of your Dental Fix Business specifying the date, no sooner than sixty (60) days from the date of the notice, when the conveyance shall close. On the closing date, you shall (1) sign appropriate transfer documents to convey, sell, assign and transfer all of your rights, title and interest in and to the assets to us or our designee, (2) certify and sign such representations, warranties and covenants concerning yourself and the Dental Fix Business as we may reasonably request, and (3) deliver a general release, in form satisfactory to us, of any and all claims against us and our Related Parties.

With respect to any transfer of the Franchise Agreement, if the parties cannot agree on the fair market value, we will hire an appraiser acceptable to both of us who will determine the fair market value.

## 10.      TERMINATION OF AGREEMENT

**10.1      Termination by the Parties**

This Agreement may be terminated by the written agreement of both parties; provided, however, you must provide us with at least six (6) months' prior written notice of your intent to terminate the Agreement and must:

(i)      immediately pay us a fee of Ten Thousand Dollars ($10,000) for administrative and legal expenses we will incur in connection with your request to terminate;

(ii)      have all of your financial statements up to date as of the notice and through the effective date of termination;

(iii)      sign, along with your Related Parties that are guarantors to this Agreement, a general release of all claims that you and your Related Parties have or may have against us or our Related Parties in a form satisfactory to us; and

(iv)      comply with your post-termination obligations, as set forth in Sections 8.4 - 8.7 and 10.4.

**10.2      Termination by Us**

**10.2.1      Termination Upon Notice Without Opportunity to Cure**

We also have the right to terminate this Agreement upon notice with no opportunity to cure as a result of certain defaults. You shall be deemed to be in default and we may, at our option, terminate this Agreement and all of your rights granted hereunder, without affording you any opportunity to cure the default, effective immediately upon the delivery of written notice to you by us, upon the occurrence of any of the following events:

10.2.1.1    You have made or make any intentional material misrepresentation or omission in your application for, or in acquiring, the license and franchise rights, or in operating the Dental Fix Business;

10.2.1.2    You make or attempt to make any Transfer in violation of this Agreement;

10.2.1.3    You abandon the franchise relationship or abandon the franchise by failing actively to operate the Dental Fix Business for ten (10) or more consecutive calendar days, unless you close the Dental Fix Business for a purpose we approve or your failure to operate is due to fire, flood, other Acts of God or other similar causes beyond your control;

10.2.1.4    You knowingly fail to maintain any required licenses, permits, or certifications to open or operate the Dental Fix Business, or fail to comply with any federal, state, or local law regulation;

10.2.1.5    You are or have been convicted of, or plead guilty or plead no contest to a felony, or a violation which involves driving, alcohol or drugs, or your driver's license is suspended or revoked;

10.2.1.6    You engage in any dishonest or unethical conduct which adversely affects the reputation of Dental Fix or the Franchise Network or the goodwill associated with the Trade Names or the Marks;

10.2.1.7    You knowingly make any unauthorized use or disclosure of any part of the Manual, the System or any other Confidential Information;

10.2.1.8    You interfere with our relations with third parties or our ability to operate, and/or grant franchises under, the System;

10.2.1.9    You knowingly fail to maintain the insurance we require or you fail to repay us for the insurance that we have paid on your behalf and you do not correct the failure within ten (10) days after we deliver written notice of that failure to you;

10.2.1.10    You fail to pay us (or our Related Parties or approved suppliers) any amounts due and do not correct the failure within five (5) days after we deliver written notice of that failure to you;

10.2.1.11    You receive three (3) or more notices of default within any eighteen (18) month period;

10.2.1.12    You have materially breached any other agreement with us or any of our Related Parties, and we (or any of our Related Parties) have terminated such agreement for cause;

10.2.1.13   You fail to select another territory we consent to within 180 days from delivery of the Notice, or fail to commence operation of your Dental Fix Business within 90 days from the date we provide our written consent of the new territory, as provided for in Section 7.2.3;

10.2.1.14   You fail to purchase any required equipment, tools, supplies, products or services from us, our affiliates and/or from suppliers we designate as required by us;

10.2.1.15   You interfere with or prevent our representatives or designees from conducting inspections or audits during normal business hours;

10.2.1.16   You fail to satisfactorily complete the initial or a subsequent required supplemental training program; or

10.2.1.17   Subject to applicable bankruptcy law, you become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by you or such a petition is filed against you and not opposed by you; or if you are adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver of you or other custodian for your business or assets is filed and consented to by you; or if a receiver or other custodian (permanent or temporary) of your assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against you; or if a final judgment against you remains unsatisfied or of record for thirty days or longer (unless unappealed or a supersedeas bond is filed); or if you are dissolved; or if execution is levied against your business or property; or if suit to foreclose any lien or mortgage against the Dental Fix Business Premises or equipment is instituted against you and not dismissed within thirty (30) days; or if real or personal property of your Dental Fix Business shall be sold after levy thereupon by any sheriff, marshal, or constable.

**10.2.2   Termination Upon Notice and Opportunity to Cure**

Except as otherwise provided in Section 10.2.1 above, upon any other default by you of your obligations hereunder, including those identified below, we may terminate this Agreement by giving written notice of termination, setting forth the nature of such default to you at least thirty (30) days prior to the effective date of termination; provided, however, that you may avoid termination by immediately initiating a remedy to cure such default, curing it to our satisfaction, and by promptly providing proof thereof to us, all within the thirty (30) day period. If any such default is not cured within the specified time, this Agreement shall terminate effective upon another notice delivered to you upon the expiration of the thirty (30) day period or such longer period as applicable law may require. The following is a non-exclusive list of illustrative events of default for which you may have an opportunity to cure the default to avoid termination:

10.2.2.1   You misuse our Trade Names or Marks, or use our Trade Names or Marks without our authorization at any location or on any vehicle other than the Premises and mobile units approved by us;

10.2.2.2   You make any unauthorized use of our System or proprietary software;

10.2.2.3   You fail to operate the Dental Fix Business during the days and hours specified in the Manual without our prior approval;

10.2.2.4    You fail to operate the Dental Fix Business from the Premises or mobile service centers approved by us;

10.2.2.5    You fail to satisfy any minimum annual performance standard provided for in this Agreement;

10.2.2.6    You fail to pay when due any federal or state income, service, sales, or other taxes due on the Dental Fix Business's operation, unless you are in good faith contesting your liability for these taxes;

10.2.2.7    You fail to promptly pay your suppliers, including any of our Related Parties, when such payments are due;

10.2.2.8    You fail to comply with any other material provision of this Agreement, the Manual, or any System Standard;

10.2.2.9    You operate the Dental Fix Business in an unsafe manner, and you do not cure or substantially commence to cure this failure;

10.2.2.10   You fail to participate in the advertising, promotional, or marketing activities, services, and programs that are established by us, if said program are mandatory; or

10.2.2.11   You fail to have your mobile service center delivered to our headquarters at least 7 days prior to the first day of your scheduled initial training program, and we decline to expedite the buildout of your mobile service center or are unable to complete the buildout prior to the first day of your scheduled initial training program, for any reason(s).

### 10.2.3   Extended Notice of Termination

If any law applicable to this Agreement requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor franchise agreement, than is specified in this Agreement, a different standard of "cause" for termination or the taking of some other action or forbearance not required under this Agreement, the prior notice, "cause" standard, and/or other action required by such law will be substituted for the comparable provisions in this Agreement.

### 10.2.4   Your Failure to Pay

Your failure to make payments of any Corporate Support Fees, Marketing Contributions or other money due and owing to us, after receipt from us of a notice of the default granting you an opportunity to cure, will be deemed a willful and wrongful breach by you under this Agreement and your decision to reject and terminate this Agreement and all related agreements between you and us.

### 10.3    Cross-Defaults, Non-Exclusive Remedies, etc.

Any default by you (or any of your Related Parties) under this Agreement shall be a default under all other agreements between us (or any of our Related Parties) and you (or any of your Related Parties). Any default by you (or any Related Parties) under any other agreement, including, but not limited to, any lease and/or sublease, between us (or any of our Related Parties) and you (or any of your Related Parties), and any default by you (or any Related Parties) under any obligation to us (or any of our Related Parties) shall be a default under this Agreement. Any default by you (or any of your Related Parties) under any lease, sublease, loan agreement, security agreement or other agreement related to your Dental Fix

Business, with any third party shall be a default under this Agreement and all other agreements between us (or any of our Related Parties) and you (or any of your Related Parties).

In each of the foregoing cases, we (and our Related Parties) will have all remedies allowed at law, including termination of your rights (and/or those of any of your Related Parties) and our (and/or our Related Parties') obligations under all agreements between us. No right or remedy that we may have (including termination) is exclusive of any other right or remedy provided under law or equity and we may pursue any rights and/or remedies available.

**10.4    Rights and Obligations After Termination, Non-Renewal or Expiration**

Upon termination, non-renewal or expiration of this Agreement for any reason, the parties will have the following rights and obligations:

(a)    We will have no further or continuing obligations under this Agreement.

(b)    You must give us and our designee a final accounting of your Dental Fix Business, pay us within thirty (30) days all payments due to us, and return the Manual, marketing materials, proprietary forms, software, videotapes and any other property belonging to us or our Related Parties to containing proprietary information.

(c)    You must immediately and permanently stop using the Marks or any confusingly similar marks, the System, and any advertising, signs, stationery, forms and other items that bear the Trade Names, the Marks or any other identifying marks or colors that might give others the impression that you are operating a Dental Fix Business.

(d)    You and all others bound by them will honor all post-term covenants stated in the Agreement.

(e)    You must promptly sign any documents and take any steps that in our judgment are necessary to delete your listings from classified telephone directories, disconnect or, at our option, assign to us any telephone numbers, email addresses, URLs and listings as in **Attachment 4**, that have been used in connection with your Business, and cease all other references that suggest you are associated with us. By signing this Agreement, you irrevocably appoint us your attorney-in-fact to take actions described in this paragraph if you do not do so yourself within seven (7) days after this Agreement is terminated.

(f)    You must maintain all records we require you to maintain under this Agreement for not less than six (6) years after final payment of any money you owe to us when this Agreement is terminated.

(g)    We have the option to buy some or all of the assets of your Dental Fix Business from you after termination upon the following terms:

i.    The physical assets of your Dental Fix Business, including its equipment, supplies and inventory will be valued at the lower of fully depreciated book value or fair market value of the assets alone, without regard to any going concern value of the then terminated Business. If the parties do not agree on a price for the physical assets, the parties will select an independent appraiser who will determine the lower of fully depreciated book value or fair market value.

ii.    Upon our request, you must give us copies of the leases for any and all real property and equipment used in your Business and allow us the opportunity, at a mutually satisfactory time, to inspect the leased property and equipment. We will advise you whether or not we wish to assume any real property or equipment lease in consideration of our assumption of future obligations under the lease. We will not, however, assume any responsibility for any debts to the lessor that already exist on the date when we assume the lease or for any events that occurred before such date. If we elect to assume any such leases, you must assign them to us.

      iii.    We may elect to assume the contracts you have with existing customers for work that has not yet been performed, if applicable. If we elect to assume those contracts, you must assign to us any interest you may have in your existing client contracts and in any income generated by them after termination, non-renewal or expiration. We will in turn assume responsibility for providing the service under the contracts and may reassign them to other members of our Franchise Network or perform the work ourselves.

      iv.    Upon our written election to buy some or all of the assets of your Dental Fix Business, we have the right to immediate possession and may seek injunctive relief from any court of competent jurisdiction to enforce this right.

(h)    If the license granted in this Agreement is terminated or not renewed because of your default, the rights described in this section are not our exclusive remedies, but will instead supplement any other equitable or legal remedies available to us.

(i)    Termination, non-renewal or expiration of this Agreement will not end any of your obligations that came into existence before that event. All of your obligations that, by their terms or by reasonable implication, are to be performed in whole or in part after termination, non-renewal or expiration will survive that event.

(j)    You shall continue to be responsible for any warranty claims that may arise from your former customers and agree to work in good faith and in a professional manner with us, as well as your former customers, to resolve any such claims. You may not, however, represent to such former customers that you are still a Dental Fix franchisee or associated with us.

## 11.    MISCELLANEOUS PROVISIONS

### 11.1    Construction of Contract

Section headings in this Agreement are for reference purposes only and will not in any way modify the statements contained in any section of this Agreement. Each word in this Agreement may be considered to include any number or gender that the context requires.

### 11.2    Governing Law

A substantial portion of the negotiations, anticipated performance, and execution of this Agreement occurred or will occur at our headquarters in the State of Florida. Therefore, you agree that except to the extent governed by the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. §§ 1051 et seq.) or other federal law, this Agreement and any other agreement relating to this Agreement, and all transactions contemplated by this Agreement, as well as our offer, sale, or negotiation of a franchise or the relationship of the parties arising there from or from entering into this Agreement, are governed by, and must be construed and enforced in accordance with, the internal laws of the State of Florida, without regard to its conflict-of-laws principles. Notwithstanding the foregoing, any statutes in the foregoing jurisdiction regulating the offer or sale of franchises, business opportunities, or similar interests or governing the relationship between the parties to this Agreement, or between you, your Related Parties, and us, do not apply unless their respective jurisdictional requirements are met independently without reference to this Section 11.2.

### 11.3    Notices

The parties to this Agreement must direct any notices to the other party at the address below that party's name on the final page of this Agreement or at another address if advised in writing that the address has been changed. Notice may be delivered by email, by confirmed facsimile, delivery service,

express or first class mail.  Notice by email or facsimile will be considered delivered upon transmission unless the facsimile is confirmed not received; by delivery service, upon delivery; by express, one (1) day after transmission; and by first class mail, three (3) days after posting.

## 11.4   Amendments

This Agreement may be amended only by a written document signed by all of the parties to this Agreement.

## 11.5   Waiver

Waiver of any breach of this Agreement shall not be interpreted as a waiver of any subsequent breach.  Any representations requiring you as a prospective franchisee to assent to a release, estoppel or waiver of liability are not intended nor shall they act as a release, estoppel, or waiver of any liability incurred under the Maryland Franchise Registration and Disclosure Law.

## 11.6   Integration

This Agreement and all ancillary agreements executed contemporaneously with this Agreement, constitute the entire agreement between the parties with reference to the subject matter of this Agreement and supersede any and all prior negotiations, understandings, representations and agreements. You acknowledge that you are entering into this Agreement, and all ancillary agreements executed contemporaneously with this Agreement, as a result of your own independent investigation of the franchised Dental Fix Business and not as a result of any representations about us or the System made by our shareholders, members, officers, directors, employees, agents, independent contractors or other Dental Fix franchisees that are contrary to the terms set forth in this Agreement or of any disclosure document or other similar document required or permitted to be given to you pursuant to applicable law. This provision shall not serve to waive reliance on any representation made by us in the disclosure document or in its exhibits or amendments.  Neither shall it serve to disclaim liability for statements authorized by us in our disclosure document.

## 11.7   Negotiation and Mediation

### 11.7.1   Agreement to Use Procedure

The parties have reached this Agreement in good faith and in the belief that it is mutually advantageous to them.  In the same spirit of cooperation, they pledge to try to resolve any dispute without litigation.  They agree that, if any dispute arises between them before beginning any legal action to interpret or enforce this Agreement or to resolve any dispute relating to their relationship with one another, they will first attempt to negotiate a settlement and, if either party files a mediation proceeding, will participate in the mediation.  Good faith participation in these procedures to the greatest extent reasonably possible is a precondition to maintaining any legal action to interpret or enforce this Agreement, except for our assertion of equitable rights in this Agreement.

### 11.7.2   Mediation

If the dispute has not been resolved within a reasonable time through negotiations, either party may, at its option, begin mediation procedures.  Mediation will be conducted by and under the rules of the American Arbitration Association ("AAA") in Miami-Dade, Florida.  The parties shall share the costs of mediation, such as the mediator's fees and cost of the facility, equally.  The parties will pay their own attorney's fees and travel expenses associated with mediation.

**11.8    Jurisdiction and Venue**

Any dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof, or the relationship between the parties, not resolved by negotiation or mediation, shall be instituted exclusively in a court of competent jurisdiction in Broward County, Florida. Franchisee agrees to submit to the personal jurisdiction of the courts in Broward County, Florida and waives any right to contest venue and jurisdiction in Broward County, Florida and also waives any claims that venue and jurisdiction in Broward County, Florida are invalid.

**11.9    Limitation of Actions**

ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE RELATIONSHIP OF YOU AND US, OR YOUR OPERATION OF THE DENTAL FIX BUSINESS (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET OFF OR RECOUPMENT), MUST BE BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF ONE YEAR AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM; OR IT IS EXPRESSLY ACKNOWLEDGED AND AGREED BY ALL PARTIES THAT SUCH CLAIMS OR ACTIONS SHALL BE IRREVOCABLY BARRED. THERE SHALL BE NO CLASS ACTIONS.  NOTWITHSTANDING THIS, OUR CLAIMS ATTRIBUTABLE TO UNDER-REPORTING OF SALES, AND CLAIMS OF ANY PARTY FOR FAILURE TO PAY MONIES OWED AND FOR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.  HOWEVER, ANY CLAIMS ARISING UNDER THE MARYLAND FRANCHISE REGISTRATION DISCLOSURE LAW MUST BE BROUGHT WITHIN THREE YEARS AFTER THE GRANT OF THE FRANCHISE.

**11.10    Individual Dispute Resolution**

You and we agree that the relationship contemplated by this Agreement is a unique and individual relationship between the parties and will be characterized by unique circumstances, actions and experiences that relate only to you and your relationship with us. Therefore, you and we agree that any litigation between or among the parties to this Agreement and any of their Related Parties will be conducted on an individual basis and not on a consolidated, group, or class-wide basis.

**11.11    Jury Trial Waiver**

THE PARTIES HEREBY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ALL LITIGATION ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR ANY AGREEMENT BETWEEN THE PARTIES, OR CONCERNING THEIR RELATIONSHIP.

**11.12    Attorney Fees**

If legal action, including any action on appeal is instituted to enforce the terms and conditions of this Agreement, the substantially prevailing party shall recover attorney fees from the other. The judge shall determine which party is the prevailing party, and a party need not prevail on all of its claims or defenses in the suit to be found to have substantially prevailed.

**11.13   Severability**

Each provision of this Agreement is severable. If any of its provisions is determined to be invalid or in conflict with any existing or future law or regulation, that provision will not impair the operation of the remaining provisions of this Agreement. The invalid provisions will be considered not to be a part of this Agreement. However, if we decide that the finding of illegality adversely affects the basic consideration for our performance under this Agreement, we may, at our option, terminate and not renew it.

**11.14   Approval and Guaranties; Ownership and Management Disclosure**

You, and if you are a corporation, all officers and shareholders with a ten percent (10%) or greater interest in you, or, if you are a partnership, all your partners, or, if you are a limited liability company, all your members must approve this Agreement, permit you to furnish the financial information we and our designee requires and agree to the restrictions placed on them, including without limitation restrictions on the transferability of their interests in you, in the license and in your Business and limitations on their rights to compete, and agree to sign guaranties of your obligations in the form of **Attachment 6** to this Agreement. All transferees of any interest in your Dental Fix Business, this Agreement or any equity or voting interest in you, in your corporation, partnership or limited liability company must comply with this provision as a condition precedent to our consent to transfer.

You must sign **Attachment 8**, the "Ownership and Management Disclosure" form, when signing this Agreement.

**11.15   Acceptance by Us**

This Agreement will not be binding on us unless and until it has been signed by our chief executive officer, chairman of the board or president.

**11.16   Disclaimer of Representations; Right to Counsel**

YOU AGREE THAT WE HAVE MADE NO REPRESENTATIONS OR PROMISES OF ANY KIND TO INDUCE YOU TO SIGN THIS AGREEMENT EXCEPT THOSE SPECIFICALLY STATED IN THE FRANCHISE DISCLOSURE DOCUMENT THAT HAS BEEN DELIVERED TO YOU. YOU ACKNOWLEDGE THAT NEITHER WE NOR ANY OTHER PERSON HAS GUARANTEED THAT YOU WILL SUCCEED IN THE OPERATION OF YOUR DENTAL FIX BUSINESS AND THAT NO EMPLOYEE, AGENT OR REPRESENTATIVE OF OURS HAS PROVIDED ANY SALES OR INCOME PROJECTIONS OF ANY KIND TO YOU OTHER THAN THOSE, IF ANY, INCLUDED IN THE FRANCHISE DISCLOSURE DOCUMENT. YOU HAVE MADE AN INDEPENDENT INVESTIGATION OF ALL IMPORTANT ASPECTS OF THE BUSINESS YOU WILL OPERATE UNDER THIS AGREEMENT. YOU UNDERSTAND THAT WE ARE NOT A FIDUCIARY AND HAVE NO SPECIAL RESPONSIBILITIES BEYOND THE NORMAL RESPONSIBILITIES OF A SELLER IN A BUSINESS TRANSACTION. YOU ARE AWARE OF NO FACTS GIVING RISE TO ANY CLAIM AGAINST US BY YOU. WE HAVE ADVISED YOU TO CONSULT AN ATTORNEY TO REVIEW THIS AGREEMENT AND ADVISE YOU ABOUT IT AND WE HAVE GIVEN YOU SUFFICIENT TIME WITHIN WHICH TO DO THIS.

IN WITNESS TO THE PROVISIONS OF THIS AGREEMENT, the undersigned has signed it and dated on the date stated below.

FRANCHISEE

By: _____

Name: Michael Coticchio

Title: Owner/Operator

Address: 2449 Riverside Dr.
Wantagh, N.Y 11793

Date: 3/15/2017

FRANCHISOR
DENTAL FIX RX, LLC

By: _____

Name: DAVID LOPEZ

Title: CEO

4380 Oakes Road
Suite 814
Davie, Florida 33314

Date: 20 MAR 2017

## ATTACHMENT 1
### TERRITORY AND PREMISES

Your Premises is the physical address where your business is located (where you keep your mobile service centers and equipment) and is at

Your Territory is defined as the following zip codes:

11428 Manhasset
11548 Manhasset
11359 Manhasset
11423 Manhasset
11411 Manhasset
11429 Manhasset
11358 Manhasset
11357 Manhasset
11360 Manhasset
11364 Manhasset
11427 Manhasset
11426 Manhasset
11361 Manhasset
11363 Manhasset
11362 Manhasset
11021 Manhasset
11024 Manhasset
11023 Manhasset
11030 Manhasset
11050 Manhasset
11576 Manhasset

**ATTACHMENT 1**
TERRITORY AND PREMISES

Your Premises is the physical address where your business is located (where you keep your mobile service centers and equipment) and is at

_____ NY 11798

Your Territory is defined as the following zip codes:

11428 Manhasset
11548 Manhasset
11359 Manhasset
11423 Manhasset
11411 Manhasset
11429 Manhasset
11358 Manhasset
11357 Manhasset
11360 Manhasset
11364 Manhasset
11427 Manhasset
11426 Manhasset
11361 Manhasset
11363 Manhasset
11362 Manhasset
11021 Manhasset
11024 Manhasset
11023 Manhasset
11030 Manhasset
11050 Manhasset
11576 Manhasset

**ATTACHMENT 2**
**ELECTRONIC FUNDS TRANSFER**
**AUTHORIZATION TO HONOR CHARGES DRAWN BY AND PAYABLE TO**
**DENTAL FIX RX, LLC ("PAYEE")**

The undersigned Depositor hereby authorizes and requests the Depository designated below to honor and to charge to the following designated account, checks, and electronic debits (collectively, "debits") drawn on such account which are payable to the above named Payee. It is agreed that Depository's rights with respect to each such debit shall be the same with or without cause and whether intentionally or inadvertently, Depository shall be under no liability whatsoever. This authorization shall continue in force until Depository and Payee have received at least thirty days written notification from Depositor of its termination.

The Depositor agrees with respect to any action taken according to the above authorization:

(1)     To indemnify the Depository and hold it harmless from any loss it may suffer resulting from or in connection with any debit, including, without limitation, execution and issuance of any check, draft or order, whether or not genuine, purporting to be authorized or executed by the Payee and received by the Depository in the regular course of business for the purpose for payment, including any costs or expenses reasonably incurred in connection therewith.

(2)     To indemnify Payee and the Depository for any loss arising in the event that any such debit shall be dishonored, whether with or without cause and whether intentionally or inadvertently.

(3)     To defend at Depositor's own cost and expense any action which might be brought by a depositor or any other persons because of any actions taken by the Depository or Payee under the foregoing request and authorization, or in any manner arising by reason of the Depository's or Payee's participation therein.

Name of Depository: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Name of Depositor: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Designated Bank Acct.: _____
(Please attach one voided check for the above account)

Store Location: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Store #: ▓▓▓▓▓▓▓▓▓

Address: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Phone #: ▓▓▓▓▓▓▓▓▓

Fax #: _____

Name of Franchisee/Depositor (please print)

By: _____     _Owner/Operator_
Signature and Title of Authorized Representative
Date: _3/15/2017_

Dental Fix/Franchise Agreement-March 2016                1

**ATTACHMENT 3**
NON-DISCLOSURE AND NONCOMPETITION AGREEMENT

This Nondisclosure and Noncompetition Agreement is entered into between ("Confidant") in favor of Dental Fix Rx, LLC ("Franchisor") dated 3/15/2017 in connection with that certain Franchise Agreement between Dental Fix and ("Franchisee") under which the franchisee has been licensed to operate a Dental Fix franchise. Capitalized terms used below, if not defined here, shall have the meanings assigned to them in the Franchise Agreement.

Confidant is about to undergo training by Franchisor or is an owner or Related Party of Franchisee. As a result of this process or status, Confidant has learned or will learn a great deal about the Dental Fix System, including information about the franchisor's business affairs, finances, management, marketing programs, philosophy, customers, systems, standards, know-how, trade secrets, confidential information and methods of doing business. Confidant will have access to confidential information developed and maintained at substantial cost by the Franchisor. This information is proprietary to Dental Fix. Its use by third parties could cause substantial and irreparable damage to the company.

In accord with the Franchise Agreement, the Franchisor will provide or is providing valuable marketing and administrative services.

Therefore, in return for either (a) his or her training or (b) his or her employment by or ownership of the Franchisee and (c) the valuable services provided by the Franchisor to the Franchisee, the undersigned ("Confidant") agrees as follows.

1.      Non-disclosure of Trade Secrets and Confidential Information

Confidant agrees, during the term of the Franchise Agreement and following termination, expiration, non-renewal, transfer or assignment of the Franchise Agreement, not to disclose, duplicate, sell, reveal, divulge, publish, furnish, or communicate, either directly or indirectly, any Trade Secret or other Confidential Information of the Franchisor to any other person or company unless authorized in writing by the Franchisor. Confidant agrees not to use any Trade Secret or Confidential Information for his or her personal gain or for purposes of others, whether or not the Trade Secret or Confidential Information has been conceived, originated, discovered, or developed, in whole or in part, by Confidant or represents Confidant's work product. If Confidant has assisted in the past or will assist in the future in the preparation of any information that we consider to be a Trade Secret or Confidential Information or has himself or herself prepared or created or in the future will prepare or create the information, Confidant assigns any rights that he or she may have in the information as its creator to the Franchisor, including all ideas made or conceived by Confidant.

2.      Definition of Trade Secrets and Confidential Information

For purposes of this Agreement, and subject to any applicable trade secrets statute, the terms "Trade Secret" and "Confidential Information" mean any knowledge, technique, processes, formulas, recipes, designs, methods, systems and other information made known or available to Confidant that the Franchisor treats as confidential, whether existing now or created in the future, including but not limited to information about the cost of materials and supplies, supplier lists or sources of supplies, sales and marketing information, pricing information, proprietary software, internal business forms, orders, customer accounts, manuals and instructional materials describing our methods of operation, including our Operations Manual, audiotapes and video

tapes, products, drawings, designs, plans, proposals, and marketing plans, all concepts or ideas in, or reasonably related to the Franchisor's business that have not previously been publicly released by the Franchisor, and any other information or property of any kind of the Franchisor that may be protected by law as a trade secret, confidential, or proprietary. The Trade Secrets and Confidential Information described in this agreement are the sole property of or are licensed exclusively to the Franchisor.

3.   Return of Proprietary Materials

Upon termination or expiration of Confidant's ownership or employment by the Franchisee Confidant must surrender to the Franchisor all materials considered proprietary by the Franchisor, technical or non-technical, whether or not copyrighted, that relate to a Trade Secret, Confidential Information, or to the conduct of the operations of the Franchisor. Confidant expressly acknowledges that any such materials of any kind given to him or her are and will remain the sole property of the Franchisor.

4.   Solicitation of Clients

During the term of Confidant's relationship with the Franchisor or the Franchisee, and for two (2) years after the relationship ends, Confidant agrees that he or she will not, directly or indirectly or by action in concert with others, solicit, induce or influence or seek to solicit, induce or influence any customer or prospective customer with whom Confidant or the Franchisee did business during that relationship for the purpose of promoting or selling any products or services that are competitive with those offered by Franchisor and its franchisees.

5.   Solicitation of Employees

Confidant further agrees that, during the term of his or her relationship with the Franchisor or the Franchisee and for two (2) years after the relationship ends, he or she will not, directly or indirectly or in concert with others, furnish to or for the benefit of any competitor of the Franchisor or the Franchisee, or the competitor's employees, agents, or licensees, or the competitor's subsidiaries, the name of any person who is employed or engaged as an independent contractor by the Franchisor by the Franchisee or by any other franchisee of the Franchisor.  In addition, Confidant agrees that, during the term of his or her relationship with the Franchisor or the Franchisee and for two (2) years after the relationship terminates, he or she will not, directly or indirectly or by action in concert with others, solicit, induce or influence, or seek to solicit, induce or influence any person who is employed by or engaged as an independent contractor by the Franchisor, the Franchisee or by any other franchisee of the franchisor to terminate his or her employment or engagement.

6.   Covenant Against Competition

For two (2) years after the termination, expiration, or non-renewal of the relationship between Confidant and the Franchisor or the Franchisee, neither Confidant will not, directly or indirectly:

i.   solicit or otherwise attempt to induce (by combining or conspiring with, or attempting to do so), or influence in any other manner any of Franchisor's employees, officers, directors, agents, consultants, representatives, contractors, suppliers, distributors, franchisees, or other business contacts ("Business

Affiliates") to terminate or modify their business relationship with Franchisor or to compete against Franchisor;

ii. as owner, officer, director, employee, agent, lender, lessor, broker, consultant, franchisor, franchisee, or in any other similar capacity whatsoever connected in any manner with the ownership, management, operation or control, or conduct of a Competitive Business that is located or markets within the Territory of Franchisee or within twenty (20) miles of any Practitioner in the Franchisee's Territory or the Territory of any other Dental Fix franchisee;

iii. in any manner interfere with, disturb, disrupt, impair, diminish, or otherwise jeopardize the Dental Fix franchise system, the Franchisor's business, or the business of Franchisor's franchisees.

For the purposes of this Agreement, a "Competitive Business" is any business which is engaged wholly or partially, directly or indirectly, in operating a business which provides the same or similar services or products as Franchisee, Franchisor, and Franchisor's other franchisees.

7.      Saving Provision

Confidant agrees and stipulates that the agreements and covenants not to compete contained in the preceding paragraph are fair and reasonable in light of all the facts and circumstances of the relationship between Confidant and the Franchisor or the Franchisee. However, Confidant and the Franchisor are aware that in certain circumstances courts have refused to enforce certain agreements not to compete. Therefore, in furtherance of the provisions of the preceding paragraph, Confidant and the Franchisor agree that if a court or arbitrator should decline to enforce the provisions of the preceding paragraph, that paragraph must be considered modified to restrict Confidant's competition with the Franchisor and the Franchisee to the maximum extent, in both time and geography, which the court or arbitrator finds enforceable.

8.      Irreparable Harm to the Franchisor

Confidant understands and agrees that the Franchisor will suffer irreparable injury that cannot be precisely measured in monetary damages if the Trade Secrets, Confidential Information or the Franchisor's proprietary information is obtained by any person, firm, or corporation and is used in competition with the Franchisor. Accordingly, Confidant agrees that it is reasonable for the protection of the business and goodwill of the Franchisor to require Confidant to enter into this agreement. If there is a breach of this agreement by Confidant, Confidant consents to entry of temporary, preliminary and permanent injunction, or other equitable relief, all without need for bond, that may be granted by a court having proper jurisdiction.

9.      Binding Effect

This agreement will bind Confidant's heirs, executors, successors, and assignees as though originally signed by them.

10.    Applicable Law

The validity of this Agreement will be governed by the laws of the State where Confidant lives. If any provision of this Agreement is void or unenforceable in that State, the remainder of the Agreement will be fully enforceable according to its terms.

CONFIDANT

Franchisee

Printed Name: Michael Coticchio

Date: 3/15/2017

**ATTACHMENT 4**

ASSIGNMENT OF TELEPHONE NUMBERS, EMAIL ADDRESS AND URLs AND
SPECIAL POWER OF ATTORNEY

1.  ("Franchisee"), to induce Dental Fix Rx, LLC ("Dental Fix") to grant Franchisee a franchise, assigns to Dental Fix all telephone numbers, email addresses, and URL's and listings Franchisee uses, advertises, publicizes, or otherwise makes known to clients, customers or to the public in the operation of its Dental Fix business, both now and in the future, in the city where its business is operated.

2.  This assignment will automatically become effective immediately upon termination, expiration, or nonrenewal of Franchisee's Dental Fix franchise agreement.  When the franchise agreement is terminated, Franchisee agrees to do whatever is necessary to cause the companies providing service to its Business to promptly transfer its telephone numbers, email addresses and URL's and associated directory listings to Dental Fix or its designee.

3.  Franchisee agrees to pay these service providers, on or before the date when the franchise agreement is terminated, all amounts Franchisee owes it in connection with the telephone numbers, including payment for any advertisements or listings in a classified directory or directories.  Franchisee further agrees to indemnify Dental Fix for any money Dental Fix must pay the service providers before the service providers will carry out this agreement.

4.  Franchisee appoints Dental Fix as his, her or its attorney-in-fact to sign any documents and do any things necessary to carry out this agreement if Franchisee fails to sign or do them within seven business days after termination of the franchise agreement.  Franchisee further agrees to indemnify Dental Fix for any expenses, including legal fees, that Dental Fix incurs which would not have been incurred if Franchisee had performed as promised under this agreement.

Dated: _5/15/2017_

Sign here if Franchisee is an individual:

FRANCHISEE

Signature: _____

Print Name: _____

Print Title: _____

Sign here if Franchisee is a company:

FRANCHISEE

Signature: _____

Print Name: _____

Print Title: _____

**ATTACHMENT 5**
SOFTWARE LICENSE AGREEMENT

This Software License Agreement is entered into in connection with that certain Franchise Agreement between Dental Fix Rx, LLC ("Dental Fix" or "us" or "we") and ("you") under which you have been licensed to operate a Dental Fix franchise. Capitalized terms used below, if not defined here, shall have the meanings assigned to them in the Franchise Agreement.

1.   License
     Dental Fix grants you a nontransferable, nonexclusive, limited license to use its proprietary operations and financial software program ("the Software") on the equipment agreed to by the parties during the term of the Franchise Agreement.

2.   Payment
     In return for a monthly license fee of two hundred fifty dollars ($250.00), payable on the first day of each month, Dental Fix grants you a license to use one copy of the Software for your Dental Fix Business. If you have more than one user, we will charge you an additional $250 per month per each additional user (the fees are collectively referred to as "Software License Fees"). We may, in our sole discretion, increase the monthly Software License Fees annually by a maximum of six percent (6%) from the previous year. You understand and agree that a separate software license agreement must be signed for each copy of the Software you are required to license from Dental Fix, and a separate copy of the Software must be licensed for each of your Dental Fix Mobile Service Center vans, or if you are not required to operate a Mobile Service Center van, then you must license one copy of the Software for your Dental Fix Business.

3.   Proprietary Information
     The original and all copies of the Software and related materials, whether copyrighted or patented, will be considered confidential and proprietary information of Dental Fix and will be and remain the sole property of Dental Fix. You agree to maintain the confidential and proprietary information in strict compliance. You agree to take all reasonable steps to safeguard the confidential and proprietary information from unauthorized disclosure, theft, and third party access.

     The Software may not be sold, leased, assigned, sublicensed, or otherwise transferred, in whole or in part, unless otherwise permitted in writing by us. You will not copy, modify, disassemble, decompile, reverse engineer or otherwise misuse the Software.

4.   Software "As Is"
     You understand that the Software provided under this Software License Agreement is provided on an "as is" basis. You further understand and acknowledge that WE MAKE NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WITH RESPECT TO THIS SOFTWARE, INCLUDING ITS QUALITY, PERFORMANCE, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT WILL WE BE LIABLE FOR DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OF OR INABILITY TO USE THE SOFTWARE.

5.   Termination
     You agree that if either party terminates or fails to renew the Franchise Agreement or it expires, this Software License Agreement will terminate immediately.

Upon termination of this license, use of the licensed Software must be discontinued, and the license and rights granted under this Software License Agreement will terminate and you will have no further rights or access to the Software. You must return or destroy, in our sole discretion, all copies of Software or related documentation.

6.      Changes
        You agree to make all changes and upgrades (including, replacing Software with new software) required by us immediately upon our notice.

7.      Damage Limitation
        **IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR THE PAYMENT OF ANY INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES.**

8.      Severability
        The invalidity, in whole or in part, of any provision in this Software License Agreement will not affect the validity of any of its other provisions.

9.      Assignment
        We may assign this Software License Agreement, provided that the assignee agrees to be bound by all of our obligations here. You may not assign or subcontract part or all of your responsibilities under this Software License Agreement, or any interest in this agreement, without our explicit written consent.

10.     No Waiver of Future Violations
        The failure of either party to insist on strict performance of any of the provisions of this Software License Agreement or to exercise any right it grants will not be construed as a relinquishment or future waiver, rather, the provision or right will continue in full force. No waiver of any provision or right will be valid unless it is in writing and signed by the party giving it.

11.     Taxes
        You will be responsible for the payment of all taxes in connection with this Software License Agreement, except for any tax based on our net income.

12.     Dispute Resolution; Jury Waiver and Other Waivers
        Any disputes arising out of this Software License Agreement shall be governed by the dispute resolution provisions in the Franchise Agreement and **YOU WAIVE THE RIGHT TO TRIAL BY JURY, CONSOLIDATED OR CLASS ACTIONS, AND PUNITIVE DAMAGES.**

13.     Applicable Law
        This Agreement will be governed by the laws of the State applicable to the Franchise Agreement.

14. <u>Notices</u>

The parties to this Agreement should direct any notices to the other party at the address below that party's name on the final page of the Franchise Agreement or at another address if advised in writing that the address has been changed. Notice may be delivered by email or by confirmed facsimile, delivery service or first class mail. Notice by facsimile or email will be considered delivered upon transmission unless the facsimile is not received; by delivery service, upon delivery; and by first class mail, three (3) days after posting.

15. <u>Entire Agreement</u>

This Software License Agreement, together with all appendices and other attachments to it, and any recitations in Franchise Agreement concerning software constitute the entire agreement between the parties relating to the Software and they supersede all prior oral and written agreements. Amendments to this agreement will not be effective unless in writing and signed by the party against whom or which enforcement of the amendment is sought.

IN WITNESS TO THE FOREGOING, the parties have signed this Software License Agreement.

FRANCHISOR
Dental Fix Rx LLC

By: _____

Title: CEO

Date: 20 MAR 2017

FRANCHISEE: Michael Coticchio

By: _____

Title: Owner/Operator

Date: 3/15/2017

## ATTACHMENT 6
### PERSONAL GUARANTY AGREEMENT

In consideration of the execution by Dental Fix Rx, LLC of the Franchise Agreement, and acknowledging that the undersigned will benefit directly or indirectly from the execution of the Franchise Agreement, the undersigned, because of his or her beneficial relationship as principal, principal's spouse, or owner of at least a twenty percent (20%) interest in the Franchisee, hereby agrees to be bound by, and agrees to guaranty the performance of, all of the terms and conditions of the Franchise Agreement and any amendments thereto or renewals thereof, and does hereby sign this Guaranty for the purpose of binding and obligating himself or herself to the terms and conditions of the aforesaid Franchise Agreement and any amendments thereto or renewals thereof.

The guarantor hereunder hereby waives notice of termination or default under the Franchise Agreement.

GUARANTOR:

Name: Michael Coticchio

Address: 2449 Riverside Dr.

Wantagh, N.Y 11793

Date: 3/15/2017

GUARANTOR:

Name: _____

Address: _____

Date: _____

## ATTACHMENT 7

## OWNERSHIP AND MANAGEMENT

<u>Principal Owner and Minority Owners</u>.  You represent and warrant to us that the following person(s) and entities, and only the following person(s) and entities, shall be the Principal Owner and Minority Owners of the franchise:

| NAME | HOME ADDRESS | PERCENTAGE OF INTEREST |
|------|--------------|------------------------|
| Michael Coticchio | 2449 Riverside Dr, Wantagh, NY 11793 | 100% |

<u>Designated Principal</u>.  You represent and warrant to us that the following person, and only the following person, shall be the Designated Principal of the Franchise Business:

| NAME | TITLE | ADDRESS |
|------|-------|---------|
| Michael Coticchio | Owner/Operator | 2449 Riverside Dr, Wantagh, NY 11793 |

<u>Change</u>.  You shall immediately notify us in writing of any change in the information contained in the Addendum and, at our request, prepare and sign a new Addendum containing the correct information.

<u>Effective Date</u>.  This Addendum is effective as of this 15th day of March, 2017.

Michael Coticchio / _____        DENTAL FIX RX, LLC
Franchisee

By: _____

Title: _CEO_____

<u>CUSTOMER GUARANTEE ADDENDUM</u>
<u>TO THE DENTAL FIX FRANCHISE AGREEMENT</u>

This Addendum to the Dental Fix Franchise Agreement with a Start Date of 3|15, 201 7, between Franchisee,   ("You"), and Franchisor, Dental Fix Rx, LLC ("we" or "us") (the "Franchise Agreement"), modifies the Franchise Agreement as follows:

RECITALS

WHEREAS, if your territory has more than 250 Clinics, we desire to offer you the limited right to a refund of the Initial Franchise Fee paid by you to us if you do not service at least forty (40) Practitioners as customers within your first twelve (12) months of operation, on the terms and conditions outlined below.

NOW THEREFORE, the Franchise Agreement is modified as follows:

1. **If your Territory has more than 250 Clinics, Section 6.1 of the Franchise Agreement is hereby modified by adding the following paragraphs to the end of Section 6.1 of the Franchise Agreement:**

We will refund the Initial Franchise Fee to you if, after the first twelve (12) months of operations, your Dental Fix Business does not service forty (40) Practitioners as customers whether or not you are paid for your services. A customer is defined as a Practitioner or Clinic that you perform services for and that you invoice, whether or not you receive payment for that service. In order to be eligible for a full refund of your Initial Franchise Fee you must strictly comply with the following requirements:

i. You must strictly follow our System as provided for in our Operations Manual without deviation from our System;

ii. You must operate your Dental Fix Business on a full-time basis. Full-time basis means that you operate your mobile service center performing services for customers at least forty (40) hours per week, as reflected by your GPS tracking system, and you take no more than ten (10) days off in the first twelve (12) months of operations. Full-time basis does not include working from home; and

iii. You must engage in the minimum amount of "Marketing Activity" in your Territory, which consists of making physical marketing/solicitation visits to Practitioners and/or Clinics and making follow-up phone calls to these Practitioners and/or Clinics that are documented in the RunDFX call log note page and labeled as being made for the purpose of "marketing." The minimum amount of Marketing Activity you must engage in is as follows: (a) two hundred (200) visits or documented follow-up calls per month for the first three (3) months; and (b) one hundred and twenty (120) visits or documented follow-up calls per month for the remaining nine (9) months. Marketing Activity requires you to, among other things, strictly follow our guidelines and system for such visits and calls as outlined in our Operations Manual, training videos, and other training materials. Marketing Activity also requires you to map out your day on map point, visit Practitioners and Clinics that you have mapped out for the day, read notes on the Practitioners and Clinics you are visiting prior to visiting their office, and enter notes in our software system after you have completed a visit with a Practitioner and/or Clinic.

Except as specifically provided herein, the Initial Franchise Fee is fully earned and is non-refundable.

2.      **General Release**   In consideration of agreement to modify the Franchise Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, you, and your insurers, predecessors, successors, assigns, agents, attorneys, shareholders, members, officers, directors, employees, representatives, and affiliated companies, hereby fully release, acquit and forever discharge us, our insurers, predecessors, successors, assigns, agents, attorneys, officers, directors, employees, representatives, and affiliated companies, from any and all manner of actions, claims, demands, suits, damages, or other assertions, whether known or unknown, liquidated or unliquidated, fixed or contingent, direct or indirect, that they ever had, now have, shall or may have against us, our insurers, successors, assigns, agents, shareholders, members, attorneys, officers, directors, employees, representatives and affiliated companies, for, upon or by reason of any matter, act or thing, from the beginning of the world to the date of this Addendum, including, without limitation, any and all claims which were or which could have been asserted arising out of or related to this Addendum, including, without limitation, and to the extent allowed by applicable law, claims arising under federal, state and local laws, rules and ordinances.

3.  **General Provisions.**

3.1.      All capitalized terms not otherwise defined herein shall have the meanings given to them in the Franchise Agreement.

3.2.      Except as specifically amended herein, the Franchise Agreement including all other documents, instruments and agreements executed and/or delivered in connection therewith, shall remain in full force and effect, and are hereby ratified and confirmed. The execution, delivery and effectiveness of this Addendum shall not operate as a waiver of any right, power or remedy of Dental Fix Rx, LLC, nor constitute a waiver of any provision of the Franchise Agreement, or any other documents, instruments or agreements executed and/or delivered under or in connection therewith.

3.3.      This Addendum represents the entire understanding and agreement between the parties with respect to the subject matter hereof, and supersedes all other negotiations, understandings and representations if any made by and between the parties.  No representations, inducements, promises or agreements, oral or otherwise, if any, not embodied herein are of any force and effect.

3.4.      The provisions of this Addendum may be amended, supplemented, waived or changed only by a written document signed by the party as to whom enforcement of any such amendment, supplement, waiver or modification is sought and making specific reference to this Addendum.

3.5.      All of the terms and provisions of this Addendum, whether so expressed or not, are binding upon, inure to the benefit of, and are enforceable by the parties and their respective personal representatives, legal representatives, heirs, successors and permitted assigns.

3.6.      The provisions of the Franchise Agreement pertaining to dispute resolution—including mediation of disputes, governing law, and jurisdiction and venue—are incorporated herein and apply with equal force to the terms and conditions of this Addendum as if fully set forth herein.

3.7.      This Addendum may be executed in two or more counterparts, each of which is deemed an original, but all of which together constitute one and the same instrument.  Confirmation of execution by facsimile, or scanned and emailed, signature page shall be binding upon any party so confirming.

Dental Fix/Franchise Agreement-March 2016

3.8. The parties acknowledge and represent that the recitals appearing at the beginning of this Addendum are true and correct, and are specifically incorporated into this Addendum.

Dated this 15th day of March, 2017.

FRANCHISOR:
DENTAL FIX RX, LLC

Signature: _____

By: David Lopez
Its: CEO

FRANCHISEE:

Michael Cotischio

Signature: _____

By: _____
Its: Owner/Operator

# SBA ADDENDUM TO
# DENTAL FIX RX, LLC
# FRANCHISE AGREEMENT

This SBA ADDENDUM TO DENTAL FIX RX, LLC FRANCHISE AGREEMENT (the "Addendum") is made and entered into on ___3/15___, 20_17_, by and between Dental Fix RX, LLC, located at 4380 Oakes Road, Suite 814, Davie, Florida 33314 ("Franchisor"), and _Michael Cotricchio_, located at _2449 Riverside Dr, Wantagh, N.Y. 11793_ ("Franchisee").

RECITALS: Franchisor and Franchisee entered into a Franchise Agreement on ___3/15___, 20_17_ (the "Franchise Agreement"). Franchisee agreed among other things to operate and maintain a franchise located at _2449 Riverside Dr, Wantagh, N.Y. 11793_ designated by Franchisor as Unit # ▓▓▓ (the "Unit"). Franchisee has obtained from a lender a loan (the "Loan") in which funding is provided with the assistance of the United States Small Business Administration (the "SBA"). The SBA requires the execution of this Addendum as a condition for obtaining SBA-assisted financing.

NOW, THEREFORE, in consideration of the mutual promises below, and for good and valuable considerations in hand paid by each of the parties to the others, the receipt and sufficiency of which the parties acknowledge, the parties agree as follows:

1.     The Franchise Agreement is in full force and effect, and Franchisor has sent no official notice of default to Franchisee under the Franchise Agreement that remains uncured as of the date hereof.

2.     Under Section 7.5.2 of the Franchise Agreement, Franchisor or designated supplier will provide payroll service for up to one employee for which Franchisee must pay an ongoing fee. Notwithstanding anything to the contrary in Section 7.5.2 of the Franchise Agreement, the Franchisee has the right to select its own vendor to use in place of any vendor selected by the Franchisor, so long as the Franchisor determines whether the Franchisee's vendor meets its standards. The Franchisor's approval in this matter will not be unreasonably withheld.

3.     Section 9.3 of the Franchise Agreement provides that the Franchisor (or any third party assignee of the Franchisor) may elect pursuant to its right of first refusal to exercise said option when the Franchisee decides to sell partial interest(s) in the business. This section is hereby amended to reflect that the Franchisor (or any third party assignee of the Franchisor) will not exercise the option for any partial sale of the Franchisee's business. The Franchisor (third party assignee of the Franchisor) may not become a partial owner of any SBA financed franchises.

4.     Notwithstanding the language in Section 9.8, franchisor will agree to subordinate its interest to any lien required by the Lender/SBA under the SBA Loan Authorization.

5.     If the Franchise Agreement is terminated and the Franchised Site or its contents are to be sold under Section 10.4(g)(i) of the Franchise Agreement and the parties are unable to agree as to a purchase price and terms, the fair market value of such premises and property shall be

1

determined by three Appraisers chosen in the following manner. Franchisee shall select one and Franchisor shall select one, and the two appraisers so chosen shall select a third appraiser. The decision of the majority of the appraisers so chosen shall be conclusive. The cost of the third appraiser shall be shared equally by the parties.

6.     This Addendum automatically terminates on the earliest to occur of the following: (i) a termination occurs under the Franchise Agreement; (ii) the Loan is paid; or (iii) the SBA no longer has any interest in the Loan.

IN WITNESS WHEREOF, the parties hereto have duly signed and executed this Addendum to Dental Fix RX, LLC Franchise Agreement as of the day and year first above written.

**FRANCHISOR:**
DENTAL FIX RX, LLC

By: _____
      David Lopez, CEO

**FRANCHISEE:** Michael Coticchio

By: _____

Name: Michael Coticchio

Title: Owner / Operator

2

# Exhibit C

## ASSIGNMENT AND ASSUMPTION AGREEMENT
## DENTAL FIX RX, LLC

**THIS ASSIGNMENT AND ASSUMPTION AGREEMENT** ("Agreement") is made and entered into this ___*10*___ day of *Feb* , 2018, by and between Dental Fix Rx, LLC, a Florida limited liability company, ("Franchisor"), **Michael Coticchio** ("Assignor") and Smile 17, LLC a New York limited liability company ("Assignee").

**WHEREAS,** Franchisor and Assignor entered into that certain Franchise Agreement dated **March 15, 2017** (the "Franchise Agreement"), pursuant to which Assignor was granted the right to open and operate a Dental Fix Franchised Business in the territory as specifically set forth in Attachment 1 to the Franchise Agreement (the "Franchised Business").

**WHEREAS,** Assignor desires to assign to the Assignee, and Assignee desire to assume from Assignor, the Franchise Agreement, the Franchised Business and all rights and obligations of Assignor, as the Franchisee, set forth in the Franchise Agreement; and

**WHEREAS,** Franchisor is willing to consent to the assignment of the Franchise Agreement and the Franchised Business to Assignee, subject to the terms and conditions of this Agreement, including without limitation, Assignor's agreement to personally guarantee the performance by Assignee of its obligations under the Franchise Agreement and to continue to be bound by all of the provisions of the Franchise Agreement.

**NOW, THEREFORE,** the parties hereto, intending to be legally bound, agree as follows:

1.      **Assignment**. Assignor hereby assigns and transfers over to Assignee all of his/her franchise rights, title and interest in and to the Franchise Agreement, effective as of the date hereof.

2.      **Assumption**. Assignee hereby assumes all of Assignor's obligations, agreements, commitments, duties and liabilities under the Franchise Agreement, and agrees to be bound by and observe and faithfully perform all of the obligations, agreements, commitments and duties of the Franchisee thereunder with the same force and effect as if the Franchise Agreement were originally written with Assignees as Franchisee.

3.      Assignor and Assignee warrant, represent and agree that Assignee is newly and duly organized, and its activities are confined to acting exclusively as a Dental Fix franchisee.

4.      Assignor and Assignee warrant, represent and agree that Assignor is the sole owner of all of the membership interest of Assignee and is its principal officer.

5.      **Obligations of Assignor**. Assignor agrees that he/she shall continue to be bound by the terms and conditions of the Franchise Agreement, and that nothing contained herein shall be deemed to relieve him of any of his obligations under the Franchise Agreement. Assignor further agrees to, and by this instrument does hereby, guarantee the performance by Assignee of all of its obligations, commitments, duties and liabilities under the Franchise Agreement. Without limiting the foregoing, Assignor irrevocably and unconditionally guarantees to Franchisor (i) that the Assignee will pay all amounts to be paid and otherwise comply with all provisions of the Franchise Agreement or any other agreement with Franchisor or its affiliates concerning the operation of the Franchised Business, and (ii) that if Assignee defaults in making any such payments or complying with any such provisions, Assignor shall pay forthwith upon demand all amounts due and owing Franchisor and all damages that may arise as a result of any such non-compliance. If Assignor shall be more than one person, the

2

obligations of Assignor hereunder shall be joint and several.

6.   **Obligations of Assignee's Principals**: All shareholders, partners, and/or members of Assignee who shall have an ownership interest of ten percent (10%) or more in Assignee ("Assignee's Principals"), agree that he/she shall be bound by the terms and conditions of the Franchise Agreement and by this instrument does hereby, guarantee the performance by Assignee of all of its obligations, commitments, duties and liabilities under the Franchise Agreement. Without limiting the foregoing, Assignee's Principals irrevocably and unconditionally guarantee to Franchisor (i) that the Assignee will pay all amounts to be paid and otherwise comply with all provisions of the Franchise Agreement or any other agreement with Franchisor or its affiliates concerning the operation of the Franchised Business, and (ii) that if Assignee defaults in making any such payments or complying with any such provisions, Assignee's Principals shall pay forthwith upon demand all amounts due and owing Franchisor and all damages that may arise as a result of any such non-compliance. If Assignee's Principals shall be more than one person, the obligations of Assignee's Principals hereunder shall be joint and several.

7.   **Release**. Assignor, Assignee's Principals, Assignee, its officers and directors, and its owners, and their respective agents, heirs, administrators, successors and assigns (the "Franchisee Group"), hereby forever release and discharge, and forever hold harmless Franchisor, its current and former affiliates and predecessors, and their respective shareholders, partners, members, directors, officers, agents, representatives, heirs, administrators, successors and assigns (the "Franchisor Group") from any and all claims, demands, debts, liabilities, actions or causes of action, costs, agreements, promises and expenses of every kind and nature whatsoever, at law or in equity, whether known or unknown, foreseen and unforeseen, liquidated or unliquidated, which Franchisee Group had, have or may have against any member of the Franchisor Group, including, without limitation, any claims or causes of action arising from, in connection with or in any way related or pertaining, directly or indirectly, to the Franchise Agreement, the relationship created by the Franchise Agreement, or the development, ownership or operation of the Franchised Business. Franchisee Group further indemnifies and holds the Franchisor Group harmless against, and agree to reimburse them for any loss, liability, expense or damages (actual or consequential) including, without limitation, reasonable attorneys', accountants' and expert witness fees, costs of investigation and proof of facts, court costs and other litigation and travel and living expenses, which any member of the Franchisor Group may suffer with respect to any claims or causes of action which any customer, creditor or other third party now has, ever had, or hereafter would or could have, as a result of, arising from or relating to the Franchise Agreement or the Franchised Business. Franchisee Group represents and warrants that they have not made an assignment or any other transfer of any interest in the claims, causes of action, suits, debts, agreements or promises described herein.

**IN WITNESS WHEREOF**, the undersigned have affixed their signatures hereto as of the day and date first above written.

[signature page follows]

3

**DENTAL FIX RX, LLC**

By: _____
Name: David Lopez
Title: C E O
Date: _____

**ASSIGNOR:**

_____
Michael Coticchio, individually

Date: _____2/12/2018_____

**ASSIGNEE:**

_____
Smile 17, LLC

By: _____
Name: Michael Coticchio
Title: O wn e,r
Date: _____2/12/2018_____

**ASSIGNEE'S PRINCIPALS**

_____
Michael Coticchio, individually

Ownership Interest: _____100%_____

Date _____2/12/2018_____

4

# Exhibit D



**Service & Equipment**

July 30, 2020

<u>**Via E-Mail (Michael.coticchio@dentalfixrx.com)**</u>

Mr. Michael Coticchio
2449 Riverside Dr.
Wantagh, NY 11793

    **Re:**    **Notice of Default of Franchise Agreement between
            Smile 17, LLC (Michael Coticchio) and Dental Fix Rx, LLC**

Dear Mr. Coticchio:

    This letter shall constitute notice of a default under the Franchise Agreement dated **March 15, 2017**, between you and Dental Fix (the "Franchise Agreement") and assigned to **Smile 17, LLC** for the operation of a Dental Fix franchise business in the territory ("Territory") defined by zip codes in Attachment 1 to the Franchise Agreement. Michael Coticchio and **Smile 17** are collectively referred to as "you."

    Specifically, you have failed to timely pay your corporate support fees, marketing contributions, accounting fee, software fee, and parts and equipment, in material breach of Sections 6.2.1, 6.4, 6.6, and 7.7 of the Franchise Agreement. As of the date of this letter, you are currently indebted to Dental Fix for the total amount of **Six Hundred Eighteen Dollars and Zero Cents ($618.00)**. Please see the enclosed spreadsheet detailing the amounts past due.

    Pursuant to Section 10.2.1.10 of your Franchise Agreement, Dental Fix has the right to terminate the Franchise Agreement if "[y]ou fail to pay us (or our Related Parties or approved suppliers) any amounts due and do not correct the failure within five (5) days after we deliver written notice of that failure to you . . . ." Accordingly, Dental Fix hereby demands that you pay to Dental Fix the full past due amount of **$618.00** within five (5) days of the date of this letter.

    In the event Dental Fix does not receive payment from you for the full amount due and owing within five (5) days of the date of this letter, or if you fail to pay weekly fees again, Dental Fix may exercise any of its lawful rights, including the termination of the Franchise Agreement without providing you any further opportunity to cure. *See* Section 10.2.1.10. In addition, pursuant to Section 6.8 of the Franchise Agreement, all amounts past due are accruing

13621 NW 12th St, Suite 120
Sunrise, FL 33323
(800) 586-0341

www.DentalFixRx.com

Tel: (800) 586-0340
Fax:

interest at the rate of eighteen percent (18%) per annum, or the highest rate allowed by applicable law, whichever is less, from the date such amounts became due.

Nothing in this letter shall constitute a waiver by Dental Fix of any rights under the Franchise Agreement or applicable law.  All of Dental Fix's rights under the Franchise Agreement and applicable law are expressly reserved, including without limitation, the right to monetary damages, as well as any other remedies available under the law or at equity.

Should you have any questions about your obligations as set forth in this letter, please do not hesitate to call.

Respectfully,

ERIC MASSON
Legal and Compliance Leader

Encl.

13621 NW 12ᵗʰ St, Suite 120
Sunrise, FL  33323
(800) 586-0341

www.DentalFixRx.com

Tel: (800) 586-0340
Fax:

**Michael Coticchio**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Invoice | 07/15/2020 | 138687 | Corporate Fee for w/e 07/03/20 - returned NSF Due on receipt | 07/15/2020 | Ops Support | 15 | | 206.00 |
| Invoice | 07/22/2020 | 138776 | Corporate Fee for w/e 07/10/20 - returned NSF Due on receipt | 07/22/2020 | Ops Support | 8 | | 206.00 |
| Invoice | 07/29/2020 | 138868 | Corporate Fee for w/e 07/17/20 - returned NSF Due on receipt | 07/29/2020 | Ops Support | 1 | | 206.00 |
| | | | | | | | | 618.00 |

13621 NW 12th St, Suite 120
Sunrise, FL  33323
(800) 586-0341

www.DentalFixRx.com

Tel: (800) 586-0340
Fax:

# Exhibit E



**Service & Equipment**

August 11, 2020

<u>**Via Federal Express and electronic mail to Michael.coticchio@dentalfixrx.com**</u>

Smile 17, LLC
Attn: Mr. Michael Coticchio
2449 Riverside Dr.
Wantagh, NY 11793

Re:    **Notice of Termination of Franchise Agreements**

Dear Mr. Coticchio:

I am counsel for Dental Fix Rx, LLC ("Dental Fix"). This letter shall constitute notice of termination of the Franchise Agreements dated March 15, 2017, between Smile 17, LLC and Dental Fix (the "Second Franchise Agreement"), due to your failure to cure your default of non-payment of July 30, 2020. Additionally, pursuant to section 10.3 of the Franchise Agreement, Dental Fix Rx, LLC is also terminating the Franchise Agreement between You and Dental Fix Rx, LLC dated December 15, 2016 (the "First Franchise Agreement"). The First Franchise Agreement and Second Franchise Agreement are collectively referred to as the "Franchise Agreements." The termination of the Franchise Agreements is effective immediately upon delivery of this letter to you. *See* Sections 6.4, 6.5, 6.11, 10.2.1.10, 10.2.12, 10.3 and 11.3.[1]

Specifically, on July 30, 2020, Dental Fix issued you a notice of default of your territory for failing to timely pay your weekly Corporate Support Fees. Dental Fix provided you with notice to cure the default within 5 days. As of the date of this notice, you have failed to cure your default, and in fact received a second default on August 7, 2020. Accordingly, pursuant to Section 10.2.1.10 of the Franchise Agreement, Dental Fix has the right, and is hereby exercising such right, to terminate the Franchise Agreements without providing you with further opportunity to cure.

Please be advised that you are obligated to comply with the following post-termination obligations set forth in Section 10.4 of the Franchise Agreement: (i) returning the Operations Manual, marketing materials, proprietary forms, software, videotapes and any other property belonging to Dental Fix or its Related Parties (as defined in the Franchise Agreements) containing proprietary information; (ii) immediately and permanently stop using the Marks or any confusingly similar marks, the System, and any advertising, signs, stationery, forms, and other items that bear the Trade Names, the Marks or any other identifying marks or colors that

---

[1] Those provisions of the Franchise Agreements, which by their nature survive termination, shall survive termination, including, but not limited to, the confidentiality, indemnification, non-competition, non-solicitation, post-termination and dispute resolution provisions specifically set forth in Sections 8.4, 8.5, 8.6, 8.7, 10.4 and Article 11 of the Franchise Agreements.

might give others the impression that you are operating a Dental Fix business; (iii) honoring all post-term covenants set forth in the Franchise Agreements; (iv) promptly signing any documents and taking any steps that in Dental Fix's judgment are necessary to delete your listings from classified telephone directories, disconnect or, at Dental Fix's option, assign to Dental Fix any telephone numbers, email addresses, URLs and listings as set forth in Attachment 4 to the Franchise Agreements, that have been used in connection with the Dental Fix business, and cease all other references that suggest you are associated with Dental Fix; and (v) maintaining all records Dental Fix requires you to maintain under the Franchise Agreement for not less than 6 years after final payment of any money you owe to Dental Fix.

Furthermore, Section 8.6 of the Franchise Agreement contains a covenant not to compete for a period of two (2) years immediately following the termination of the Franchise Agreements. This means that commencing on the date of this notice, and for a period of two (2) years thereafter, neither you, nor any Related Party (as defined in the Franchise Agreement), nor your spouse or children, may either directly or indirectly: (i) solicit or otherwise attempt to induce or influence in any manner any of Dental Fix's employees, officers, directors, agents, consultants, representatives, contractors, suppliers, distributors, franchisees or other business contacts to terminate or modify their business relationship with Dental Fix or to compete against Dental Fix or its franchisees; (ii) as owner, officer, director, employee, agent, lender, lessor, broker, consultant, franchisor, franchisee, or in any other similar capacity whatsoever connected in any manner with the ownership, management, operation or control, or conduct of a Competitive Business (as defined in the Franchise Agreements) that is located or markets within your former Territory or within 40 miles of any Practitioner in your former Territory or the Territory of any other party in the Dental Fix Franchise Network; and (iii) in any manner interfere with, disturb, disrupt, impair, diminish, or otherwise jeopardize the Dental Fix System, its business, or the business of its franchisees.

In addition, pursuant to Section 8.7 of the Franchise Agreements, for a period of two (2) years immediately following the date of this notice, you may not disrupt, damage, impair or interfere with Dental Fix's business or that of any of its franchisees by directly or indirectly soliciting Dental Fix's or its franchisees' employees to work for you or any other individual or company then in competition with Dental Fix, its franchisees or with the Dental Fix Franchise Network.

Nothing in this letter shall constitute a waiver by Dental Fix of any rights under the Franchise Agreements and applicable law. All of Dental Fix's rights under the Franchise Agreements and applicable law are expressly reserved, including without limitation, the right to monetary damages, as well as any other remedy available under the law.

Very truly yours,

ERIC MASSON

13621 NW 12th St, Suite 120
Sunrise, FL  33323

www.DentalFixRx.com

Tel: (800) 586-0340
Fax: (800) 586-0341

Filing # 111936368 E-Filed 08/17/2020 04:54:34 PM

| IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA | | |
|---|---|---|
| CIVIL DIVISION | CIVIL ACTION SUMMONS<br><br>20 Day Individual Service | CASE NUMBER<br><br>CACE-20-013096 |
| PLAINTIFF(S)<br><br>DENTAL FIX RX, LLC, a Florida limited liability company | VS. DEFENDANT(S)<br><br>SMILE 17, LLC, a New York limited liability company, MICHAEL COTICCHIO, an individual, and HOLDEN COHEN, an individual, | CLOCK IN |
| To Defendant(s):<br>MICHAEL COTICCHIO | Address:<br>2449 RIVERSIDE DR.<br>WANTAGH, NEW YORK, 11793 | |

A lawsuit has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this court.  A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court.  There are other legal requirements. You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, located at:

BROWARD COUNTY COURTHOUSE
201 S.E. 6th Street
Ft. Lauderdale, FL 33301

| Plaintiff/Plaintiff's Attorney:<br>ROBERT M. EINHORN, ESQ.<br>Florida Bar No. 858188 | Address: ZARCO EINHORN SALKOWSKI & BRITO, P.A.<br>2 S. BISCAYNE BLVD., 34TH FLOOR<br>MIAMI, FL 33131<br>Tel: 305.374.5418<br>Fax: 305.374.5428 |
|---|---|

TO EACH SHERIFF OF THE STATE OF FLORIDA: You are commanded to serve this Summons and a copy of the Complaint of this lawsuit on the above-named defendant.

| CLERK OF COURT | | COURT SEAL | DATE |
|---|---|---|---|
| | BY: _____ | | AUG 19 2020 |

Americans with Disabilities Act of 1990
If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Diana Sobel, Room 20140, 201 SE Sixth Street, Ft. Lauderdale, Florida 33301, Tel. 954-831-7721 at least 7 days; if you are hearing or voice impaired, call 711.

**BRENDA D. FORMAN**

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 08/17/2020 04:54:32 PM.****

Filing # 111936368 E-Filed 08/17/2020 04:54:34 PM

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

| CIVIL DIVISION | CIVIL ACTION SUMMONS<br><br>20 Day Individual Service | CASE NUMBER<br><br>CACE-20-013096 |
|---|---|---|

| PLAINTIFF(S)<br><br>DENTAL FIX RX, LLC, a Florida limited liability company | VS. DEFENDANT(S)<br><br>SMILE 17, LLC, a New York limited liability company, MICHAEL COTICCHIO, an individual, and HOLDEN COHEN, an individual, | CLOCK IN |
|---|---|---|

| To Defendant(s):<br><br>HOLDEN COHEN | Address:<br>2449 RIVERSIDE DR.<br>WANTAGH, NEW YORK, 11793 |
|---|---|

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this court. A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, located at:

BROWARD COUNTY COURTHOUSE
201 S.E. 6th Street
Ft. Lauderdale, FL 33301

| Plaintiff/Plaintiff's Attorney:<br>ROBERT M. EINHORN, ESQ.<br><br>Florida Bar No. 858188 | Address: ZARCO EINHORN SALKOWSKI & BRITO, P.A.<br>2 S. BISCAYNE BLVD., 34TH FLOOR<br>MIAMI, FL 33131<br>Tel: 305.374.5418<br>Fax: 305.374.5428 |
|---|---|

TO EACH SHERIFF OF THE STATE OF FLORIDA: You are commanded to serve this Summons and a copy of the Complaint of this lawsuit on the above-named defendant.

| CLERK OF COURT<br><br>BY: _____ | COURT<br>SEAL | DATE<br><br>AUG 19 2020 |
|---|---|---|

Americans with Disabilities Act of 1990
If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Diana Sobel, Room 20140, 201 SE Sixth Street, Ft. Lauderdale, Florida 33301, Te. 954-831-7721 at least 7 days; if you are hearing or voice impaired, call 711.

BRENDA D. FORMAN

Filing # 112071846 E-Filed 08/19/2020 03:37:10 PM

## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

| CIVIL DIVISION | CIVIL ACTION SUMMONS<br><br>20 Day Corporate Service | CASE NUMBER<br><br>CACE-20-013096 |
|---|---|---|
| PLAINTIFF(S)<br><br>DENTAL FIX RX, LLC, a<br>Florida limited liability<br>company | VS. DEFENDANT(S)<br><br>SMILE 17, LLC, a New York limited<br>liability company, MICHAEL<br>COTICCHIO, an individual, and<br>HOLDEN COHEN, an individual, | CLOCK IN |

| To Defendant(s):<br>SMILE 17, LLC, by serving its Registered Agent<br>MICHAEL COTICCHIO | Address:<br>2449 RIVERSIDE DR.<br>WANTAGH, NEW YORK, 11793 |
|---|---|

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this court. A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, located at:

**BROWARD COUNTY COURTHOUSE**
201 S.E. 6th Street
Ft. Lauderdale, FL 33301

| Plaintiff/Plaintiff's Attorney:<br>ROBERT M. EINHORN, ESQ.<br>Florida Bar No. 858188 | Address: ZARCO EINHORN SALKOWSKI & BRITO, P.A.<br>2 S. BISCAYNE BLVD., 34TH FLOOR<br>MIAMI, FL 33131<br>Tel: 305.374.5418<br>Fax: 305.374.5428 |
|---|---|

TO EACH SHERIFF OF THE STATE OF FLORIDA: You are commanded to serve this Summons and a copy of the Complaint of this lawsuit on the above-named defendant.

| CLERK OF COURT | | COURT<br>SEAL | DATE |
|---|---|---|---|
| | BY: | | AUG 19 2020 |

Americans with Disabilities Act of 1990

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Diana Sobel, Room 20140, 201 SE Sixth Street, Ft. Lauderdale, Florida 33301, Tel 954-831-7721 at least 7 days; if you are hearing or voice impaired, call 711.

**BRENDA D. FORMAN**

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 08/19/2020 03:37:08 PM.****

Filing # 112071846 E-Filed 08/19/2020 03:37:10 PM

| | | |
|---|---|---|
| IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA | | |
| CIVIL DIVISION | CIVIL ACTION SUMMONS<br><br>20 Day Corporate Service | CASE NUMBER<br><br>CACE-20-013096 |
| PLAINTIFF(S)<br><br>DENTAL FIX RX, LLC, a Florida limited liability company | VS. DEFENDANT(S)<br><br>SMILE 17, LLC, a New York limited liability company, MICHAEL COTICCHIO, an individual, and HOLDEN COHEN, an individual, | CLOCK IN |
| To Defendant(s):<br><br>SMILE 17, LLC, by serving its Registered Agent MICHAEL COTICCHIO | | Address:<br>2449 RIVERSIDE DR.<br>WANTAGH, NEW YORK, 11793 |

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this court. A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, located at:

BROWARD COUNTY COURTHOUSE
201 S.E. 6th Street
Ft. Lauderdale, FL 33301

| Plaintiff/Plaintiff's Attorney:<br>ROBERT M. EINHORN, ESQ.<br>Florida Bar No. 858188 | Address:  ZARCO EINHORN SALKOWSKI & BRITO, P.A.<br>2 S. BISCAYNE BLVD., 34TH FLOOR<br>MIAMI, FL 33131<br>Tel: 305.374.5418<br>Fax: 305.374.5428 |
|---|---|

TO EACH SHERIFF OF THE STATE OF FLORIDA: You are commanded to serve this Summons and a copy of the Complaint of this lawsuit on the above-named defendant.

| CLERK OF COURT | | COURT SEAL | DATE |
|---|---|---|---|
| | BY: _____ | | AUG 19 2020 |

America's with Disabilities Act of 1990

If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Diana Sobel, Room 20140, 201 SE Sixth Street, Ft. Lauderdale, Florida 33301, Te.954.831.7721 at least 7 days; if you are hearing or voice impaired, call 711.

BRENDA D. FORMAN

Filing # 111936368 E-Filed 08/17/2020 04:54:34 PM

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

| CIVIL DIVISION | CIVIL ACTION SUMMONS<br><br>20 Day Corporate Service | CASE NUMBER<br><br>CACE-20-013096 |
|---|---|---|
| PLAINTIFF(S)<br><br>DENTAL FIX RX, LLC, a Florida limited liability company | VS. DEFENDANT(S)<br><br>SMILE 17, LLC, a New York limited liability company, MICHAEL COTICCHIO, an individual, and HOLDEN COHEN, an individual,<br><br>Defts name is not listed correctly | CLOCK IN |

| To Defendant(s):<br><br>MICHAEL COTICCHIO, Registered Agent<br>SMILE 17, LLC | Address:<br>2449 RIVERSIDE DR.<br>WANTAGH, NEW YORK, 11793 |
|---|---|

A lawsuit has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the clerk of this court.  A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court.  There are other legal requirements. You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, located at:

BROWARD COUNTY COURTHOUSE
201 S.E. 6th Street
Ft. Lauderdale, FL 33301

| Plaintiff/Plaintiff's Attorney:<br>ROBERT M. EINHORN, ESQ.<br>Florida Bar No. 858188 | Address: ZARCO EINHORN SALKOWSKI & BRITO, P.A.<br>2 S. BISCAYNE BLVD., 34TH FLOOR<br>MIAMI, FL 33131<br>Tel: 305.374.5418<br>Fax: 305.374.5428 |
|---|---|

TO EACH SHERIFF OF THE STATE OF FLORIDA: You are commanded to serve this Summons and a copy of the Complaint of this lawsuit on the above-named defendant.

| CLERK OF COURT<br><br>BY: _____ | COURT SEAL | DATE |
|---|---|---|

Americans with Disabilities Act of 1990
If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.  Please contact Diana Sobel, Room 20140, 201 SE Sixth Street, Ft. Lauderdale, Florida 33301, Te.954-831-7721 at least 7 days; if you are hearing or voice impaired, call 711.

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 08/17/2020 04:54:32 PM.****

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE-20-013096

CIVIL DIVISION: (04)

DENTAL FIX RX, LLC, a
Florida limited liability company,

      Plaintiff,

v.

SMILE 17, LLC, a New York limited
Liability company, MICHAEL COTICCHIO,
an individual, and HOLDEN COHEN, an
individual,

      Defendants.

_____/

## NOTICE OF APPEARANCE AND DESIGNATION
## OF EMAIL ADDRESS FOR JOSHUA L. ZIPPER, ESQ.

JOSHUA L. ZIPPER of the law firm of SHAPIRO, BLASI, WASSERMAN &
HERMANN, P.A., hereby serves notice of his appearance as **additional counsel** for Defendants,
SMILE 17, LLC, a New York limited liability company, and MICHAEL COTICCHIO
("Defendants"), and requests the Clerk of Court enter same and further requests that copies of all
future pleadings, notices, correspondence and other papers and filings in the cause be directed to
the undersigned attorney.

In accordance with Florida Rule of Judicial Administration 2.516(b)(1)(A), JOSHUA L.
ZIPPER, as counsel for Defendants, hereby designates the following e-mail addresses for
service:

Primary E-Mail Address:          Joshua L. Zipper, Esq. – jzipper@sbwh.law

Secondary E-Mail Address:       Kristy Garcia - kgarcia@sbwh.law

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the e-portal and in compliance with Fla. R. Jud. Admin. 2.516, on this 8th day of September, 2020, to: Robert M. Einhorn, Esq., Michael D. Braunstein, ZARCO EINHORN SALKOWSKI & BRITO, P.A., 2 Biscayne Boulevard, Suite 340, Miami, FL 33131; reinhorn@zarcolaw.com; eservice@zracolaw.com; mbraunstein@zarcolaw.com; apiriou@zarcolaw.com.

SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.
*Attorneys for Defendants, Smile 17, LLC*
*and Michael Coticchio*
7777 Glades Road, Suite 400
Boca Raton, FL 33434
Telephone:     (561) 477-7800
Facsimile:      (561) 477-7722

By: */s/ Robert E. Sacks*
    *ROBERT E. SACKS, ESQ.*
    Florida Bar No. 388970
    Primary E-mail: rsacks@sbwh.law
    Secondary E-mail: sfiero@sbwh.law
    ROBIN I. FRANK, ESQ.
    Florida Bar No: 649619
    Primary E-mail: rfrank@sbwh.law
    Second E-mail: rmorales@sbwh.law
    JOSHUA L. ZIPPER, ESQ.
    Florida Bar No: 0045247
    Primary E-Mail: jzipper@sbwh.law
    Secondary E-Mail: kgarcia@sbwh.law
    MATTHEW A. MARGOLIS, ESQ.
    Florida Bar No: 1002501
    Primary E-mail: mmargolis@sbwh.law
    Secondary E-Mail: kgarcia@sbwh.law

Case 0:20-cv-62098-RAR Document 1-1 Entered on FLSD Docket 10/14/2020 Page 152 of 169

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE-20-013096

CIVIL DIVISION: (04)

DENTAL FIX RX, LLC, a
Florida limited liability company,

      Plaintiff,

v.

SMILE 17, LLC, a New York limited
Liability company, MICHAEL COTICCHIO,
an individual, and HOLDEN COHEN, an
individual,

      Defendants.

_____/

## NOTICE OF APPEARANCE AND DESIGNATION
## OF EMAIL ADDRESS FOR MATTHEW A. MARGOLIS, ESQ.

MATTHEW A. MARGOLIS of the law firm of SHAPIRO, BLASI, WASSERMAN &

HERMANN, P.A., hereby serves notice of his appearance as **additional counsel** for Defendants,

SMILE 17, LLC, a New York limited liability company, and MICHAEL COTICCHIO

("Defendants"), and requests the Clerk of Court enter same and further requests that copies of all

future pleadings, notices, correspondence and other papers and filings in the cause be directed to

the undersigned attorney.

In accordance with Florida Rule of Judicial Administration 2.516(b)(1)(A), MATTHEW

A. MARGOLIS, as counsel for Defendants, hereby designates the following e-mail addresses for

service:

Primary E-Mail Address:        Matthew A. Margolis, Esq. – mmargolis@sbwh.law

Secondary E-Mail Address:      Kristy Garcia – kgarcia@sbwh.law

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the

e-portal and in compliance with Fla. R. Jud. Admin. 2.516, on this 8th day of September, 2020, to:

Robert M. Einhorn, Esq., Michael D. Braunstein, ZARCO EINHORN SALKOWSKI & BRITO,

P.A., 2 Biscayne Boulevard, Suite 340, Miami, FL 33131; reinhorn@zarcolaw.com;

eservice@zracolaw.com; mbraunstein@zarcolaw.com; apiriou@zarcolaw.com.

SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.
*Attorneys for Defendants, Smile 17, LLC*
*and Michael Coticchio*
7777 Glades Road, Suite 400
Boca Raton, FL 33434
Telephone:      (561) 477-7800
Facsimile:      (561) 477-7722

By: */s/ Robert E. Sacks*
    *ROBERT E. SACKS, ESQ.*
    Florida Bar No. 388970
    Primary E-mail: rsacks@sbwh.law
    Secondary E-mail: sfiero@sbwh.law
    ROBIN I. FRANK, ESQ.
    Florida Bar No: 649619
    Primary E-mail: rfrank@sbwh.law
    Second E-mail: rmorales@sbwh.law
    JOSHUA L. ZIPPER, ESQ.
    Florida Bar No: 0045247
    Primary E-Mail: jzipper@sbwh.law
    Secondary E-Mail: kgarcia@sbwh.law
    MATTHEW A. MARGOLIS, ESQ.
    Florida Bar No: 1002501
    Primary E-mail: mmargolis@sbwh.law
    Secondary E-Mail: kgarcia@sbwh.law

Case 0:20-cv-62098-RAR Document 1-1 Entered on FLSD Docket 10/14/2020 Page 154 of 169

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE-20-013096

CIVIL DIVISION: (04)

DENTAL FIX RX, LLC, a
Florida limited liability company,

      Plaintiff,

v.

SMILE 17, LLC, a New York limited
Liability company, MICHAEL COTICCHIO,
an individual, and HOLDEN COHEN, an
individual,

      Defendants.

_____/

## NOTICE OF APPEARANCE AND DESIGNATION
## OF EMAIL ADDRESS FOR ROBERT E. SACKS, ESQ.

ROBERT E. SACKS of the law firm of SHAPIRO, BLASI, WASSERMAN &
HERMANN, P.A., hereby serves notice of his appearance as counsel for Defendants, SMILE 17,
LLC, a New York limited liability company, and MICHAEL COTICCHIO, an individual
("Defendants"), and requests the Clerk of Court enter same and further requests that copies of all
future pleadings, notices, correspondence and other papers and filings in the cause be directed to
the undersigned attorney.

In accordance with Florida Rule of Judicial Administration 2.516(b)(1)(A), ROBERT E.
SACKS, as counsel for Defendants, hereby designates the following e-mail addresses for service:

Primary E-Mail Address:        Robert E. Sacks, Esq. – rsacks@sbwh.law

Secondary E-Mail Address:     Stephanie Fiero – sfiero@sbwh.law

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the e-portal and in compliance with Fla. R. Jud. Admin. 2.516, on this 8th day of September, 2020, to: Robert M. Einhorn, Esq., Michael D. Braunstein, ZARCO EINHORN SALKOWSKI & BRITO, P.A., 2 Biscayne Boulevard, Suite 340, Miami, FL 33131; reinhorn@zarcolaw.com; eservice@zracolaw.com; mbraunstein@zarcolaw.com; apiriou@zarcolaw.com.

SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.
*Attorneys for Defendants, Smile 17, LLC*
*and Michael Coticchio*
7777 Glades Road, Suite 400
Boca Raton, FL 33434
Telephone:     (561) 477-7800
Facsimile:      (561) 477-7722

By: */s/ Robert E. Sacks*
      *ROBERT E. SACKS, ESQ.*
      Florida Bar No. 388970
      Primary E-mail: rsacks@sbwh.law
      Secondary E-mail: sfiero@sbwh.law
      ROBIN I. FRANK, ESQ.
      Florida Bar No: 649619
      Primary E-mail: rfrank@sbwh.law
      Second E-mail: rmorales@sbwh.law
      JOSHUA L. ZIPPER, ESQ.
      Florida Bar No: 0045247
      Primary E-Mail: jzipper@sbwh.law
      Secondary E-Mail: kgarcia@sbwh.law
      MATTHEW A. MARGOLIS, ESQ.
      Florida Bar No: 1002501
      Primary E-mail: mmargolis@sbwh.law
      Secondary E-Mail: kgarcia@sbwh.law

Filing # 113031727 E-Filed 09/08/2020 05:27:14 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE-20-013096

CIVIL DIVISION: (04)

DENTAL FIX RX, LLC, a
Florida limited liability company,

      Plaintiff,

v.

SMILE 17, LLC, a New York limited
Liability company, MICHAEL COTICCHIO,
an individual, and HOLDEN COHEN, an
individual,

      Defendants.

_____/

**NOTICE OF APPEARANCE AND DESIGNATION**
**OF EMAIL ADDRESS FOR ROBIN I. FRANK, ESQ.**

      ROBIN I. FRANK of the law firm of SHAPIRO, BLASI, WASSERMAN &

HERMANN, P.A., hereby serves notice of her appearance as **additional counsel** for Defendants,

SMILE 17, LLC, a New York limited liability company, and MICHAEL COTICCHIO

("Defendants"), and requests the Clerk of Court enter same and further requests that copies of all

future pleadings, notices, correspondence and other papers and filings in the cause be directed to

the undersigned attorney.

      In accordance with Florida Rule of Judicial Administration 2.516(b)(1)(A), ROBIN I.

FRANK, as counsel for Defendants, hereby designates the following e-mail addresses for

service:

Primary E-Mail Address:        Robin I. Frank, Esq. – rfrank@sbwh.law

Secondary E-Mail Address:      Rachel Morales – rmorales@sbwh.law

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the e-portal and in compliance with Fla. R. Jud. Admin. 2.516, on this 8th day of September, 2020, to:

Robert M. Einhorn, Esq., Michael D. Braunstein, ZARCO EINHORN SALKOWSKI & BRITO, P.A., 2 Biscayne Boulevard, Suite 340, Miami, FL 33131; reinhorn@zarcolaw.com; eservice@zracolaw.com; mbraunstein@zarcolaw.com; apiriou@zarcolaw.com.

SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.
*Attorneys for Defendants, Smile 17, LLC*
*and Michael Coticchio*
7777 Glades Road, Suite 400
Boca Raton, FL 33434
Telephone:      (561) 477-7800
Facsimile:       (561) 477-7722

By: */s/ Robert E. Sacks*
    *ROBERT E. SACKS, ESQ.*
    Florida Bar No. 388970
    Primary E-mail: rsacks@sbwh.law
    Secondary E-mail: sfiero@sbwh.law
    ROBIN I. FRANK, ESQ.
    Florida Bar No: 649619
    Primary E-mail: rfrank@sbwh.law
    Second E-mail: rmorales@sbwh.law
    JOSHUA L. ZIPPER, ESQ.
    Florida Bar No: 0045247
    Primary E-Mail: jzipper@sbwh.law
    Secondary E-Mail: kgarcia@sbwh.law
    MATTHEW A. MARGOLIS, ESQ.
    Florida Bar No: 1002501
    Primary E-mail: mmargolis@sbwh.law
    Secondary E-Mail: kgarcia@sbwh.law

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE-20-013096

CIVIL DIVISION: (04)

DENTAL FIX RX, LLC, a
Florida limited liability company,

       Plaintiff,

v.

SMILE 17, LLC, a New York limited
liability company, MICHAEL
COTICCHIO, an individual, and
HOLDEN COHEN, an individual,

       Defendants.

_____/

**DEFENDANTS, SMILE 17, LLC AND MICHAEL COTICCHIO'S, MOTION FOR
ENLARGEMENT OF TIME TO RESPOND PLAINTIFF, DENTAL FIX RX, LLC'S,
COMPLAINT**

       Defendants, Smile 17, LLC ("Smile") and Michael Coticchio ("Coticchio") (collectively herein as "Defendants"), by and through undersigned counsel and pursuant to Fla. R. Civ. P. 1.090, hereby move this Court for entry of an Order enlarging the time within which they have to respond to Plaintiff, Dental Fix RX, LLC's ("Plaintiff") Complaint, and in support thereof state as follows:

       1.      This matter was filed on August 11, 2020.

       2.      On or about August 22, 2020, Plaintiff served Defendants with the summons and Complaint.

       3.      Counsel for Defendants was recently retained and requires additional time to evaluate the claims asserted against Defendants and prepare a response thereto.

       4.      As such and pursuant to Florida Rule of Civil Procedure 1.090, Defendants respectfully request an enlargement of thirty (30) days within to respond to respond to Plaintiff's Complaint.

5.      This motion has been brought in good faith and is not being filed for purposes of delay.

WHEREFORE, Defendants, Smile 17, LLC and Michael Coticchio, hereby respectfully request this Court for entry of an Order enlarging the time within which they have to respond to the Plaintiff's Complaint, and for such other and further relief as this Court deems just and proper.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the e-portal and in compliance with Fla. R. Jud. Admin. 2.516, on this 8th day of September, 2020, to: Robert M. Einhorn, Esq., Michael D. Braunstein, ZARCO EINHORN SALKOWSKI & BRITO, P.A., 2 Biscayne Boulevard, Suite 340, Miami, FL 33131; reinhorn@zarcolaw.com; eservice@zracolaw.com; mbraunstein@zarcolaw.com; apiriou@zarcolaw.com.

SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.
*Attorneys for Defendants, Smile 17, LLC*
*and Michael Coticchio*
7777 Glades Road, Suite 400
Boca Raton, FL 33434
Telephone:      (561) 477-7800
Facsimile:      (561) 477-7722

By: */s/ Robert E. Sacks*
     *ROBERT E. SACKS, ESQ.*
     Florida Bar No. 388970
     Primary E-mail: rsacks@sbwh.law
     Secondary E-mail: sfiero@sbwh.law
     ROBIN I. FRANK, ESQ.
     Florida Bar No: 649619
     Primary E-mail: rfrank@sbwh.law
     Second E-mail: rmorales@sbwh.law
     JOSHUA L. ZIPPER, ESQ.
     Florida Bar No: 0045247
     Primary E-Mail: jzipper@sbwh.law
     Secondary E-Mail: kgarcia@sbwh.law
     MATTHEW A. MARGOLIS, ESQ.
     Florida Bar No: 1002501
     Primary E-mail: mmargolis@sbwh.law
     Secondary E-Mail: kgarcia@sbwh.law

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE-20-013096

CIVIL DIVISION: (04)

DENTAL FIX RX, LLC, a
Florida limited liability company,

      Plaintiff,

v.

SMILE 17, LLC, a New York limited
Liability company, MICHAEL COTICCHIO,
an individual, and HOLDEN COHEN, an
individual,

      Defendants.

_____/

## NOTICE OF APPEARANCE AND DESIGNATION
## OF EMAIL ADDRESS FOR JOSHUA L. ZIPPER, ESQ.

JOSHUA L. ZIPPER of the law firm of SHAPIRO, BLASI, WASSERMAN &
HERMANN, P.A., hereby serves notice of his appearance as **additional counsel** for Defendant,
HOLDEN COHEN, an individual  ("hereinafter "Cohen" or "Defendant"), and requests the Clerk
of Court enter same and further requests that copies of all future pleadings, notices,
correspondence and other papers and filings in the cause be directed to the undersigned attorney.

In accordance with Florida Rule of Judicial Administration 2.516(b)(1)(A), JOSHUA L.
ZIPPER, as counsel for Defendant, hereby designates the following e-mail addresses for service:

Primary E-Mail Address:      Joshua L. Zipper, Esq. – jzipper@sbwh.law

Secondary E-Mail Address:      Kristy Garcia - kgarcia@sbwh.law

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the e-portal and in compliance with Fla. R. Jud. Admin. 2.516, on this 15th day of September, 2020, to: Robert M. Einhorn, Esq., Michael D. Braunstein, ZARCO EINHORN SALKOWSKI & BRITO, P.A., 2 Biscayne Boulevard, Suite 340, Miami, FL 33131; reinhorn@zarcolaw.com; eservice@zracolaw.com; mbraunstein@zarcolaw.com; apiriou@zarcolaw.com.

SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.
*Attorneys for Defendants, Smile 17, LLC*
*and Michael Coticchio*
7777 Glades Road, Suite 400
Boca Raton, FL 33434
Telephone:     (561) 477-7800
Facsimile:     (561) 477-7722

By: */s/ Robert E. Sacks*
     *ROBERT E. SACKS, ESQ.*
     Florida Bar No. 388970
     Primary E-mail: rsacks@sbwh.law
     Secondary E-mail: sfiero@sbwh.law
     ROBIN I. FRANK, ESQ.
     Florida Bar No: 649619
     Primary E-mail: rfrank@sbwh.law
     Second E-mail: rmorales@sbwh.law
     JOSHUA L. ZIPPER, ESQ.
     Florida Bar No: 0045247
     Primary E-Mail: jzipper@sbwh.law
     Secondary E-Mail: kgarcia@sbwh.law
     MATTHEW A. MARGOLIS, ESQ.
     Florida Bar No: 1002501
     Primary E-mail: mmargolis@sbwh.law
     Secondary E-Mail: kgarcia@sbwh.law

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE-20-013096

CIVIL DIVISION: (04)

DENTAL FIX RX, LLC, a
Florida limited liability company,

      Plaintiff,

v.

SMILE 17, LLC, a New York limited
Liability company, MICHAEL COTICCHIO,
an individual, and HOLDEN COHEN, an
individual,

      Defendants.

_____/

## NOTICE OF APPEARANCE AND DESIGNATION
## OF EMAIL ADDRESS FOR ROBERT E. SACKS, ESQ.

      ROBERT E. SACKS of the law firm of SHAPIRO, BLASI, WASSERMAN &
HERMANN, P.A., hereby serves notice of his appearance as counsel for Defendant, HOLDEN
COHEN, an individual ("hereinafter "Cohen" or "Defendant") and requests the Clerk of Court
enter same and further requests that copies of all future pleadings, notices, correspondence and
other papers and filings in the cause be directed to the undersigned attorney.

      In accordance with Florida Rule of Judicial Administration 2.516(b)(1)(A), ROBERT E.
SACKS, as counsel for Defendant, hereby designates the following e-mail addresses for service:

Primary E-Mail Address:        Robert E. Sacks, Esq. – rsacks@sbwh.law

Secondary E-Mail Address:     Stephanie Fiero – sfiero@sbwh.law

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the
e-portal and in compliance with Fla. R. Jud. Admin. 2.516, on this 15th day of September, 2020,

to: Robert M. Einhorn, Esq., Michael D. Braunstein, ZARCO EINHORN SALKOWSKI & BRITO, P.A., 2 Biscayne Boulevard, Suite 340, Miami, FL 33131; reinhorn@zarcolaw.com; eservice@zracolaw.com; mbraunstein@zarcolaw.com; apiriou@zarcolaw.com.

SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.
*Attorneys for Defendants, Smile 17, LLC*
*and Michael Coticchio*
7777 Glades Road, Suite 400
Boca Raton, FL 33434
Telephone:     (561) 477-7800
Facsimile:      (561) 477-7722

By: */s/ Robert E. Sacks*
     *ROBERT E. SACKS, ESQ.*
     Florida Bar No. 388970
     Primary E-mail: rsacks@sbwh.law
     Secondary E-mail: sfiero@sbwh.law
     ROBIN I. FRANK, ESQ.
     Florida Bar No: 649619
     Primary E-mail: rfrank@sbwh.law
     Second E-mail: rmorales@sbwh.law
     JOSHUA L. ZIPPER, ESQ.
     Florida Bar No: 0045247
     Primary E-Mail: jzipper@sbwh.law
     Secondary E-Mail: kgarcia@sbwh.law
     MATTHEW A. MARGOLIS, ESQ.
     Florida Bar No: 1002501
     Primary E-mail: mmargolis@sbwh.law
     Secondary E-Mail: kgarcia@sbwh.law

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE-20-013096

CIVIL DIVISION: (04)

DENTAL FIX RX, LLC, a
Florida limited liability company,

      Plaintiff,

v.

SMILE 17, LLC, a New York limited
Liability company, MICHAEL COTICCHIO,
an individual, and HOLDEN COHEN, an
individual,

      Defendants.

_____/

## NOTICE OF APPEARANCE AND DESIGNATION
## OF EMAIL ADDRESS FOR ROBIN I. FRANK, ESQ.

    ROBIN I. FRANK of the law firm of SHAPIRO, BLASI, WASSERMAN &
HERMANN, P.A., hereby serves notice of her appearance as **additional counsel** for Defendant,
HOLDEN COHEN, an individual ("hereinafter "Cohen" or "Defendant"), and requests the Clerk
of Court enter same and further requests that copies of all future pleadings, notices,
correspondence and other papers and filings in the cause be directed to the undersigned attorney.

    In accordance with Florida Rule of Judicial Administration 2.516(b)(1)(A), ROBIN I.
FRANK, as counsel for Defendant, hereby designates the following e-mail addresses for service:

Primary E-Mail Address:        Robin I. Frank, Esq. – rfrank@sbwh.law

Secondary E-Mail Address:      Rachel Morales – rmorales@sbwh.law

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the
e-portal and in compliance with Fla. R. Jud. Admin. 2.516, on this 15th day of September, 2020,

to: Robert M. Einhorn, Esq., Michael D. Braunstein, ZARCO EINHORN SALKOWSKI &

BRITO, P.A., 2 Biscayne Boulevard, Suite 340, Miami, FL 33131; reinhorn@zarcolaw.com;

eservice@zracolaw.com; mbraunstein@zarcolaw.com; apiriou@zarcolaw.com.

SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.
*Attorneys for Defendants, Smile 17, LLC*
*and Michael Coticchio*
7777 Glades Road, Suite 400
Boca Raton, FL 33434
Telephone:      (561) 477-7800
Facsimile:      (561) 477-7722

By: */s/ Robert E. Sacks*
　　*ROBERT E. SACKS, ESQ.*
　　Florida Bar No. 388970
　　Primary E-mail: rsacks@sbwh.law
　　Secondary E-mail: sfiero@sbwh.law
　　ROBIN I. FRANK, ESQ.
　　Florida Bar No: 649619
　　Primary E-mail: rfrank@sbwh.law
　　Second E-mail: rmorales@sbwh.law
　　JOSHUA L. ZIPPER, ESQ.
　　Florida Bar No: 0045247
　　Primary E-Mail: jzipper@sbwh.law
　　Secondary E-Mail: kgarcia@sbwh.law
　　MATTHEW A. MARGOLIS, ESQ.
　　Florida Bar No: 1002501
　　Primary E-mail: mmargolis@sbwh.law
　　Secondary E-Mail: kgarcia@sbwh.law

Case 0:20-cv-62098-RAR   Document 1-1   Entered on FLSD Docket 10/14/2020   Page 166 of 169

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE-20-013096

CIVIL DIVISION: (04)

DENTAL FIX RX, LLC, a
Florida limited liability company,

      Plaintiff,

v.

SMILE 17, LLC, a New York limited
Liability company, MICHAEL COTICCHIO,
an individual, and HOLDEN COHEN, an
individual,

      Defendants.

_____/

## NOTICE OF APPEARANCE AND DESIGNATION
## OF EMAIL ADDRESS FOR MATTHEW A. MARGOLIS, ESQ.

     MATTHEW A. MARGOLIS of the law firm of SHAPIRO, BLASI, WASSERMAN &

HERMANN, P.A., hereby serves notice of his appearance as **additional counsel** for Defendant,

HOLDEN COHEN, an individual ("hereinafter "Cohen" or "Defendant"), and requests the Clerk

of Court enter same and further requests that copies of all future pleadings, notices,

correspondence and other papers and filings in the cause be directed to the undersigned attorney.

     In accordance with Florida Rule of Judicial Administration 2.516(b)(1)(A), MATTHEW

A. MARGOLIS, as counsel for Defendant, hereby designates the following e-mail addresses for

service:

Primary E-Mail Address:          Matthew A. Margolis, Esq. – mmargolis@sbwh.law

Secondary E-Mail Address:        Kristy Garcia – kgarcia@sbwh.law

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the e-portal and in compliance with Fla. R. Jud. Admin. 2.516, on this 15th day of September, 2020, to: Robert M. Einhorn, Esq., Michael D. Braunstein, ZARCO EINHORN SALKOWSKI & BRITO, P.A., 2 Biscayne Boulevard, Suite 340, Miami, FL 33131; reinhorn@zarcolaw.com; eservice@zracolaw.com; mbraunstein@zarcolaw.com; apiriou@zarcolaw.com.

SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.
*Attorneys for Defendants, Smile 17, LLC*
*and Michael Coticchio*
7777 Glades Road, Suite 400
Boca Raton, FL 33434
Telephone:      (561) 477-7800
Facsimile:      (561) 477-7722

By: */s/ Robert E. Sacks*
    *ROBERT E. SACKS, ESQ.*
    Florida Bar No. 388970
    Primary E-mail: rsacks@sbwh.law
    Secondary E-mail: sfiero@sbwh.law
    ROBIN I. FRANK, ESQ.
    Florida Bar No: 649619
    Primary E-mail: rfrank@sbwh.law
    Second E-mail: rmorales@sbwh.law
    JOSHUA L. ZIPPER, ESQ.
    Florida Bar No: 0045247
    Primary E-Mail: jzipper@sbwh.law
    Secondary E-Mail: kgarcia@sbwh.law
    MATTHEW A. MARGOLIS, ESQ.
    Florida Bar No: 1002501
    Primary E-mail: mmargolis@sbwh.law
    Secondary E-Mail: kgarcia@sbwh.law

Case 0:20-cv-62098-RAR Document 1-1 Entered on FLSD Docket 10/14/2020 Page 168 of 169

**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. <u>CACE20013096</u>   DIVISION  <u>04</u>   JUDGE  <u>Sandra Perlman</u>

**Dental Fix Rx LLC**

Plaintiff(s) / Petitioner(s)

v.

**Smile 17 LLC, et al**

Defendant(s) / Respondent(s)

_____/

## <u>AGREED ORDER GRANTING DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT</u>

This cause, having come before this Court upon Defendants SMILE 17, LLC, MICHAEL COTICCHIO and HOLDEN COHEN's Motion for Extension of Time to Respond to Complaint (the "Motion"), the Court having reviewed the file and the pleadings, having noted the agreement of the parties, and being fully advised in the premises, it is hereby ORDERED AND ADJUDGED that:

1. The Motion is hereby GRANTED.

2. Defendants shall have a thirty (30) day extension, through and including October 12, 2020, to respond to the Complaint.

**DONE** and **ORDERED** in Chambers, at Broward County, Florida on <u>09-18-2020</u>.



<u>CACE20013096 09-18-2020 8:57 AM</u>

Hon. Sandra Perlman

**CIRCUIT JUDGE**

Electronically Signed by Sandra Perlman

**Copies Furnished To:**

Joshua L. Zipper Esq. , E-mail : kgarcia@sbwh.law

Joshua L. Zipper Esq. , E-mail : jzipper@sbwh.law

Matthew A. Margolis, Esq. , E-mail : mmargolis@sbwh.law
Matthew A. Margolis, Esq. , E-mail : kgarcia@sbwh.law
Michael Daniel Braunstein , E-mail : APiriou@zarcolaw.com
Michael Daniel Braunstein , E-mail : MBraunstein@zarcolaw.com
Robert E. Sacks, Esq. , E-mail : rsacks@sbwh.law
Robert E. Sacks, Esq. , E-mail : sfiero@sbwh.law
Robert Mitchell Einhorn , E-mail : vperez@zarcolaw.com
Robert Mitchell Einhorn , E-mail : reception@zarcolaw.com
Robert Mitchell Einhorn , E-mail : reinhorn@zarcolaw.com
Robin I. Frank, Esq. , E-mail : rmorales@sbwh.law
Robin I. Frank, Esq. , E-mail : rfrank@sbwh.law